NOT YET SCHEDULED FOR ORAL ARGUMENT

# United States Court of Appeals for the District of Columbia Circuit

**No. 25-5383**

NEW CIVIL LIBERTIES ALLIANCE,

*Plaintiff-Appellant,*

*v.*

SECURITIES AND EXCHANGE COMMISSION,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:22-cv-03567-CJN, Honorable Carl J. Nichols, U.S. District Judge.*

# BRIEF FOR PLAINTIFF-APPELLANT


NATHANIEL LINDZEN
THE LAW OFFICE OF
NATHANIEL M. LINDZEN
57 School Street
Wayland, Massachusetts 01778
(212) 810-7627
nlindzen@corpfraudlaw.com

MATTHEW HARDIN
HARDIN LAW OFFICE
101 Rainbow Drive #11506
Livingston, Texas 77399
(202) 802-1948
matthewdhardin@gmail.com

*Counsel for Plaintiff-Appellant*


February 17, 2026


COUNSEL PRESS (800) 4-APPEAL • (390274)

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

### 1. Parties

The plaintiff-appellant is the New Civil Liberties Alliance (hereinafter "NCLA"). The defendant-appellee is the U.S. Securities & Exchange Commission (hereinafter "SEC").

### 2. Ruling Under Review

The ruling under review is the district court's opinion and order of August 29, 2025 (Nichols, J.), granting the defendant-appellee's motion for summary judgment. The opinion is unreported, but is available at *NCLA v. Sec. Exch. Comm'n*, Civil Action No. 1: 22-cv-03567 (CJN), 2025 LX 346255, 2025 WL 2494683 (D.D.C. Aug. 29, 2025). The opinion is also reprinted in the Joint Appendix at JA 194 *et seq*. The final order is located at JA 193.

### 3. Related Cases

This case has not previously been before this Court or any other court. Counsel is not aware of any related cases.

<u>/s/ Matthew D. Hardin</u>
Matthew D. Hardin

## CORPORATE DISCLOSURE STATEMENT

No publicly held company has any ownership interest in the New Civil Liberties Alliance. Plaintiff-appellant is a non-profit organization and does not have a parent company nor do any publicly held companies own ten percent or more of its stock.

/s/ Matthew D. Hardin
Matthew D. Hardin

## TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............i

1. Parties ....................................................................................i
2. Ruling Under Review ....................................................................i
3. Related Cases ..............................................................................i

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF AUTHORITIES ..........................................................................v

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF ISSUES .............................................................................1

STATEMENT OF THE CASE.........................................................................2

SUMMARY OF ARGUMENTS......................................................................10

ARGUMENT ...............................................................................................11

STANDARD OF REVIEW ...........................................................................12

1. The District Court erred in crediting SEC's facially contradictory and insufficient declarations and Vaughn Index to permit withholdings under Exemption 5........................................13
2. The District Court erred by allowing SEC to redact names under Exemption 6 without providing a concrete, rather than abstract and theoretical privacy interest and by crediting the SEC's hypothetical privacy interest while simultaneously minimizing the public interest presented by NCLA ...........................22
3. The District Court erred by crediting the SEC's speculative and vague assertions of foreseeable harm..........................................26
4. The SEC did not carry its burden to prove that it conducted a reasonable search for the first page of Orders Instituting Proceedings but rather asserted without foundation that no such records existed, or alternatively that a press release satisfied NCLA's FOIA request........................................................31

5. The District Court below misapplied the consultant corollary because the "Consultant Corollary" is atextual and should not have protected the documents at issue in this case from disclosure ........ 37

CONCLUSION ........ 41

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*ACLU Immigrants' Rights Project v. United States Immigration & Customs Enf't*, 2021 U.S. Dist. LEXIS 45109 (S.D.N.Y. Mar. 10, 2021) .............................27

*Am. Immigr. Council v. Exec. Office for Immigr. Review*, Civil Action No. 23-1952 (RC), 2025 U.S. Dist. LEXIS 27510 (D.D.C. Feb. 14, 2025) .............................35

*Axon v. FTC & Cochran v. SEC*, 598 U.S. 175 (2023).............................4

*Brown v. FBI*, 143 F.4th 481 (D.C. Cir. 2025) ............................. 12-13

*Brown v. FBI*, 873 F. Supp. 2d 388 (D.D.C. 2012).............................26

*Budik v. Dep't of Army*, 742 F. Supp. 2d 20 (D.D.C. 2010).............................18

*Campbell v. United States DOJ*, 334 U.S. App. D.C. 20, 164 F.3d 20 (1998) .............................17

*Carter v. U.S. Dep't of Com.*, 830 F.2d 388 (D.C. Cir. 1987) .............................17

*Cause of Action v. Internal Revenue Serv.*, 125 F. Supp. 3d 145 (D.D.C. 2015).............................34

*Charles v. Off. of Armed Forces Med. Exam'r*, 730 F. Supp. 2d 205 (D.D.C. 2010)............................. 33, 36

*Charles v. Off. of the Armed Forces Med. Exam'r*, 935 F. Supp. 2d 86 (D.D.C. 2013).............................24

*Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 955 F. Supp. 2d 4 (D.D.C. 2013).............................19

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) .............................18

*Cochran v. United States*,
770 F.2d 949 (11th Cir. 1985)....................................................................35

*Ctr. for Investigative Reporting v. United States DOJ*,
14 F.4th 916 (9th Cir. 2021).................................................................. 33, 36

*Defs. of Wildlife v. U.S. Border Patrol*,
623 F. Supp. 2d 83 (D.D.C. 2009)..............................................................13

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001)........................................................................ 16, 37, 38, 39

*Elec. Privacy Info. Ctr. v. United States DOJ*,
18 F.4th 712 (2021)....................................................................................10

*Enviro Tech Intern., Inc. v. EPA*,
371 F.3d 370 (7th Cir. 2004).......................................................................21

*Founding Church of Scientology v. NSA*,
197 U.S. App. D.C. 305, 610 F.2d 824 (D.C. Cir. 1979)................................9

*Georgia v. United States Dep't of Just.*,
148 F.4th 724 (D.C. Cir. 2025) ...................................................................20

*Georgia v. United States DOJ*,
No. 1:21-cv-03138 (TNM),
2023 U.S. Dist. LEXIS 28341 (D.D.C. Feb. 20, 2023)................................38

*Heritage Found. v. Dep't of Just.*,
743 F. Supp. 3d 29 (D.D.C. 2024)...............................................................32

*Hickman v. Taylor*,
329 U.S. 495 (1947)....................................................................................20

*Hum. Rts. Def. Ctr. v. United States Park Police*,
126 F.4th 708 (D.C. Cir. 2025) ...................................................................23

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) ....................................................................21

*In re Sealed Case*,
146 F.3d 881 (1998)....................................................................................21

*Johnson v. Exec. Off. for U.S. Att'ys*,
310 F.3d 771, 354 U.S. App. D.C. 49 (D.C. Cir. 2002)................................20

*Jud. Watch, Inc. v. Food & Drug Admin.*,
449 F.3d 141 (D.C. Cir. 2006) ....................23

*Kleinert v. BLM*,
132 F. Supp. 3d 79 (D.D.C. 2015) ....................25

*Lardner v. DOJ*,
398 Fed. Appx. 609 (D.C. Cir. 2010) ....................25

*Lardner v. DOJ*,
No. 03—0180, 2005 WL 758267 (D.D.C. March 31, 2005)....................25

*Leadership Conference on Civil Rights v. Gonzales*,
404 F. Supp. 2d 246 (D.D.C. 2005) ....................26

*McGehee v. CIA*,
697 F.2d 1095 (1983).................... 33, 35

*Nat'l Ass'n of Home Builders v. Norton*,
309 F.3d 26 (D.C. Cir. 2002) ....................24

*Nat'l Whistleblower Ctr. v. Dep't of Health & Hum. Servs.*,
903 F. Supp. 2d 59 (D.D.C. 2012) ....................21

*Nation Magazine v. United States Customs Serv.*,
71 F.3d 885 (1995)....................9

*National Sec. Archive v. CIA*,
104 F.4th 267, 466 U.S. App. D.C. 121 (D.C. Cir. 2024)....................12

*Oglesby v. Dep't of the Army*,
79 F.3d 1172 (D.C. Cir. 1996) ....................13

*Oglesby v. U.S. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990) ....................32

*Paisley v. CIA*,
712 F.2d 686 (D.C. Cir. 1983) ....................19

*Payne Enters., Inc. v. United States*,
837 F.2d 486 (D.C. Cir. 1988) ....................9

*People for the Am. Way Found v. National Park Service*,
503 F. Supp. 2d 284 (D.D.C. 2007) ....................24

*Prechtel v. FCC*,
330 F. Supp. 3d 320 (D.D.C. 2018) ....................25

*Elec. Privacy Info. Ctr. v. United States DOJ*,
18 F.4th 712 (2021) .......... 10

*Project for Priv. & Surveillance Accountability, Inc. v. United States DOJ*,
143 F.4th 506 (D.C. Cir. 2025) .......... 12

*Pub. Emps. for Env't Resp. v. Env't Prot. Agency*,
213 F. Supp. 3d 1 (D.D.C. 2016) .......... 18

*Public Citizen v. Dep't of State*,
276 F.3d 634 (D.C. Cir. 2002) .......... 33, 36

*Reporters Committee v. FBI*,
3 F.4th 350 (D.C. Cir. 2021) .......... 27, 29, 30

*Rudometkin v. United States*,
140 F.4th 480 (D.C. Cir. 2025) .......... 20

*Shapiro v. U.S. Dep't of Just.*,
969 F. Supp. 2d 18 (D.D.C. 2013) .......... 21

*Steinberg v. U.S. Dep't of Justice*,
23 F.3d 548 (D.C. Cir. 1994) .......... 33, 34

*Stern v. F.B.I.*,
737 F.2d 84 (D.C. Cir. 1984) .......... 24

*Thomas v. U.S. Dep't of Just.*,
531 F. Supp. 2d 102 (D.D.C. 2008) .......... 14

*Trans-Pacific Policing Agreement v. United States Customs Serv.*,
177 F.3d 1022 (1999) .......... 27

*Truitt v. United States Dep't of State*,
283 U.S. App. D.C. 86, 897 F.2d 540 (D.C. Cir. 1990) .......... 9

*U.S. Dep't of State v. Ray*,
502 U.S. 164 (1991) .......... 13

*United for FBI Integrity v. U.S. Dep't of Just.*,
No. CV 22-2885 (RC), 2024 WL 961001 (D.D.C. Mar. 6, 2024) .......... 26

*United States DOJ v. Tax Analysts*,
492 U.S. 136, 109 S. Ct. 2841 (1989) .......... 12

*United States v. ISS Marine Servs., Inc.*,
905 F. Supp. 2d 121 (D.D.C. 2012) .......... 21

*United States v. Nobles*,
422 U.S. 225 (1975) .......... 20

*Valencia-Lucena v. U.S. Coast Guard*,
180 F.3d 321 (D.C. Cir. 1999) .......... 32

*Vaughn v. Rosen*,
484 F.2d 820 (D.C. Cir 1973) .......... 7, 8, 10, 11, 13-14, 15, 16, 17, 22

*Watkins L. & Advoc., PLLC v. United States Dep't of Just.*,
78 F.4th 436 (D.C. Cir. 2023) .......... 32

*Weisberg v. U.S. Dep't of Justice*,
240 U.S. App. D.C. 339, 745 F.2d 1476 (1984) .......... 9

*West Virginia v. EPA*,
142 S. Ct. 2587 (2022) .......... 38

**Statutes & Other Authorities:**

5 U.S.C. § 52(a)(8)(A)(i)(I) .......... 27

5 U.S.C. § 401 .......... 40

5 U.S.C. § 552(a)(3)(D) .......... 33

5 U.S.C. § 552(a)(4)(B) .......... 1

5 U.S.C. § 552(b)(5) .......... 6, 24, 37

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1331 .......... 1

*A New Day at the SEC: Restoring Accountability, Due Process, and Public Confidence*, Capital Markets Subcommittee
https://www.youtube.com/live/BnCbSl5Xl7U (February 4, 2026) .......... 42

Black's Law Dictionary (12th ed. 2024) .......... 20

Dave Michaels, *SEC Says Employees Improperly Accessed Privileged Legal Records*, *WALL ST. J.*, April 6, 2022 .......... 2

Editorial Board, Wall St. J., *What is Gary Gensler Hiding? The SEC protects a security breach from public view* .......... 41

*Oversight of the SEC's Division of Enforcement: Hearing Before the H. Comm. on Fin. Servs.*, 117th Cong. (July 19, 2022) ....................................42

Testimony of Christopher A. Iacovella, President & Chief Executive Officer, American Securities Association, *A New Day at the SEC: Restoring Accountability, Due Process, and Public Confidence*, Capital Markets Subcommittee .......................................................................10

*The Wall Street Journal* .........................................................................................2

## JURISDICTIONAL STATEMENT

The district court exercised subject-matter jurisdiction over this case pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291. This appeal is from a final order or judgment that disposes of parties' claims, which the district court entered on August 29, 2025. Plaintiff-appellant's Notice of Appeal was timely filed on October 28, 2025. JA 5.

## STATEMENT OF ISSUES

1. Whether the District Court improperly permitted the Securities & Exchange Commission to redact or withhold altogether documents SEC claims are protected from disclosure under FOIA Exemptions 5 and 6 with respect to records at issue in this case.
2. Whether the District Court improperly permitted the SEC to refer to a press release and no additional records with respect to the "Orders Instituting Proceedings" described on page 9 of the District Court's August 29, 2025 Memorandum Opinion and Order, and/or improperly held that the Securities & Exchange Commission had adequately searched for and produced the "Orders Instituting Proceedings" that Appellant requested.
3. Whether the District Court failed to hold the Securities & Exchange Commission to its burden of proof in this matter.

## STATEMENT OF THE CASE

NCLA is a nonpartisan, nonprofit law group that views the Administrative State as an especially serious threat to constitutional freedoms. As part of its mission, it filed a Freedom of Information Act ("FOIA") request with the Securities & Exchange Commission, in which it sought records relating to what SEC euphemistically calls a "control deficiency." JA 8. The "control deficiency" involved the SEC enforcement staff (*i.e.*, in-house prosecutors) improperly accessing the confidential work product of the very Administrative Law Judges ("ALJ") adjudicating their cases. *Id*. The practice appears to have begun as early as 2017 and was identified by the SEC sometime in the fall of 2021. *The Wall Street Journal* described it as follows:

> It's the equivalent of a party in litigation having access to a judge's briefs from her law clerks … This breach reinforces the problem with the SEC's administrative process in which the commission has total discretion to deprive parties of their ability to have matters litigated in federal court.[1]

NCLA is one of many organizations that has attempted to get to the bottom of what happened at SEC, and to figure out what the agency has done—or not done—

[1] Dave Michaels, *SEC Says Employees Improperly Accessed Privileged Legal Records*, *WALL ST. J.*, April 6, 2022. https://www.wsj.com/amp/articles/sec-says-employees-improperlyaccessed-privileged-legal-records-11649205758; *see also* https://instapundit.com/515245/.

to ensure it will never happen again. Specifically, NCLA sought actual documentary evidence that will show how the "control deficiency" occurred, who the culpable actors were, who the impacted parties were, and what has been done about it since.

The SEC's response was a textbook lesson on FOIA evasion. SEC first publicly admitted to the "control deficiency" on April 5, 2022 when it filed a press release entitled "Commission Statement" in the dockets of two cases headed to the Supreme Court, *SEC v. Jarkesy* (then pending at the Fifth Circuit) and *SEC v. Cochran*, which was awaiting its grant of certiorari to the Supreme Court. JA 8. Certiorari was granted in *Cochran* on May 16, 2022.

Shortly thereafter the House Oversight Committee summoned the SEC's then Commissioner, Gary Gensler, who refused to appear, instead sending his second-in-command, Enforcement Director Gurbir Grewal, who coyly refused to answer even basic questions about the "control deficiency"—including whether the Inspector General was investigating the matter. JA 106. Grewal professed ignorance, telling Rep. William Huizenga: "You would have to ask the Inspector General." *Id*. There is no evidence, one way or the other, neither publicly available nor in the record of this case, whether the SEC Inspector General has ever investigated SEC's "control deficiency." But what SEC appears to admit in its declarations in this case is that the SEC evaded the ordinary process by which an independent and accountable

inspector general investigates agency misconduct, instead replacing that process with an internal and contractor-led investigation it cooked up on its own. JA 109.

But SEC didn't simply fail to follow the ordinary process of allowing the Inspector General to investigate agency misconduct, or even investigate itself: instead, it hired Berkeley Research Group ("BRG"), a favored vendor that relies on the SEC for millions of dollars of revenue annually, to conduct what it termed an "internal review." JA 107. SEC appears to have also outsourced its investigation, or aspects thereof, to General Dynamics (one of its favored outside vendors).[2] On June 2, 2023, just weeks after Cochran won a unanimous Supreme Court ruling in April that allowed SEC targets to challenge the constitutionality of their administrative proceedings in federal court, the agency revealed that its misconduct occurred in far more enforcement cases than first reported. It then announced the dismissal of all 42 of its open administrative proceedings.[3] That mass dismissal denied those

[2] Neither the April 5, 2022 initial Commission Press Release first disclosing the control deficiency in two cases, those of Michelle Cochran and George Jarkesy, nor the June 2, 2023 Commission Press Release mentioned General Dynamics, disclosing only that BRG had conducted an internal investigation. The role played by General Dynamics, a large government contractor, is shrouded in secrecy except for those few tidbits contained in SEC's briefing below. Both Cochran and Jarkesy prevailed in landmark Supreme Court cases against the agency, making the enforcement staff's file-sharing with the ALJs assigned to their cases deeply troubling and obviously a matter of public concern. *Axon v. FTC & Cochran v. SEC*, 598 U.S. 175 (2023) and *Jarkesy v. SEC*, 603 U.S. 109 (2024).

[3]

respondents their day in an Article III court to challenge the constitutionality of SEC's administrative adjudication scheme. SEC dismissal of all open administrative proceedings impacted by the "control deficiency" also conveniently—and completely—extinguished any possibility of discovery into the facts of the agency's misconduct in Article III courts for the purpose of obtaining obviously relevant information into how exactly their prosecutions may have been tainted.[4] JA 126. Incredibly, SEC claims never to have bothered to see if the "control deficiency" had impacted any closed or settled cases, such that any final judgments the agency obtained may have been equally tainted. JA 112-115.

Congressional oversight having been ignored or thwarted, and discovery under Fed. R. Civ. P. 26 having been precluded by the SEC's self-interested dismissal of dozens of pending actions, FOIA requests relating to the "control deficiency" then followed,[5] including the instant action. The SEC's playbook has been similar in each

---

[4] SEC, Order Dismissing proceedings, https://www.sec.gov/files/litigation/opinions/2023/33-11198.pdf (last visited February 16, 2026).

[5] *See e.g., Jarkesy v. SEC*, Case No. 3:22-cv-00405 (S.D. Tex.); *NCLA et al. v. SEC*, Case No. 3:23-cv-00402 (S.D. Tex.).

instance—unlawful calculated delay[6,7] followed by unlawful withholding of nearly everything on grounds of alleged work product privilege as embodied in Exemption 5 of the Freedom of Information Act. 5 U.S.C. § 552(b)(5). The SEC has further redacted the names of the individuals involved in the "control deficiency" by invoking FOIA Exemption 6.

In this case, SEC did not even manage to keep its own story straight. And the District Court failed to hold SEC to its burden on not just one but several related issues.

SEC first asserted that 1,890 pages were responsive to the first portion of Plaintiff's FOIA request (seeking records reflecting the "Commission's discovery of the deficiencies that allowed enforcement personnel to access the administrative adjudications system and documents of the Commission's Administrative Law

---

[6] For instance, in the instant action, the SEC first asserted that tens of thousands of pages of records were responsive to Plaintiff's request and that it would thus take years to process under its "complex track." Plaintiff then massively narrowed its request to encompass just two categories of records.

[7] This Court may take judicial notice of the fact that SEC (through the same counsel) has employed exactly this same strategy in another ongoing action seeking other records regarding the control deficiency. *See e.g., NCLA et al. v. SEC*, Civ. Act. No. 323-cv-00402 (S.D. Tex.), ECF at No. 37, describing SEC's extensive foot-dragging in that action including, *inter alia*, originally asserting that glacially slow "complex track" processing would be required due to the allegedly voluminous nature of records sought. *Id.* While the SEC maintained for nearly two years that at the very least 53,000 pages of records were responsive, it later quietly revealed that fewer than 2,000 pages of records were actually responsive.

Judges ('ALJs') and their staff"), but produced 55 of those pages often in nearly entirely redacted form and withheld the remainder in full. JA 141. The SEC later corrected itself and stated that it had withheld 2,422 pages. JA 179.

As to the second category of records NCLA requested ("the first page of the Order Instituting Proceedings [in] every administrative proceeding in which the "control deficiency" occurred," JA 30), the SEC first asserted that it was withholding every record and never provided a responsive record count. JA 46. Later, while still having never provided a responsive page count, SEC asserted that it was satisfying Plaintiff's request by way of a press release to what it termed its "*Second Commission Statement Relating to Certain Administrative Adjudications*."[8] *Id*.

The SEC has supported these massive withholdings and attempted to justify the purported adequacy of its search with three conclusory declarations and a boilerplate *Vaughn* Index that fails to address, in any way, approximately 98% of the records at issue. Notably the declarations, while essentially cutting and pasting judicially-accepted bases for withholding without adding any individualized supporting facts, are also facially untruthful. For instance, the supporting declarations first claimed that 1,835 pages were being withheld in full based on the work product doctrine. JA 78. A second supplementary declaration (filed for the first

---

[8] *See supra* at n.4.

time on Reply) then asserted that due to an oversight 2,422 pages were actually withheld in full. JA 179. The same declarations furthermore assert that the *Vaughn* Index addresses every page of records withheld, despite that the Index astonishingly only addresses a mere 55 pages. JA 42 ("the Vaughn Index lists the withholdings from 1,890 pages of records, withheld in full or in part"), *contra*. JA 50-68 (cataloging only 55 pages of documents). Even when SEC later revised its estimate upwards from 1,835 pages to 2,422 pages of records being withheld in full on Reply, it never offered any explanation for why it did not need to submit a new *Vaughn* log for the extra 600-odd pages, nor did SEC explain its earlier statement that the *Vaughn* log lists withholdings on 1,890 pages of records, despite the log itself appearing facially to show only 55 pages of records.

But it gets worse. SEC's declarations further evaded the question of whether the agency conducted a search as to the second category of records at issue in NCLA's FOIA request: records which would reflect "All instances in which enforcement personnel accessed, or could have accessed, documents stored in the administrative adjudications system…" JA 38. Instead of describing a search—any search at all—SEC offered an artful response that dodged the issue. Essentially, the SEC asserts that it has made a choice not to make determinations on the "control deficiency" and its impact on closed or settled cases (or at least cases that had not concluded as of some heretofore unspecified date) and thus have no responsive

records beyond those referenced in its press release, which was limited to pending rather than closed actions. JA 47. Whether SEC's arguments are incredible or simply too cute by half, they run afoul of the reasonableness standard by which searches are evaluated. *Weisberg v. U.S. Dep't of Justice*, 240 U.S. App. D.C. 339, 745 F.2d 1476, 1485 (1984) ("The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."). An agency cannot misinterpret or misconstrue a FOIA request to generate a search result it prefers.[9]

Because the "control deficiency" was publicly acknowledged by SEC and announced nearly four years ago and the underlying misconduct dates back to at least 2017, one can easily imagine the SEC turning a blind eye to the impact of the "control deficiency" on closed or settled cases for as many years as needed with the hope that the matter will thus be erased from the collective memory of Congress, impacted parties and Plaintiff, thus artfully circumventing the old FOIA timeliness principle that "stale information is of little value yet more costly than fresh." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). If so, that hope is

---

[9] The SEC, like all agencies, "has a duty to construe a FOIA request liberally." *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 890 (1995), citing *Truitt v. United States Dep't of State,* 283 U.S. App. D.C. 86, 897 F.2d 540, 544-45 (D.C. Cir. 1990) and *Founding Church of Scientology v. NSA,* 197 U.S. App. D.C. 305, 610 F.2d 824, 836-37 (D.C. Cir. 1979).

dashed by Congress's and the regulated industries' enduring interest in the "control deficiency" and how it should affect agency reform in the future.[10] The public interest in whether "responsible officials acted negligently or otherwise improperly in the performance of their duties" is a core interest of FOIA. *Elec. Privacy Info. Ctr. v. United States DOJ*, 18 F.4th 712, 718 (2021). SEC's years-long refusal to comply with its obligations under FOIA command this court's careful review and vigilance in holding the agency to account.

## SUMMARY OF ARGUMENTS

At a minimum, the District Court turned a blind eye to the facially deficient nature of SEC's *Vaughn* Index and the facially apparent contradictions between SEC's own declarations in this matter. Indeed, on Reply below the agency asserted for the first time that approximately 600 additional documents were being withheld in full than it originally identified, and the District Court appears not to have even noticed (citing one of two earlier, incorrect figure as to the number of withheld records). JA 196.

---

[10] Testimony of Christopher A. Iacovella, President & Chief Executive Officer, American Securities Association, *A New Day at the SEC: Restoring Accountability, Due Process, and Public Confidence*, Capital Markets Subcommittee, https://docs.house.gov/meetings/BA/BA16/20260204/118929/HHRG-119-BA16-Wstate-IacovellaC-20260204.pdf (February 4, 2026).

But that is emblematic of bigger problems. The District Court also allowed the SEC to withhold even the documents it identified in its Vaughn log (a mere 55 pages) under specious claims of deliberative process, work product, or personal privacy. None of these exemptions properly applied, and the agency's claims of foreseeable harm from release were unsupported by anything other than speculation and the agency's naked confession that the public might be outraged if it knew what government actors were responsible for the malfeasance that led to the dismissal of dozens of presumably meritorious SEC administrative proceedings.

This Court must reverse and remand with instructions to hold SEC to its burden of proof.

## **ARGUMENT**

The SEC had the burden of proof on all issues in this case, but it failed at every turn to carry that burden. Its declarations and its *Vaughn* Index were facially deficient and contradictory, with SEC claiming alternatively that its *Vaughn* Index addressed either 1,860 pages of records or 1,422 pages of records, even as the *Vaughn* log itself facially addressed only 55 pages. Even leaving aside the deficiencies of the SEC's explanations as to those 55 pages, the SEC cannot possibly have met its burden of proof with respect to the huge number of documents it says—under penalty of perjury—are reflected in the *Vaughn* log but facially are not. But the District Court

offered no explanation for glossing over these glaring deficiencies. What's more, as to SEC's Exemption 6 claims, the District Court failed to conduct a proper balancing inquiry because it credited SEC's speculative assertions of privacy while failing to engage with NCLA's arguments as to the public interest in knowing which prosecutors were reading judges' files. And the District Court compounded its error by failing to require the agency to show foreseeable harm from release of the requested records and uncritically crediting hypothetical assertions of future harm absent any concrete or non-hypothetical fears.

## **STANDARD OF REVIEW**

This Court will "review the district court's grant of summary judgment in a FOIA case *de novo*, including questions regarding FOIA's statutory requirements and limitations." *Project for Priv. & Surveillance Accountability, Inc. v. United States DOJ*, 143 F.4th 506, 510 (D.C. Cir. 2025), *citing National Sec. Archive v. CIA*, 104 F.4th 267, 271, 466 U.S. App. D.C. 121 (D.C. Cir. 2024). The burden of proof in a FOIA case is squarely placed upon the agency as to all issues. *United States DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3, 109 S. Ct. 2841, 2847 (1989) ("The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not agency records or have not been improperly withheld.") (internal quotations omitted). On *de novo* review, this Court may consider any grounds in the record, regardless of whether the District Court has done so. *Brown*

*v. FBI*, 143 F.4th 481, 488 n.5 (D.C. Cir. 2025) (rejecting an argument that "the district court failed to address foreseeable harm, and that we should remand to the district court to evaluate that requirement in the first instance.").

1. **The District Court erred in crediting SEC's facially contradictory and insufficient declarations and *Vaughn* Index to permit withholdings under Exemption 5.**

The SEC submitted facially contradictory declarations, and its declarations incorporated by reference a *Vaughn* log that identified thousands fewer documents than the declarations claimed were addressed in that log. The log is insufficient even as to the tiny minority of documents it addresses. But more fundamentally: the SEC cannot possibly have carried its burden of proof as to documents the declarants swore were included in the *Vaughn* log, but which were not in fact included. Here, that's literally thousands of pages of documents, which the SEC failed to include in its log despite having sworn under penalty of perjury that it had done so. JA 42 ("the Vaughn Index lists the withholdings from 1,890 pages of records, withheld in full or in part"), *contra*. JA 50-68 (cataloging only 55 pages of documents).

It is black letter law that the burden is squarely on an agency to support any redactions or withholdings. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). This is typically done through affidavits, a *Vaughn* Index, or both. *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009), citing *Oglesby v. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996) and *Vaughn v. Rosen*, 484 F.2d 820,

827-28 (D.C. Cir 1973). This supportive evidence must be sufficiently detailed to allow the court to determine whether documents are appropriately withheld and/or redacted. Furthermore, the court has a duty to rule on the applicability of invoked exemptions and to ensure that the requester has as much information as possible thus enabling the adversarial process to function. *Thomas v. U.S. Dep't of Just.*, 531 F. Supp. 2d 102, 106 (D.D.C. 2008). The SEC did not provide NCLA or the district court with such information. Not even close. Notably the SEC's Index provided no information whatsoever as to 2,422 pages of fully withheld records (despite SEC claiming that it did), and the district court then failed to exercise its obligation to either deny SEC's motion for summary judgment or require the SEC to substantiate the basis for these extensive withholdings.

Equally noteworthy, the District Court erred in not taking notice of the fact that the SEC's own affidavits were facially untruthful or inaccurate. For instance, the Declaration of Mark Tallerico dated July 12, 2023, explicitly states that:

> [The SEC's] *Vaughn* Index lists the withholdings from 1,890 pages of records, withheld in full or in part, in connection with the request and summarizes the withholdings and the bases and justifications for the withholdings. For each withheld document, the *Vaughn* Index provides the date the document was sent, the author and recipient of the document, a description of the withheld document, the FOIA exemptions relied on for the withholdings, and an explanation of the basis for applying the FOIA exemptions. I have reviewed the *Vaughn*

> Index, and it accurately describes the information the SEC has withheld and the bases for applying FOIA exemptions.

JA 42. But that's not true. The SEC's Index is exclusively limited to the 55 pages of redacted (as opposed to fully withheld) records that were produced to NCLA. JA 50 *et seq*.

And that's only the beginning of the facial irregularities in SEC's filings. For instance, the Declaration of Lizzette Katilius, dated July 12, 2023, states that the SEC had withheld 1,835 pages of records, JA 78, while the Supplemental Declaration of Mark Tallarico dated August 23, 2023, stated that in fact 2,422 pages of records had been withheld. JA 192.

Inexplicably, the District Court ignored *both* SEC's own correction of the number of records it withheld, and the discrepancy between the 55 pages of records addressed in the *Vaughn* log and the 2,422 pages of records acknowledged in a supplemental declaration, holding in its Memorandum Opinion that "the Commission withheld 1,855 documents." JA 196. The District Court erred in crediting facially inadequate, contradictory, and obviously untrue declarations to support its ruling, without any explanation at all, and found as a factual matter that 1,855 documents were withheld even though the SEC itself admitted that number was incorrect. *Id., contra.* JA 179. Incredibly, despite these undisputable facts, the

District Court expressed confidence that the SEC's declarations could be taken "at their word."

The SEC's declarations cannot have carried the burden of proof under these circumstances. For instance, the Declaration of Marc Tallarico dated July 12, 2023, is inconsistent, stating at one point that "Pursuant to FOIA Exemption 5, the SEC withheld certain information from 55 pages of records and withheld in full 1,835 [*sic*] pages of records under the attorney work-product doctrine and the deliberative process privilege." JA 30, 32, and then later stating "All of the information the SEC withheld under Exemption 5 is attorney work product." JA 33.[11] The two are distinct. "Work product protects mental processes of the attorney while deliberative process covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are made. *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8 (2001) (cleaned up). But SEC collapsed the two standards, in addition to contradicting itself as to how many records were at issue, yet the District Court still took them "at their word."

[11] Appellants assume at least one of these figures is a typo, because the SEC on yet another occasion claimed the proper figure was 1,855. JA 196. But SEC did not explain this or any other discrepancy in its accounting of how many documents are at issue but unexplained in the *Vaughn* log.

The SEC's misrepresentations, errors and omissions in its declarations again raise the question of how it could be confident that the claimed exemptions truly applied, let alone persuasively enough to convince the District Court. Indeed, this Court has held that a District Court cannot rule on the basis of "facially inadequate" declarations. *Campbell v. United States DOJ*, 334 U.S. App. D.C. 20, 164 F.3d 20, 31 (1998). Additionally, "if information contained in agency affidavits is contradicted by other evidence in the record—then, *in camera* inspection may be necessary to ensure that agencies do not misuse the FOIA exemptions to conceal non-exempt information." *Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 393 (D.C. Cir. 1987). But the District Court appears not to have noticed contradictions in the declarations, much less acted upon them by conducting a transparent, reasoned, and fully explained *in camera* review.

Even leaving aside the approximately 2,300 or more records that SEC did not bother to identify in its *Vaughn* Index, and leaving aside that the SEC's declarations say the *Vaughn* addresses documents that it clearly does not, there are still more problems. Even the 55 pages of records actually identified in the *Vaughn* Index are supported by mere boilerplate addressing categories of records rather than specific records. While categorical indexes have been both rejected and endorsed in this

Circuit depending on the specific facts of an individual case,[12] there are minimum requirements of even a categorical index that are lacking in the SEC's Index here.

For instance, a categorical index invoking the deliberative privilege must at the very least "provide the following information for each document at issue: "(1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decision making authority vested in the document's author and recipient." *Pub. Emps. for Env't Resp. v. Env't Prot. Agency*, 213 F. Supp. 3d 1, 13 (D.D.C. 2016). But the SEC does not identify the individuals by anything other than "Staff," JA 49 *et seq*., which fails to explain whether consultations were between subordinates and superiors. This in no way satisfies the requirement of elucidating one of the key rationales behind the deliberative privilege which is to "assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

---

[12] *See e.g., Budik v. Dep't of Army*, 742 F. Supp. 2d 20, 37 (D.D.C. 2010) (explaining the range of appellate decisions in this Circuit from outright rejection of categorical indexes to endorsement of indexes in particular circumstances dealing with voluminous records – something not present in the limited 55 pages of documents actually addressed in the SEC's Index).

Further, when asserting work product privileges "[c]ategorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 955 F. Supp. 2d 4, 14 (D.D.C. 2013), *citing Paisley v. CIA*, 712 F.2d 686, 689 (D.C. Cir. 1983). And yet, this is exactly what the SEC's Index does: it repeats the same or nearly the same description of every redacted document, *e.g.*, "emails between SEC staff and BRG contracting staff, information concerning review of certain databases to assess the scope and potential impact of the SEC's control deficiency are withheld" and couples this with nearly identical recitations of the consequence of disclosure, *e.g.*, "generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable." JA 50 *et seq*.

Finally, the SEC's Index was patently inadequate and misleading because it applied the work product privilege to material that it admits is clearly data rather than either fact or opinion work product or some combination thereof. This is not an oversight of the Index. SEC openly explained in its briefs to the district court that it was withholding factual forensic data on numerous occasions. *See e.g.,* JA 30 at ¶ 9. ("Many of the emails have attachments with forensic data generated by BRG for use in the internal review"), JA 51; ("[i]n attachments to an email forensic data generated by BRG staff concerning the control deficiency is withheld."). The District Court

was required to examine whether this data or other factual material could be segregated from any deliberative or otherwise protected material *sua sponte*. *Rudometkin v. United States*, 140 F.4th 480, 495 (D.C. Cir. 2025), citing *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776, 354 U.S. App. D.C. 49 (D.C. Cir. 2002). But it appears the District Court did not even notice this concern, much less conduct such a segregability analysis.

The problem with SEC's assertion of work product privilege over forensic data is that it contravenes the overarching principle behind the work product privilege which is "that they would not be available by law to a party ... in litigation with the agency." *Georgia v. United States Dep't of Just.*, 148 F.4th 724, 740 (D.C. Cir. 2025). Such "records include documents discussing legal strategy, potential witnesses, types of discovery needed, division of labor in a case that would likely be [and later was] consolidated, and the efficient presentation of the case." *Id.*, *citing Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Pure hard forensic data, especially attachments described as containing nothing more than such data, almost by definition,[13] defy inclusion in the categories of documents protected as work product under *Hickman*. *See also United States v. Nobles*, 422 U.S. 225, 238 (1975) ("At its

[13] Data means "known or assumed facts used as the basis for reasoning, calculation, analysis, discussion, etc.; posited premises or given facts." Black's Law Dictionary (12th ed. 2024).

core, the work-product doctrine shelters the mental processes of the attorney"). In any event the burden is on the proponent of the privilege to explain in detail the validity of the asserted privilege and such privileges are to be narrowly construed. *Shapiro v. U.S. Dep't of Just.*, 969 F. Supp. 2d 18, 27 (D.D.C. 2013). This is still more true where the documents in question are, as the SEC admits, multi-purpose documents[14] or where the documents pertain to government malfeasance. *See e.g., Nat'l Whistleblower Ctr. v. Dep't of Health & Hum. Servs.*, 903 F. Supp. 2d 59, 66 (D.D.C. 2012) ("Under the government-misconduct exception to the deliberative-process privilege, 'where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government.'"), *citing In re Sealed Case,* 121 F.3d 729, 738, (D.C. Cir. 1997) and *Enviro Tech Intern., Inc. v. EPA*, 371 F.3d 370, 376-77 (7th Cir. 2004).

[14] *See e.g.*, *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 134 (D.D.C. 2012) ("To be sure, a party bears a heavier burden when seeking work-product protection for a multi-purpose document"), citing *In re Sealed Case*, 146 F.3d 881, 887 (1998).

But the District Court did not engage in any examination of whether the multipurpose nature of the documents undercut SEC's privilege claims, or whether the government-misconduct exception to the deliberative process privilege applied.

This Court should reverse because the District Court relied upon facially inadequate evidence. The District Court inaccurately identified how many records were at issue, failed to engage with contradictory evidence as to the scope of the *Vaughn* log, and allowed the agency to claim work-product protection for what even the SEC admits was purely factual data.

**2. The District Court erred by allowing SEC to redact names under Exemption 6 without providing a concrete, rather than abstract and theoretical privacy interest and by crediting the SEC's hypothetical privacy interest while simultaneously minimizing the public interest presented by NCLA.**

The district court erred in crediting the SEC's argument that the boilerplate recitations in its Index[15] justified the withholding of the names and email addresses of those involved in the "control deficiency." In granting summary judgment to SEC, the district court credited the SEC's boilerplate assertion that those directly involved in the "control deficiency" could be harassed if their names were not redacted from

[15] Plaintiff-appellant must again point out that as described *supra* this is the tip of the iceberg insofar as the SEC's Index covers a mere 55 pages of records while failing to address 2422 pages of other records that were withheld in full on the basis of overtly false declarations.

released documents. JA 200 *et seq*. The SEC had provided no concrete evidence raising the possibility of such harassment above the speculative level, as it was required to do. Rather, the potential harm asserted by SEC was and is entirely theoretical. Courts have routinely rejected such speculative privacy interests as worthy of Exemption 6. *See e.g.*, *Hum. Rts. Def. Ctr. v. United States Park Police*, 126 F.4th 708, 716 (D.C. Cir. 2025) ("Unlike agencies' showings in cases in which we have sustained withholdings under Exemption 6, the Park Police fails to provide any concrete basis to conclude that release of these officers' names raises threats "more palpable than mere possibilities."); *see also Jud. Watch, Inc. v. Food & Drug Admin*., 449 F.3d 141, 153 (D.C. Cir. 2006) (government's Exemption 6 privacy interests in names found sufficient because supporting affidavits detailed concrete and documented instances of past extreme violence against individuals similarly situated to those with the purported privacy interest).

The District Court also incorrectly stated that NCLA had failed to articulate any offsetting public interest in the disclosure of this information, when in fact it had. JA 178 (claiming plaintiff identified no "significant public interest"), *contra* JA 127 (Plaintiff argues the government withheld names of individuals who were "so influential they are conducting an 'internal review' of SEC malfeasance and are apparently influencing the government's policy with respect to its own violations of due process in at least dozens of high-profile cases."). The District Court did not

apply the standard under Exemption 6 which requires that, for material to be withheld under it, "the invasion of privacy [must] be clearly unwarranted. 5 U.S.C. § 552(b)(5). The District Court also failed to apply the Exemption 6 test in this Circuit, namely (1) whether disclosure would compromise a *substantial* as opposed to *de minimis* privacy interest; and (2) to then weigh any such substantial interest against the public interest in the release of such records. *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33–34 (D.C. Cir. 2002).

The District Court's Exemption 6 errors do not stop there. First, this Court has recognized that there is a strong "public interest in the disclosure of the identities of … censured employees … that were involved in the governmental wrongdoing, in order to hold the governors accountable to the governed." *Stern v. F.B.I.*, 737 F.2d 84, 92 (D.C. Cir. 1984). Second, district courts in this circuit have routinely found that privacy interests in the names of individuals are *de minimis* and have done so in situations where the privacy interest was much stronger than the speculative and vague interest the SEC cites. *See Charles v. Off. of the Armed Forces Med. Exam'r*, 935 F. Supp. 2d 86, 99 (D.D.C. 2013) (declining to allow the redaction of the names of service members killed in action because defendants failed to show that release of those names would "shock the sensibilities of surviving kin"); *People for the Am. Way Found v. National Park Service*, 503 F.Supp.2d 284, 306 (D.D.C. 2007) (even private citizens' names had to be released when they sought policy changes);

*Lardner v. DOJ*, No. 03—0180, 2005 WL 758267, at *17 (D.D.C. March 31, 2005) (ordering release of the names of unsuccessful pardon applicants, which would assist the public in analyzing the "circumstances in which the executive chooses to grant or deny a pardon and the factors that bear on that decision"); *Lardner v. DOJ*, 398 Fed. Appx. 609, 610 (D.C. Cir. 2010) (*per curiam*) (holding that public interest in names of unsuccessful clemency applicants outweighed applicants' privacy interests).

The District Court further erred in allowing the SEC to withhold staff and contractor email addresses. Purely private citizens' email addresses can sometimes be withheld, but facts can make email addresses particularly relevant and their release compelling under the public interest balancing test. *See Prechtel v. FCC*, 330 F.Supp.3d 320, 329-34 (D.D.C. 2018) (ordering citizens' email addresses released where it was alleged that spam comments had been submitted by fake commenters). Government employees' email addresses usually can't be withheld, because they have no privacy interest in concealing their taxpayer-provided email address. See *Kleinert v. BLM*, 132 F.Supp.3d 79 (D.D.C. 2015) (finding that defendant did not meet its burden to support use of Exemption 6 to withhold email addresses). SEC has never explained why that precept does not apply here, especially insofar as SEC simultaneously claimed that these particular contractors were the functional equivalent of government employees. JA 127-129.

The District Court further erred in allowing the SEC to withhold staff and contractors' phone numbers from the records on its Index. There was no privacy interest in such phone numbers that would have justified withholding them. *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) ("no privacy interest" in telephone numbers used for work); *Brown v. FBI*, 873 F.Supp.2d 388, 402 (D.D.C. 2012) ("Work telephone numbers are different from personal information that would be protected").[16] Thus, the district court erred in allowing the SEC to redact staff and contractor phone numbers.

**3. The District Court erred by crediting the SEC's speculative and vague assertions of foreseeable harm.**

Even assuming, *arguendo*, that SEC had met its burden to establish that Exemption 5 or 6 applied at all, the District Court erred in finding that the SEC had satisfied its burden to "concretely explain how" and "why actual harm would foreseeably result from release," of the withheld or redacted records. This foreseeable harm showing is an independent requirement under the 2016 FOIA Amendments before material otherwise privileged under Exemptions 5 and 6 can be

---

[16] *Brown* examined privacy interests under Exemption 7. If anything, Exemption 7 actions holding that there is insufficient privacy interest in work telephone numbers is stronger than similar holdings in Exemption 6 actions because Exemption 7 is less disclosure friendly than Exemption 6. *See e.g., United for FBI Integrity v. U.S. Dep't of Just.*, No. CV 22-2885 (RC), 2024 WL 961001, at *9 (D.D.C. Mar. 6, 2024) ("The parties spend much of their briefing focused on whether Exemption 7(C) or the more disclosure-friendly Exemption 6 should apply").

withheld. *Reporters Committee v. FBI*, 3 F.4th 350, 369-71 (D.C. Cir. 2021), citing 5 U.S.C. § 52(a)(8)(A)(i)(I). This issue is so important that the District Court was required to conduct a foreseeable harm analysis *sua sponte*, even if no party had properly raised the issue. *ACLU Immigrants' Rights Project v. United States Immigration & Customs Enf't*, 2021 U.S. Dist. LEXIS 45109, at *9 n.4 (S.D.N.Y. Mar. 10, 2021) (holding that the FOIA Improvement Act of 2016 added a provision that concerns segregability), *cf. Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022, 1023 (1999) (District Court reversed for failure to conduct sua sponte segregability analysis).

The District Court improperly credited SEC's general statements, none of which adequately described the harm that would result from release.

"Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld. Agencies cannot rely on "mere 'speculative or abstract fears,' or fear of embarrassment" to withhold information. Nor may the government meet its burden with generalized assertions[.]" *Reporters Comm. for Freedom of the Press v. FBI*, 453 U.S. App. D.C. 50, 69, 3 F.4th 350, 369 (2021) (internal citations omitted).

The SEC's declarations and accompanying Index, however, did not allege that release of the identified record(s)[17] would reasonably and foreseeably cause harm or have any chilling effect on agency deliberations or how or why. JA 131-135. Similarly, the declarations did not adequately establish the potential for harm. The Tallarico Declaration, JA 41 et seq., contained only three mentions of the word "harm" (once at ¶ 18 and twice in ¶ 20) and zero references to how the agency balanced any privacy interests against any public interest before or during its "foreseeable harm" analysis. The Katilius Declaration added no substance and failed altogether to examine the topic of foreseeable harm or personal privacy interests. JA 37 *et seq*.

With no reasonably articulated or plausible ill effect, it is hard to fathom how the District Court held that the release of the withheld information in the correspondence here, which SEC has already publicly acknowledged, would have produced foreseeable harm. No explanation of how disclosure would or could cause further harm here was attempted, much less provided. Indeed, disclosure could have only benefited both the agency and the public by providing assurances that identified and public deficiencies had already been or were going to be corrected. SEC never

[17] Insofar as the Index identified only 55 pages of records, while SEC later admitted 2,422 pages of records exist, it is axiomatic that SEC cannot have shown foreseeable harm as to the records the Index is silent about.

addressed this beyond general, boilerplate conclusory statements. Embarrassment is not an exemption to FOIA, and the fact of embarrassing facts having been revealed, seriously impacting numerous prosecuted parties' rights, only enhances the imperative for public release. How would the release of such information relating to a topic that has already been publicly acknowledged and ostensibly corrected cause public confusion or interfere with SEC's duties, including its duty of candor to the courts and its duties of disclosure to those it prosecutes? The SEC declarants do not explain how and simply assert that it will, as if such a truth were somehow self-evident. NCLA cannot speculate as to SEC's fears or its basis, and the district court should have similarly refrained and held the SEC to its burden of proof. Failure to do so is clear error. The D.C. Circuit in *Reporters Committee* found "wholly generalized and conclusory" an agency exemption claim that disclosure of whether a now-proposed rule was going to include or address a particular matter "would chill full and frank discussions between agency personnel and decision makers regarding a decision." *Reporters Committee v. FBI*, 3 F.4th at 370. It further found insufficiently detailed the statement that:

> Disclosure … would have an inhibiting effect upon agency decision-making and the development of policy because it would chill full and frank discussions between agency personnel and decision makers regarding a decision. If agency personnel know that their preliminary impressions, opinions, evaluations, or comments would be released to the general public, they would be less candid and more circumspect in

> expressing their thoughts, which would impede the fulsome discussion of issues necessary to reach a well-reasoned decision.

Defendant's explanation here for why release of the redacted material would allegedly chill the staff's ability to do their work is also far shorter, less detailed, and less unequivocal than the above-quoted explanation that this Court has already rejected. Indeed, it appears that the agency's assertions of harm essentially render the FOIA Improvement Act of 2014 a nullity: the SEC's proffered harms are either coextensive with the nature of exemption 5 (with the potential harm being a general fear that deliberations might be exposed to the public, rather than anything specifically related to the documents at issue and their release), or hypothetical (fear of harassment from the public, without any evidence of any particularized threats). The FOIA Improvement Act, however, contained "several changes to FOIA that were designed to increase the availability of government records to the public." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 357 (2021). To the extent that an agency's foreseeable harm analysis applies with equal measure to every document it has withheld – or conceivably could withhold – under Exemption 5 standing alone, that analysis cannot carry the day under the FOIA Improvement Act. Congress required more than the same tired arguments that would have supported an Exemption 5 claim in the first instance.

This Court should reverse the District Court's judgment because the FOIA Improvement Act demands that an agency show foreseeable harm will occur if documents are released, which is a separate and additional hurdle from whether Exemptions 5 or 6 apply in the first instance. By accepting the agency's nonspecific or even hypothetical fears of harm, the District Court effectively rendered the foreseeable harm standard a nullity.

**4. The SEC did not carry its burden to prove that it conducted a reasonable search for the first page of Orders Instituting Proceedings but rather asserted without foundation that no such records existed, or alternatively that a press release satisfied NCLA's FOIA request.**

SEC admits that NCLA requested the first page of every "Order Instituting Proceedings" in which the control deficiency occurred. JA 191. Indeed, the "first page" limitation was expressly negotiated with SEC's FOIA counsel as a way of avoiding non-fast-track processing and agreed to as a compromise that would reduce SEC's time and burden. JA 140, 146. Nonetheless, SEC at first claimed it had no responsive records. JA 46. Then it changed its tune and said all it had was a press release. *Id*. That claim is either sleight of hand or an outright untruth added on top of several already established.[18] SEC cannot use its own willful blindness to evade the requirement to conduct a reasonable search for records under FOIA, especially

[18] As explained above, SEC gave at least three different explanations for how many documents it was withholding in full. It was either 1,835, JA 132, or perhaps 1,855, JA 196, or maybe 2,422. JA. 179, 192.

where the search was agreed to in good faith negotiations by the parties to reduce the agency's burden and speed up production. JA 140-141.

"In order to obtain summary judgment, the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "An agency fulfills its obligations under FOIA if it can demonstrate *beyond material doubt* that its search was reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quotation marks and citation omitted, *emphasis added*). *Watkins L. & Advoc., PLLC v. United States Dep't of Just.*, 78 F.4th 436, 442–43 (D.C. Cir. 2023); *See also Heritage Found. v. Dep't of Just.*, 743 F. Supp. 3d 29, 35 (D.D.C. 2024) ("Courts apply a two-step framework to evaluate the adequacy of an agency's FOIA search."). The district court failed to analyze the SEC's search under this two-step framework, rather simply taking the SEC's declarations at their "word" and called it a day. JA 202.[19] This in no way suffices to show beyond any material doubt that the search was adequate.

---

[19] In addition to not describing in any way the search conducted for responsive records as required under FOIA, the relied upon declarations have been shown, as explained *supra*, to contain facial errors so pervasive that the entirety of each declaration is called into question.

"FOIA defines the term 'search' to mean 'to review ... agency records for the purpose of *locating those records which are responsive to a request.'*" (emphasis in original). *Charles v. Off. of Armed Forces Med. Exam'r*, 730 F. Supp. 2d 205, 213 (D.D.C. 2010), citing 5 U.S.C. § 552(a)(3)(D). Stated another way, an agency while not obligated to create new records must still carry the burden of showing that it "conduct[ed] a reasonably thorough investigation" to uncover the existence of responsive records. *McGehee v. CIA,* 697 F.2d 1095, 1101 (1983). The agency cannot meet this burden if it imposes its own constraints on the search, temporal or otherwise. *Id. See also Public Citizen v. Dep't of State*, 276 F.3d 634, 643–44 (D.C. Cir. 2002) (invalidating temporal limits imposed by agency because doing so permitted the agency to "withhold, with little or no justification, a potentially large number of relevant documents"). The agency likewise cannot prevail on summary judgment where it has "fail[ed] to describe in any detail what records were searched, by whom, and through what process." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551-52 (D.C. Cir. 1994). Nor can the agency claim that simply because it has not compiled a ready-to-go list of all cases in which the "control deficiency" occurred, it is being asked to improperly create a record under FOIA. Courts have long recognized that "sorting, extracting, and compiling pre-existing information from a database does not amount to the creation of a new record." *Ctr. for Investigative Reporting v. United States DOJ*, 14 F.4th 916, 938 (9th Cir. 2021) (internal citations

omitted). Finally, an agency cannot redefine its obligations to exclude from its search or production of records the first pages of all cases in which the control deficiency occurred, including closed and settled cases, when that limitation was negotiated in good faith with the agency in order to reduce its obligations and allow for a more reasonable timeline for compliance.

The SEC failed to carry its burden of proof below for two basic reasons:

First, because the SEC failed entirely to explain how the repositories of records were searched and by whom. Instead, SEC merely attempted to say that it was being asked to create a record rather than to query its database of administrative cases and produce the records NCLA requested and it had agreed to process. JA 202 (claiming SEC cannot be required to create a record), *contra*. JA 30 (SEC agrees to process request for first page of each order initiating proceedings). The SEC's declarations were thus insufficient to permit NCLA (or indeed the District Court) to determine the sufficiency of the search. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551-52 (D.C. Cir. 1994); *see also Cause of Action v. Internal Revenue Serv.*, 125 F. Supp. 3d 145, 157–58 (D.D.C. 2015) ("failure to identify any key words or search terms that were used, or to describe the types of searches that were performed in any detail, undermines any claim that the search was 'reasonably calculated to uncover all relevant documents.'").

Second, to the extent the SEC has simply concluded that by providing a copy of a press release that is limited to open cases only—thereby precluding both litigation and discovery in those cases—it has satisfied Plaintiff's request for records, the SEC has failed to explain how the press release was determined to include all records requested by NCLA and whether the press release was itself based on an adequate search of all repositories or files. At least one court in this Circuit has held that an agency's unreasonable reinterpretation of a request to exclude certain categories of records makes the ensuing search unreasonable or inadequate. *Am. Immigr. Council v. Exec. Office for Immigr. Review*, Civil Action No. 23-1952 (RC), 2025 U.S. Dist. LEXIS 27510, at *2 (D.D.C. Feb. 14, 2025). This case presents materially that same issue. The SEC additionally failed to explain as a general matter how providing a press release can ever satisfy a FOIA request, unless the request sought that press release by name or description, insofar as press releases and FOIA responses are fundamentally different species of documents with different purposes and different characteristics. *Cochran v. United States*, 770 F.2d 949, 954 (11th Cir. 1985) (contrasting FOIA and press releases).

Though the lack of detail as to what search, if any, was conducted by the SEC should be fatal to the district court's grant of summary judgment below, the SEC's search (or lack thereof) regarding the second category of records sought by NCLA runs afoul of exactly the sharp practices proscribed in *McGehee supra*, *e.g.*,

imposing artificial and unreasonable constraints (in that case limiting responsive records to those available at the time of request), to withhold otherwise responsive records known to the agency. For instance, while not describing what if any search was conducted, the Mark Tallarico Declaration dated July 12, 2023, simply states that:

> such a request would be an improper FOIA request because it would be asking the SEC to conduct further analysis to determine whether, and in which of those administrative proceedings, Enforcement staff accessed adjudication memoranda.

JA 31. But as NCLA made clear below, it "sought information regarding all affected matters, not only matters that were pending as of the date of the request." JA 143. The SEC's declaration does not explain what cutoff date was used, nor why SEC cannot simply query its own database as DOJ was required to do in the *Ctr. for Investigative Reporting* case. The SEC further and completely failed to describe in any way what it did to satisfy its "obligation to conduct a reasonably thorough investigation" or any investigation at all. *Charles v. Off. of Armed Forces Med. Exam'r*, 730 F. Supp. 2d 205, 214 (D.D.C. 2010). The SEC similarly implies but understandably does not further explain whether it is intentionally avoiding a formal determination as to the impact of the "control deficiency" on settled or closed cases as a ploy to engage in exactly the type of chicanery prohibited in *Public Citizen v. Dep't of State*, 276 F.3d 634, 643–44 (D.C. Cir. 2002) (so as to "withhold, with little

or no justification, a potentially large number of relevant documents”). This is of even greater concern given that the “control deficiency” misconduct dated back to at least 2017. The SEC’s all-too-convenient limitation of its search obligations to open cases allows it to completely insulate the vast majority of cases in which the improper file-sharing occurred. No court should be complicit in that transparently self-favoring exemption.

**5. The District Court below misapplied the consultant corollary because the “Consultant Corollary” is atextual and should not have protected the documents at issue in this case from disclosure.**

The so-called consultant corollary is found nowhere in the text of the Freedom of Information Act, and conflicts with the plain text of the statute. This Court should therefore use this opportunity to reverse any prior recognition of this purported “corollary” to Exemption 5. However, even under this Court’s existing consultant corollary doctrine as it stands, the SEC has not carried its burden.

“Exemption 5 of FOIA … exempts from this requirement “inter-agency or intra-agency memorandums or letters” which would not be available by law to a party other than an agency in litigation with the agency. *DOI v. Klamath Water Users Protective Ass’n*, 532 U.S. 1, 4 (2001), citing 5 USC § 552(b)(5). “Although neither the terms of the exemption nor the statutory definitions say anything about communications with outsiders, some Courts of Appeals have held that in some

circumstances a document prepared outside the Government may nevertheless qualify as an 'intra-agency' memorandum under Exemption 5." *Klamath*, 532 U.S. at 9. Even in 2001, prior to the rise of textualism as an interpretive imperative,[20] the Supreme Court only "assumed, without deciding" that the consultant corollary was a possible interpretation of FOIA. *Id.*, 532 U.S. at 4, 121 S. Ct. at 1063. At least one judge of the District Court recently recounted the history of judicial innovation in this arena, noted that Exemption 5 does "not say anything about communications with outsiders," and refused to expand the doctrine even further. *Georgia v. United States DOJ*, No. 1:21-cv-03138 (TNM), 2023 U.S. Dist. LEXIS 28341, at *10 (D.D.C. Feb. 20, 2023). The *Georgia* case expressly cautioned Exemption 5 "is not [meant] to protect Government secrecy pure and simple." *Id*.

As an independent grounds for reversal of the decision below, this Court should reject the blanket, unqualified and unreasoned application of the so-called consultant corollary that the District Court applied to the facts and hold that any and all documents shared by the SEC with outside actors at the Berkeley Research Group, General Dynamics, or any other outside contractor should have been released to NCLA. But even if this Court accepts application of the consultant corollary as a

[20] The Supreme Court as recently as 2022 declared that it will not "stray[] from its commitment to textualism." *West Virginia v. EPA*, 142 S. Ct. 2587, 2625 (2022).

general principle, it should nevertheless reject the SEC's abusively expansive use of the corollary that occurred in this case.

In *Klamath*, the Supreme Court noted the lower courts that invented the consultant corollary had assumed that "the consultant functions just as an employee [of the agency] would be expected to do," 532 U.S. at 11. The inferior courts which invented and applied this atextual doctrine, which is hostile to the text of the FOIA, assumed that so-called consultants do not properly represent "an interest of [their] own" nor "the interest of any other client when it advises the agency that hires [them]." *Id*. at 10-11.

In this action, the SEC has asserted that, "the SEC retained BRG to support its internal review relating to the control deficiency." JA 33. SEC further stated that "During the internal review, BRG contractors compiled forensic data and engaged in discussion with SEC staff as part of SEC staff's review of certain databases to assess the scope and potential impact of the SEC's control deficiency." *Id.* A similar arrangement was apparently entered into by SEC with General Dynamics. *Id*.

The chief problem with applying the consultant corollary to the documents at issue here is that the two "consultants" did not behave "just as an employee of the agency." The agency has clear statutory obligations to engage with its Inspector General when its own malfeasance is uncovered and to cooperate with the Inspector

General's Investigation. *See, e.g.*, 5 U.S.C. § 401. Instead of complying with a statute that provides for an independent and impartial investigation with public reporting, the agency elected to evade the statutory scheme by paying outside "contractors" to conduct what it calls an "internal review." The agency and its employees were obligated to call in the Inspector General and cooperate with his or her investigation instead. Any contractor behaving just as if they were an agency employee would similarly have reported malfeasance to the Inspector General, but that is not what Berkeley Research Group and General Dynamics did. Instead, they engaged in a very lucrative effort to evade the Inspector General Act and keep agency investigations firmly under the control of the agency's ordinary leadership rather than under the control of an independent watchdog.

This Court should reverse the District Court because the Inspector General Act is incompatible with the notion that an agency can hire its own favored vendors to investigate its wrongdoing and thereby keep such investigations secret from the public.

## **CONCLUSION**

Reversal in this case is not only warranted, but required. The Wall Street Journal has called out the SEC's scandal on at least three occasions, with its latest piece asking "What is Gary Gensler Hiding?"[21] The Appellants are entitled to know.

The SEC has dismissed dozens of presumptively meritorious in-house proceedings rather than allow litigation which would shed light on its in-house prosecutorial misconduct, thus foreclosing any judicial discovery into this misconduct. Yet SEC has somehow eluded even an Inspector General's investigation and report, while impertinently refusing to give a straight answer to Congress on how that failed to happen. Indeed, Congress itself has been successfully shut out, with Rep. Huizenga admonishing SEC's Enforcement Director for materially untruthful representations to the Committee on the timing between the occurrence of the breach in 2017, its discovery in 2020-2021 and SEC's belated disclosure in 2022, adding that the timeline "causes me to wonder how we are going

---

[21] Editorial Board, Wall St. J., *What is Gary Gensler Hiding? The SEC protects a security breach from public view*, https://www.wsj.com/opinion/sec-security-breach-gary-gensler-george-jarkesy-supreme-court-9917cfc7?gaa_at=eafs&gaa_n=AWEtsqdiPzcGTNcirVe_S0kVydGQtPvDnOK3kjVrmskYNhEUsC1ywjDgYHXi&gaa_ts=69936fec&gaa_sig=5BpMC6czfn0V-bnXV8OYsjoIdni6MnoOB29gwUGhmL41cqgwvrayaSNGrjM9fiSdLajHg6dGMbq62XL-f7Wj6w%3D%3D (October 13, 2023).

to get those answers," and calling SEC's behavior "problematic."[22] And as recently as this February, the American Securities Association has testified for the need to reform SEC to prevent repetition of the scandal.[23] How are future control deficiencies to be prevented if both Congress and the public does not even know what happened, much less how and why this was allowed to occur over the course of at least five years affecting the fairness and due process of scores of in-house prosecutions?

Affirming the district court's demonstrably flawed and legally erroneous ruling would be the final blow shattering any and all pretentions to government transparency and accountability. This Court, in the exercise of its duty to umpire the government's obligations under FOIA, should not be a player in this complete shutout.

---

[22] *Oversight of the SEC's Division of Enforcement: Hearing Before the H. Comm. on Fin. Servs.*, 117th Cong., at 26:00-28:00, 1:28:00-1:29.00 (July 19, 2022), https://tinyurl.com/3evp9kr6 (statement of Rep. Bill Huizenga) (noting an across the board failure to provide answers, and a "lack … of transparency" and a failure to be open and honest with the committee).

[23] *A New Day at the SEC: Restoring Accountability, Due Process, and Public Confidence*, Capital Markets Subcommittee https://www.youtube.com/live/BnCbSl5Xl7U (February 4, 2026) at 22:17 *et seq*.

The judgment of the District Court should be reversed. The Court should direct the District Court to require the SEC to disclose all documents identified by the SEC as responsive to NCLA's FOIA request.

Respectfully submitted,

/s/ Nathaniel Lindzen

Nathaniel Lindzen
The Law Office Of Nathaniel M. Lindzen
57 School Street
Wayland, Massachusetts 01778
Phone: (212) 810-7627
Email: nlindzen@corpfraudlaw.com

/s/ Matthew D. Hardin

Matthew Hardin
Hardin Law Office
101 Rainbow Drive #11506
Livingston, Texas 77399
Phone: (202) 802-1948
Email: matthewdhardin@gmail.com

*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   [ X ] this brief contains [*10,100*] words.

   [  ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief document complies with the typeface and type style requirements because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Century Schoolbook*]; *or*

   [  ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: February 17, 2026

/s/ Matthew D. Hardin
*Counsel for Appellant*