NOT YET SCHEDULED FOR ORAL ARGUMENT

# United States Court of Appeals for the District of Columbia Circuit

**No. 25-5383**

NEW CIVIL LIBERTIES ALLIANCE,

*Plaintiff-Appellant,*

*v.*

SECURITIES AND EXCHANGE COMMISSION,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:22-cv-03567-CJN, Honorable Carl J. Nichols, U.S. District Judge.*

# JOINT APPENDIX


MARY ALEXANDRA VERDI
U.S. SECURITIES AND EXCHANGE COMMISSION (SEC)
100 F Street, NE
Washington, DC 20549
(202) 551-5057
verdim@sec.gov

*Counsel for Defendant-Appellee*

MATTHEW HARDIN
HARDIN LAW OFFICE
101 Rainbow Drive #11506
Livingston, Texas 77399
(202) 802-1948
matthewdhardin@gmail.com

NATHANIEL LINDZEN
THE LAW OFFICE OF NATHANIEL M. LINDZEN
57 School Street
Wayland, Massachusetts 01778
(212) 810-7627
nlindzen@corpfraudlaw.com

*Counsel for Plaintiff-Appellant*


February 17, 2026


COUNSEL PRESS (800) 4-APPEAL • (390274)

## TABLE OF CONTENTS

**Page**


Docket Entries ........ JA1

Amended Complaint for Declaratory and Injunctive Relief, filed November 23, 2022 ........ JA6

Answer to Amended Complaint, filed January 25, 2023 ........ JA16

Notice of SEC's Motion for Summary Judgment, filed July 12, 2023 ........ JA25

SEC's Statement of Material Facts in Support of the SEC's Motion for Summary Judgment, filed July 12, 2023 ........ JA27

Declaration of Lizzetter Katilius, filed July 12, 2023 ........ JA37

Declaration of Mark Tallarico, filed July 12, 2023 ........ JA41

Exhibit 1: *Vaughn* Index from the Securities and Exchange Commission's Withholdings from Certain Records ........ JA49

Memorandum of Points and Authorities in Support of SEC's Motion for Summary Judgment, filed July 12, 2023 ........ JA69

Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed August 2, 2023 ........ JA101

Plaintiff's Response to Defendant's Statement of Undisputed Facts, filed August 2, 2023 ........ JA137

Declaration of Matthew Hardin, filed August 2, 2023 ........ JA155

Exhibit A: Email Chain ........ JA157

Exhibit B: Email Chain ........ JA158

Reply Memorandum in Support of SEC's Motion for Summary Judgment, filed August 23, 2023 ........ JA159

Supplemental Declaration of Mark Tallarico, filed August 23, 2023 ........ JA190

Order, filed August 29, 2025 ........ JA193

Memorandum Opinion, filed August 29, 2025 ........ JA194

APPEAL,CLOSED,TYPE I-FOIA

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:22-cv-03567-CJN

NEW CIVIL LIBERTIES ALLIANCE v. SECURITIES AND EXCHANGE COMMISSION
Assigned to: Judge Carl J. Nichols
Case in other court: USCA, 25-05383
Cause: 05:552 Freedom of Information Act

Date Filed: 11/23/2022
Date Terminated: 08/29/2025
Jury Demand: None
Nature of Suit: 895 Freedom of Information Act
Jurisdiction: Federal Question

**Plaintiff**

**NEW CIVIL LIBERTIES ALLIANCE** represented by

**Christopher Cochran Horner**
CHRISTOPHER C. HORNER, ESQ.
Max Will, PLLC
1725 I Street NW
Ste 300
PMB #2094
Washington, DC 20006
202-262-4458
Email: chris@chornerlaw.com
*ATTORNEY TO BE NOTICED*

**Margaret A. Little**
NEW CIVIL LIBERTIES ALLIANCE
New Civil Liberties Alliance
4250 N. Fairfax Drive, Suite 300
22203
Arlington, VA 20036
202-869-5212
Fax: 202-869-5238
Email: peggy.little@ncla.legal
*ATTORNEY TO BE NOTICED*

**Matthew D. Hardin**
HARDIN LAW OFFICE
101 Rainbow Drive
Pmb 11506
Livingston, TX 77399
202-802-1948
Email: matthewdhardin@gmail.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**SECURITIES AND EXCHANGE COMMISSION** represented by

**Mary Alexandra Verdi**
SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20549
(202) 551-5057
Fax: (202) 772-9263
Email: verdim@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/23/2022 | 1 | COMPLAINT against SECURITIES AND EXCHANGE COMMISSION ( Filing fee $ 402 receipt number ADCDC-9692350) filed by NEW CIVIL LIBERTIES ALLIANCE. (Attachments: # 1 Summons Proposed to AG, US Attorney, and Defendant, # 2 Civil Cover Sheet)(Hardin, Matthew) (Entered: 11/23/2022) |
| 11/23/2022 | | Case Assigned to Judge Carl J. Nichols. (zsl) (Entered: 11/23/2022) |
| 11/23/2022 | 2 | SUMMONS (3) Issued Electronically as to SECURITIES AND EXCHANGE COMMISSION, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zsl) (Entered: 11/23/2022) |
| 11/25/2022 | 3 | NOTICE of Appearance by Christopher Cochran Horner on behalf of NEW CIVIL LIBERTIES ALLIANCE (Horner, Christopher) (Entered: 11/25/2022) |
| 11/30/2022 | 4 | STANDING ORDER. Signed by Judge Carl J. Nichols on November 30, 2022. (lccjn3) (Entered: 11/30/2022) |
| 12/23/2022 | 5 | NOTICE of Appearance by Mary Alexandra Verdi on behalf of SECURITIES AND EXCHANGE COMMISSION (Verdi, Mary) (Entered: 12/23/2022) |
| 12/23/2022 | 6 | ANSWER to Complaint by SECURITIES AND EXCHANGE COMMISSION.(Verdi, Mary) (Entered: 12/23/2022) |
| 01/03/2023 | | MINUTE ORDER. Before the Court in this Freedom of Information Act case are a Complaint and an Answer. Pursuant to Local Civil Rule 16.3, the requirements of Federal Rule of Civil Procedure 26(f) are inapplicable. It is hereby ORDERED that the Parties shall confer and file a Joint Status Report on or before January 23, 2023. The Joint Status Report shall address: (1) the status of Plaintiff's FOIA request; (2) the anticipated number of documents responsive to Plaintiff's FOIA request; (3) the anticipated dates for release of the documents requested by Plaintiff; (4) whether a motion for stay is likely under Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976); (5) the possibility of prioritizing documents responsive to Plaintiff's request and any discussions regarding whether Plaintiff's request can be narrowed; and (6) whether the Parties anticipate summary judgment briefing and, if so, a proposed briefing schedule. Signed by Judge Carl J. Nichols on January 3, 2023. (lccjn3) (Entered: 01/03/2023) |
| 01/03/2023 | | Set/Reset Deadlines: Status Report due by 1/23/2023 (zjch, ) (Entered: 01/04/2023) |

| | | |
|---|---|---|
| 01/11/2023 | 7 | AMENDED COMPLAINT against SECURITIES AND EXCHANGE COMMISSION filed by NEW CIVIL LIBERTIES ALLIANCE.(Hardin, Matthew) (Entered: 01/11/2023) |
| 01/23/2023 | 8 | Joint STATUS REPORT by SECURITIES AND EXCHANGE COMMISSION. (Verdi, Mary) (Entered: 01/23/2023) |
| 01/25/2023 | 9 | ANSWER to 7 Amended Complaint by SECURITIES AND EXCHANGE COMMISSION.(Verdi, Mary) (Entered: 01/25/2023) |
| 02/02/2023 | | MINUTE ORDER. Upon consideration of 6 Joint Status Report, it is hereby ORDERED that the Parties shall file their next joint status report on or before March 1, 2023, and every 30 days thereafter. Signed by Judge Carl J. Nichols on February 2, 2023. (lccjn3) (Entered: 02/02/2023) |
| 02/02/2023 | | Set/Reset Deadlines: Joint Status Report due by 3/1/2023. (zsmc) (Entered: 02/02/2023) |
| 03/01/2023 | 10 | Joint STATUS REPORT by SECURITIES AND EXCHANGE COMMISSION. (Verdi, Mary) (Entered: 03/01/2023) |
| 03/07/2023 | 11 | NOTICE of Appearance by Margaret A. Little on behalf of NEW CIVIL LIBERTIES ALLIANCE (Little, Margaret) (Entered: 03/07/2023) |
| 03/31/2023 | 12 | Consent MOTION for Extension of Time to File *Joint Status Report* by NEW CIVIL LIBERTIES ALLIANCE. (Hardin, Matthew) (Entered: 03/31/2023) |
| 04/03/2023 | | MINUTE ORDER. Upon consideration of 12 Consent Motion for Extension, it is hereby ORDERED that the Motion is GRANTED. The Joint Status Report shall be filed on or before April 7, 2023. Signed by Judge Carl J. Nichols on April 3, 2023. (lccjn3) (Entered: 04/03/2023) |
| 04/04/2023 | | Set/Reset Deadlines: Joint Status Report due by 4/7/2023 (mac) (Entered: 04/04/2023) |
| 04/07/2023 | 13 | Joint STATUS REPORT by SECURITIES AND EXCHANGE COMMISSION. (Verdi, Mary) (Entered: 04/07/2023) |
| 05/08/2023 | 14 | Joint STATUS REPORT by SECURITIES AND EXCHANGE COMMISSION. (Verdi, Mary) (Entered: 05/08/2023) |
| 05/11/2023 | | MINUTE ORDER. Upon consideration of the 14 Joint Status Report, it is hereby ORDERED that the government shall file its motion for summary judgment on or before July 12, 2023; that Plaintiff shall file its Opposition and any cross-motion for summary judgment on or before August 2, 2023; that the government shall file its reply and any opposition to the cross-motion on or before August 23, 2023; and, if there is a cross-motion, Plaintiff shall file its reply on or before September 13, 2023. Signed by Judge Carl J. Nichols on May 11, 2023. (lccjn3) (Entered: 05/11/2023) |
| 06/07/2023 | 15 | Joint STATUS REPORT by SECURITIES AND EXCHANGE COMMISSION. (Verdi, Mary) (Entered: 06/07/2023) |
| 06/28/2023 | | MINUTE ORDER. Upon consideration of the request in 15 Joint Status Report, the Court hereby SUSPENDS its previous order to submit joint status reports every 30 days until after the Court rules on the parties' motions for summary judgment. Signed by Judge Carl J. Nichols on June 28, 2023. (lccjn3) (Entered: 06/28/2023) |

| | | |
|---|---|---|
| 07/12/2023 | 16 | MOTION for Summary Judgment by SECURITIES AND EXCHANGE COMMISSION. (Attachments: # 1 Statement of Facts, # 2 Declaration of Lizzette Katilius, # 3 Declaration of Mark Tallarico, # 4 Exhibit 1 (Vaughn Index), # 5 Memorandum in Support, # 6 Text of Proposed Order)(Verdi, Mary) (Entered: 07/12/2023) |
| 08/02/2023 | 17 | RESPONSE re 16 MOTION for Summary Judgment filed by NEW CIVIL LIBERTIES ALLIANCE. (Attachments: # 1 Statement of Facts, # 2 Affidavit Declaration of Matthew Hardin, # 3 Exhibit A to Hardin Declaration, # 4 B to Hardin Declaration)(Hardin, Matthew) (Entered: 08/02/2023) |
| 08/23/2023 | 18 | REPLY to opposition to motion re 16 MOTION for Summary Judgment filed by SECURITIES AND EXCHANGE COMMISSION. (Attachments: # 1 Declaration (Supplemental) of Mark Tallarico)(Verdi, Mary) (Entered: 08/23/2023) |
| 07/26/2024 | | Set/Reset Hearings: Motion Hearing set for 8/15/2024 at 09:00 AM in Courtroom 17- In Person before Judge Carl J. Nichols. (zcam) (Entered: 07/26/2024) |
| 08/03/2024 | 19 | NOTICE OF SUPPLEMENTAL AUTHORITY by SECURITIES AND EXCHANGE COMMISSION (Attachments: # 1 Exhibit A)(Verdi, Mary) (Entered: 08/03/2024) |
| 08/14/2024 | 20 | RESPONSE re 19 NOTICE OF SUPPLEMENTAL AUTHORITY filed by NEW CIVIL LIBERTIES ALLIANCE. (Hardin, Matthew) (Entered: 08/14/2024) |
| 08/15/2024 | | Minute Entry for proceedings held before Judge Carl J. Nichols: Motion Hearing held on 8/15/2024 re 16 MOTION for Summary Judgment. Motion 16 ; Taken Under Advisement. Order and Opinion to be issued by the Court. Court Reporter: Lorraine Herman. (zcam) (Entered: 08/15/2024) |
| 01/29/2025 | 21 | NOTICE OF SUPPLEMENTAL AUTHORITY by NEW CIVIL LIBERTIES ALLIANCE (Attachments: # 1 Exhibit A (D.C. Circuit Opinion))(Hardin, Matthew) (Entered: 01/29/2025) |
| 02/11/2025 | 22 | RESPONSE re 21 NOTICE OF SUPPLEMENTAL AUTHORITY filed by SECURITIES AND EXCHANGE COMMISSION. (Verdi, Mary) (Entered: 02/11/2025) |
| 04/28/2025 | 23 | NOTICE OF SUPPLEMENTAL AUTHORITY by NEW CIVIL LIBERTIES ALLIANCE (Hardin, Matthew) (Entered: 04/28/2025) |
| 05/01/2025 | 24 | RESPONSE re 23 NOTICE OF SUPPLEMENTAL AUTHORITY filed by SECURITIES AND EXCHANGE COMMISSION. (Verdi, Mary) (Entered: 05/01/2025) |
| 05/21/2025 | 25 | NOTICE OF SUPPLEMENTAL AUTHORITY by NEW CIVIL LIBERTIES ALLIANCE (Attachments: # 1 Supplement Fifth Circuit Opinion)(Hardin, Matthew) (Entered: 05/21/2025) |
| 06/10/2025 | 26 | RESPONSE re 25 NOTICE OF SUPPLEMENTAL AUTHORITY filed by SECURITIES AND EXCHANGE COMMISSION. (Verdi, Mary) (Entered: 06/10/2025) |
| 08/29/2025 | 27 | ORDER granting 16 Motion for Summary Judgment. Signed by Judge Carl J. Nichols on 8/29/2025. (lccjn3) (Entered: 08/29/2025) |

| | | |
|---|---|---|
| 08/29/2025 | 28 | MEMORANDUM AND OPINION. Signed by Judge Carl J. Nichols on 8/29/2025. (lccjn3) (Entered: 08/29/2025) |
| 10/28/2025 | 29 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 27 Order on Motion for Summary Judgment, 28 Memorandum & Opinion by NEW CIVIL LIBERTIES ALLIANCE. Filing fee $ 605, receipt number ADCDC-12046707. Fee Status: Fee Paid. Parties have been notified. (Hardin, Matthew) Modified on 10/28/2025 to add docket link/ docket text (zjm). (Entered: 10/28/2025) |
| 10/28/2025 | 30 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid re 29 Notice of Appeal to DC Circuit Court,. (zjm) (Entered: 10/28/2025) |
| 10/29/2025 | | USCA Case Number 25-5383 for 29 Notice of Appeal to DC Circuit Court, filed by NEW CIVIL LIBERTIES ALLIANCE. (znmw) (Entered: 10/30/2025) |
| 12/01/2025 | 31 | TRANSCRIPT OF MOTION HEARING PROCEEDINGS before Judge Carl J. Nichols, held on August 15, 2024. Page Numbers: 1-49. Date of Issuance: December 1, 2025. Court Reporter: Lorraine Herman. Email: lorraine_herman@dcd.uscourts.gov. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 12/22/2025. Redacted Transcript Deadline set for 1/1/2026. Release of Transcript Restriction set for 3/1/2026.(Herman, Lorraine) (Entered: 12/01/2025) |

---



| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/04/2026 17:55:31 | | | |
| **PACER Login:** | mypaceremail | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-03567-CJN |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NEW CIVIL LIBERTIES ALLIANCE<br>1225 19th Street NW<br>Suite 450<br>Washington, D.C. 20036<br><br>Plaintiff,<br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION<br>100 F Street NE<br>Washington D.C. 20549-2736<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 22-cv-3567 |

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff NEW CIVIL LIBERTIES ALLIANCE ("NCLA") for its Amended[1] Complaint against Defendant U.S. SECURITIES AND EXCHANGE COMMISSION ("SEC"), alleges as follows:

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq*. for declaratory, injunctive, and other relief, seeking immediate processing and release of agency records responsive to one FOIA request, following the SEC's failure to comply with the express terms of FOIA, including by failing to, e.g., fulfill its obligation to make a "determination" as that term is defined in *Citizens for Responsible Ethics in Washington v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013) ("*CREW*"), and SEC's constructive and actual withholding of responsive information in violation of Defendant's obligations.

[1] This Amendment is filed pursuant to Fed. R. Civ. P. 15 (a)(1)(B).

## PARTIES

2. Plaintiff NCLA is a nonpartisan, nonprofit civil rights group operating in the District of Columbia, founded to protect constitutional freedoms from violations by the administrative state. NCLA's activities include using state and federal open records law to inform the public on the operations of government.

3. Defendant SEC is an independent federal commission. The expressly-stated "mission of the SEC is to protect investors; maintain fair, orderly, and efficient markets; and facilitate capital formation." About the SEC, Sec. & Exch. Comm'n (Nov. 22, 2016), *available at* https://www.sec.gov/about.shtml. It is located in Washington, D.C.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because the defendant is a federal agency operating in the District of Columbia, because the Plaintiff also operates in the District of Columbia, and because the records are likely located, at least in part, in the District of Columbia.

6. NCLA is not required to further pursue administrative remedies before seeking relief in this Court because the Defendant has failed to make a timely "determination" as that term is defined in *CREW*, 711 F.3d at 188.

7. NCLA has no obligation to further exhaust administrative remedies with respect to its FOIA requests. *See*, *e.g.*, *Citizens for Resp. & Ethics in Wash. v. DOJ*, 436 F. Supp. 3d 354, 359 (D.D.C. 2020) (citing various other cases and holding that the statutory text of FOIA relieves plaintiffs of any exhaustion requirement in similar circumstances).

## NEW CIVIL LIBERTIES ALLIANCE'S FOIA REQUEST

8. On July 12, 2022, Plaintiff submitted by FOIA Online a request to Defendant seeking certain described information pertaining to a "control deficiency" that SEC had learned of by no later than the Fall of 2021 (and in all likelihood much earlier as a formal Government Accountability Office report dated November 15, 2021 referenced the control deficiency, see Sec. & Exch. Comm'n, U.S. Securities and Exchange Commission Fiscal Year 2021 Agency Financial Report 43-44 (Nov. 12, 2021), https://www.sec.gov/files/sec-2021-agency-financial-report.pdf). SEC first publicly acknowledged the "control deficiency" nearly five months later on April 5, 2022, by which enforcement personnel could have accessed, and according to the SEC did access, documents stored in the administrative adjudications system and documents of the Commission's Administrative Law Judges ("ALJs") and their staff. *See* Statement, Secs. & Exch. Comm'n, Commission Statement Relating to Certain Administrative Adjudications (Apr. 5, 2022), https://www.sec.gov/news/statement/commission-statement-relating-certain-administrative-adjudications: "As a result, in a number of adjudicatory matters, administrative support personnel from Enforcement, who were responsible for maintaining Enforcement's case files, accessed Adjudication memoranda via the Office of the Secretary's databases. Those individuals then emailed Adjudication memoranda to other administrative staff who in many cases uploaded the files into Enforcement databases." *Id.*

9. That April 5, 2022 statement references a "review team" and an outside investigator, Berkeley Research Group (BRG) which conducted interviews of "more than 20 Enforcement Staff members, as well as Adjudication staff members" handling just two of the Commission's proceedings in *SEC v. Cochran*, No. 21-1239 (S. Ct.), and *Jarkesy v. SEC*, No. 20-61007 (5th

Cir.)," which also suggests that the Commission knew of the deficiency for some time before publicly disclosing it..

10. The SEC statement indicates that the control deficiency affected other enforcement actions but found "it appropriate at this time to publish the review team's findings regarding two matters, and we anticipate publishing additional findings in the near future." NCLA's FOIA request seeks disclosure as to all affected matters.

11. NCLA also requested waiver of its fees pursuant to FOIA on the basis of its nonprofit status and noncommercial interests, and the public interest in the information requested.

12. On July 13, 2022, Defendant acknowledged the FOIA request at issue, assigned it number 22- 0249FOIA, and denied NCLA's request for fee waiver. The denial of the fee waiver is now a moot issue as a matter of law for reasons described herein below, including SEC's failure to make a timely "determination" and failure to comply with other FOIA deadlines.

13. NCLA has repeatedly taken measures, through its counsel, to remind SEC of its legal obligations and to bring SEC into compliance with the law without recourse to litigation. At every instance, SEC has remained out of compliance with the law.

14. On August 15, 2022, the SEC notified NCLA that it was extending the response deadline by ten days, making the due date for compliance August 23, 2022.

15. On August 26, 2022, NCLA wrote to SEC by email, "We are writing to inform you that the extended due date for the SEC's response to NCLA's July 12, 2022 FOIA request regarding the SEC's 'Control Deficiency'" has passed. "We have not received SEC's response as of the time of this writing. Please send us SEC's response to our request as required by SEC's FOIA regulations."

16. In response, and despite NCLA's submission of a proper FOIA request describing the information sought, SEC requested that NCLA "provide [the SEC FOIA Officer] with the suggested search terms and offices you intend our office to search for any potentially responsive records."

17. After NCLA reiterated to SEC twice, by emails dated August 26, 2022 and September 16, 2022, that the FOIA request NCLA submitted remained outstanding, SEC wrote on September 20, 2022, to state that SEC was narrowing the scope to certain of NCLA's several categories of described information.

18. In response, on September 20, 2022, NCLA wrote to SEC stating in relevant part:

> Our September 16, 2022, letter did not propose, or even suggest, that the scope of our request be narrowed. To the extent that your previous email sought to facilitate the Commission's search and sought guidance from us, we merely suggested that those specifically identified requests may be "prioritized" if they were more readily available.
>
> As we stated in the Sept. 16, 2022 letter, our initial request "reasonably described" all the records sought in requests 1-10. We are in no way narrowing the FOIA Request set forth in our July 12, 2022 letter.
>
> The SEC has a continuing obligation under the FOIA to timely release all records as requested by our letter dated July 12, 2022. Please provide all responsive documents in a timely manner.

19. The same day, SEC replied to NCLA, "Thank you for your response. We will proceed."

20. Defendant has not provided any substantive response or request for further information whatsoever. Nor has SEC provided any "determination."

21. By its inaction and failure to promptly process the request or make a determination, Defendant has improperly withheld records in response to this request in violation of FOIA.

22. FOIA provides that a requesting party is entitled to a substantive agency response on the information requested within twenty working days, including a determination of whether the agency intends to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i). Within that deadline, the

agency must also "determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents," and "inform the requester that it can appeal whatever portion of" the agency's "determination" is adverse to the requester. *CREW*, 711 F.3d at 188.

23. Title 5, section 552(a)(6)(A) of the U.S. Code prescribes that the twenty-day time limit shall not be tolled by the agency except in two narrow scenarios: the agency may make one request to the requester for information and toll the twenty-day period while it is awaiting such information that it has reasonably requested from the requester, 5 U.S.C. § 552(a)(6)(A)(ii)(I); and agencies may also toll the statutory time limit if necessary to clarify with the requester issues regarding fee assessment, *id.* § 552(a)(6)(A)(ii)(II). In either case, the Commission's receipt of the requester's response to the Commission's request for information or clarification ends the tolling period. *Id.*

24. SEC owed Plaintiff a timely "*CREW*" response to its request, including a "determination" as that term is defined in *CREW*, 711 F.3d at 188 ("[T]he agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the "determination" is adverse.").

25. As of this filing, SEC has still failed to provide NCLA with a "*CREW*" response to its July 12, 2022 request.

26. By failing to provide any substantive response or "determination" with respect to the request, as that term is defined in FOIA and as explained by the D.C. Circuit in *CREW*, SEC has waived any ability to obtain fees for processing this request.

27. In *Bensman v. National Park Service*, 806 F. Supp. 2d 31, 38 (D.D.C. 2011) this Court noted: "[The] effect of the 2007 Amendments was to impose consequences on agencies that do not

act in good faith or otherwise fail to comport with any of FOIA's deadline requirements. *See* S. Rep. No. 110-59. To underscore Congress's belief in the importance of the statutory time limit, the 2007 Amendments declare that '[a]n agency shall not assess search fees … if the agency fails to comply with *any time limit*' of FOIA." (alterations in original) (quoting 5 U.S.C. § 552(a)(4)(A)(viii)).

28. SEC is now past its statutory period for issuing such determinations on the above described requests without providing any substantive response to Plaintiff's request. As a consequence of SEC's violations of the statutory time limits of FOIA, SEC cannot now seek fees.

29. SEC's failure to respond to the July 12, 2022 FOIA request in a timely, proper, or lawful manner includes a failure to provide a timely or lawful "determination" within the meaning of FOIA and the precedents interpreting it.

30. Defendant SEC is thereby in violation of FOIA as it pertains to NCLA's July 12, 2022 request.

**FIRST CLAIM FOR RELIEF**
**Duty to Produce Records – Declaratory Judgment**

31. Plaintiff restates and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

32. Plaintiff has sought and has been denied production of responsive records reflecting the conduct of official business.

33. Plaintiff has a statutory right to the information it seeks, and Defendant has unlawfully withheld the information.

34. Plaintiff is not required to further pursue administrative remedies.

35. Plaintiff asks this Court to enter a judgment declaring that:

a. Plaintiff is entitled to records responsive to its FOIA request described above, and any attachments thereto, but Defendant has failed to provide the records;

b. SEC's processing of Plaintiff's FOIA requests described above is not in accordance with the law, and does not satisfy SEC's obligations under FOIA;

**c.** SEC must now produce records responsive to Plaintiff's requests and must do so without cost to the Plaintiff.

## SECOND CLAIM FOR RELIEF
## Duty to Produce Records – Injunctive Relief

36. Plaintiff restates and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

37. Plaintiff is entitled to injunctive relief compelling Defendant to produce the records responsive to the FOIA requests described herein.

38. Plaintiff is entitled to injunctive relief compelling Defendant to grant the Plaintiff's requests for a fee waiver.

39. Plaintiff asks the Court to enter an injunction ordering Defendant to produce to Plaintiff within twenty business days of the date of the order the requested records sought in Plaintiff's FOIA requests described above, and any attachments thereto, at no cost to the Plaintiff.

40. Plaintiff asks the Court to order the Parties to consult regarding withheld documents and to file a status report to the Court within thirty days after Plaintiff receives the last of the produced documents, addressing Defendant's preparation of a *Vaughn* log, and a briefing schedule for resolution of remaining issues associated with Plaintiff's challenges to SEC's withheld documents, if any, and any other remaining issues.

**<u>THIRD CLAIM FOR RELIEF</u>**
**<u>Costs And Fees – Injunctive Relief</u>**

41. Plaintiff restates and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

42. Pursuant to 5 U.S.C. § 552(a)(4)(E), the Court may assess against the United States reasonable attorney's fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

43.This Court should enter an injunction or other appropriate order requiring the Defendant to pay reasonable attorney's fees and other litigation costs reasonably incurred in this case.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests this Court:

1. Assume jurisdiction in this matter, and maintain jurisdiction until the Defendant complies with FOIA and every order of this Court;
2. Declare Defendant has violated FOIA by failing to provide Plaintiff with the requested records, by failing to grant Plaintiff's requests for a fee waiver, and/or by failing to notify Plaintiff of final determinations within the statutory time limit;
3. Declare that the documents sought by the request, as described in the foregoing paragraphs, are public records under 5 U.S.C. § 552 *et seq*. and must be disclosed;
4. Order Defendant to expeditiously provide the requested records to Plaintiff within twenty (20) business days of the Court's order;
5. Award Plaintiff's attorneys their fees and other litigation costs reasonably incurred pursuant to 5 U.S.C. § 552(a)(4)(E); and
6. Grant such other relief as this Court deems just and proper.

Respectfully submitted this the 11th day of January, 2022.

NEW CIVIL LIBERTIES ALLIANCE
By Counsel:

/s/Matthew D. Hardin
Matthew D. Hardin, D.C. Bar No. 1032711
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
Phone: (202) 802-1948
Email: MatthewDHardin@protonmail.com

Christopher Cochran Horner, D.C. Bar No. 440107
1725 I Street NW, Suite 300
Washington, DC 20006
Phone: (202) 262-4458
Email: chris@chornerlaw.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Defendant. | No.: 22-cv-03567-CJN |

**ANSWER TO AMENDED COMPLAINT**

Defendant Securities and Exchange Commission ("SEC") hereby responds to each numbered paragraph of New Civil Liberties Alliance's Amended Complaint as follows:

1. The allegations in this paragraph consist of Plaintiff's characterization of the nature of this action, to which no response is required. To the extent a response is required, the SEC denies that it has failed to comply with the FOIA and denies that it has withheld responsive information in violation of its obligations.

**PARTIES**

2. The SEC lacks knowledge or information sufficient to admit or deny the allegations in this paragraph.

3. The SEC denies that it is an independent federal commission and clarifies that it is an independent federal agency. The SEC admits the remainder of the allegations in this paragraph.

**JURISDICTION AND VENUE**

4. The allegations in this paragraph consist of legal conclusions, to which no response is required.

5. The allegations in this paragraph consist of legal conclusions, to which no response is required.

6. The allegations in the first clause of this paragraph consist of legal conclusions, to which no response is required. The SEC denies the allegations in the final clause of the paragraph.

7. The allegations in this paragraph consist of legal conclusions, to which no response is required.

**NEW CIVIL LIBERTIES ALLIANCE'S FOIA REQUEST**

8. The SEC admits that Plaintiff submitted a FOIA request online on July 12, 2022. The remaining allegations in the first sentence in this paragraph consist of Plaintiff's characterizations of its FOIA request and of an SEC agency financial report, to which no response is required, except that the SEC denies that it identified the control deficiency before the Fall of 2021. The SEC refers to the referenced FOIA request and SEC agency financial report for complete and accurate recitations of their contents. The remaining allegations in this paragraph consist of Plaintiff's characterization of an SEC statement dated April 5, 2022 ("SEC April 5 Statement"), to which no response is required. The SEC refers to the SEC April 5 Statement for a complete and accurate recitation of its contents.

9. The allegations in this paragraph consist of Plaintiff's characterization of the SEC April 5 Statement, to which no response is required, except that the SEC denies that it knew of

the control deficiency for some time before publicly disclosing it. The SEC refers to the SEC April 5 Statement for a complete and accurate recitation of its contents.

10. The allegations in the first sentence of this paragraph consist of Plaintiff's characterization of the SEC April 5 Statement, to which no response is required. The allegations in the second sentence of this paragraph consist of Plaintiff's characterization of its FOIA request, to which no response is required. The SEC refers to the SEC April 5 Statement and Plaintiff's FOIA request for complete and accurate recitations of their contents.

11. The SEC admits the allegations in this paragraph.

12. The SEC admits that it sent Plaintiff correspondence dated July 13, 2022 and July 15, 2022 regarding Plaintiff's FOIA Request No. 22-02497-FOIA. The SEC refers to the referenced correspondence for a complete and accurate recitation of its contents. The SEC denies that it assigned Plaintiff's FOIA request number 22- 0249FOIA and clarifies that it assigned the request number 22-02497-FOIA. The SEC also denies that it denied Plaintiff's fee waiver request on July 13, 2022 and clarifies that it denied the request on July 15, 2022. The second sentence of this paragraph consists of legal conclusions, to which no response is required. To the extent a response is required, the SEC denies that it has failed to comply with the FOIA.

13. The SEC admits that Plaintiff communicated with the SEC regarding Plaintiff's FOIA Request No. 22-02497-FOIA. The remaining allegations in the first sentence of this paragraph consist of Plaintiff's characterization of its communications, to which no response is required. The SEC refers to the referenced correspondence for a complete and accurate recitation of its contents. The SEC denies the allegations in the second sentence of this paragraph.

14. The SEC admits that it sent Plaintiff correspondence regarding Plaintiff's FOIA Request No. 22-02497-FOIA on August 15, 2022. The SEC refers to the referenced correspondence for a complete and accurate recitation of its contents.

15. The SEC admits that Plaintiff sent the SEC an email on August 26, 2022. The SEC refers to the referenced email for a complete and accurate recitation of its contents.

16. The SEC admits that it sent Plaintiff an email regarding Plaintiff's FOIA Request No. 22-02497-FOIA on August 30, 2022. The SEC refers to the referenced email for a complete and accurate recitation of its contents. The remaining allegations in this paragraph consist of Plaintiff's legal conclusions about its FOIA request, to which no response is required.

17. The SEC admits that Plaintiff sent the SEC correspondence regarding Plaintiff's FOIA Request No. 22-02497-FOIA on August 26, 2022 and September 16, 2022. The SEC also admits that it sent Plaintiff emails regarding Plaintiff's FOIA Request No. 22-02497-FOIA on September 20, 2022. The SEC refers to the referenced correspondence for a complete and accurate recitation of its contents. The SEC denies that it has narrowed the scope of Plaintiff's FOIA Request No. 22-02497-FOIA.

18. The SEC admits that Plaintiff sent the SEC an email regarding Plaintiff's FOIA Request No. 22-02497-FOIA on September 20, 2022. The SEC refers to the referenced email for a complete and accurate recitation of its contents.

19. The SEC admits that it sent Plaintiff an email regarding Plaintiff's FOIA Request No. 22-02497-FOIA on September 20, 2022. The SEC refers to the referenced email for a complete and accurate recitation of its contents.

20. The SEC denies the allegations in the first sentence of this paragraph. The allegations in the second sentence of this paragraph consist of legal conclusions, to which no response is required.

21. The allegations in this paragraph consist of legal conclusions, to which no response is required. To the extent a response is required, the SEC denies that it has improperly withheld records in violation of the FOIA.

22. The allegations in this paragraph consist of legal conclusions, to which no response is required.

23. The allegations in this paragraph consist of legal conclusions, to which no response is required.

24. The allegations in this paragraph consist of legal conclusions, to which no response is required.

25. The SEC admits that it has not provided a final determination regarding Plaintiff's FOIA Request No. 22-02497-FOIA but denies that it has failed to comply with the FOIA.

26. The allegations in this paragraph consist of legal conclusions, to which no response is required.

27. The allegations in this paragraph consist of legal conclusions, to which no response is required.

28. The allegations in this paragraph consist of legal conclusions, to which no response is required. To the extent a response is required, the SEC denies that it has not provided a substantive response to Plaintiff's FOIA request and has failed to comply with the FOIA.

29. The allegations in this paragraph consist of legal conclusions, to which no response is required. To the extent a response is required, the SEC denies that it has failed to respond to the FOIA request and to comply with the FOIA.

30. The allegations in this paragraph consist of legal conclusions, to which no response is required. To the extent a response is required, the SEC denies that it has failed to comply with the FOIA.

**FIRST CLAIM FOR RELIEF**
**Duty to Produce Records – Declaratory Judgment**

31. The SEC repeats its responses to paragraphs 1 through 30.

32. The SEC denies the allegations in this paragraph.

33. The allegations in this paragraph consist of legal conclusions, to which no response is required. To the extent a response is deemed necessary, the SEC denies that it has unlawfully withheld information.

34. The allegations in this paragraph consist of legal conclusions, to which no response is required.

35. The allegations in this paragraph consist of Plaintiff's prayer for relief, to which no response is required. To the extent a response is deemed necessary, the SEC denies that Plaintiff is entitled to the relief requested.

**SECOND CLAIM FOR RELIEF**
**Duty to Produce Records – Injunctive Relief**

36. The SEC repeats its responses to paragraphs 1 through 35.

37. The SEC denies the allegations in this paragraph.

38. The SEC denies the allegations in this paragraph.

39. The allegations in this paragraph consist of Plaintiff's prayer for relief, to which no response is required. To the extent a response is deemed necessary, the SEC denies that Plaintiff is entitled to the relief requested.

40. The allegations in this paragraph consist of Plaintiff's prayer for relief, to which no response is required. To the extent a response is deemed necessary, the SEC denies that Plaintiff is entitled to the relief requested.

**THIRD CLAIM FOR RELIEF**
**Costs and Fees – Injunctive Relief**

41. The SEC repeats its responses to paragraphs 1 through 40.

42. The allegations in this paragraph consist of legal conclusions, to which no response is required. The SEC refers to the referenced section of the United States Code for a complete and accurate recitation of its terms.

43. The allegations in this paragraph consist of Plaintiff's prayer for relief, to which no response is required. To the extent a response is deemed necessary, the SEC denies that Plaintiff is entitled to the relief requested.

**PRAYER FOR RELIEF**

The remaining paragraphs of Plaintiff's Amended Complaint constitute a prayer for relief, to which no response is required. To the extent a response is deemed necessary, the SEC denies that Plaintiff is entitled to the relief requested in the unnumbered paragraphs, including subparts (1) through (6), and further denies that Plaintiff is entitled to any relief whatsoever, including costs and attorneys' fees.

## GENERAL DENIAL

The SEC specifically denies each and every allegation of the Amended Complaint that is not specifically and expressly admitted herein.

## AFFIRMATIVE DEFENSES

1. The Amended Complaint fails to state a claim upon which relief can be granted as the SEC has not improperly withheld any documents under the FOIA.

2. Plaintiff's request is improper as it is overly broad and imposes an unreasonable burden upon the SEC to conduct a search without an unreasonable amount of effort.

3. "Exceptional circumstances" exist, within the meaning of 5 U.S.C. 552(a)(6)(C), that prevented the SEC from processing the FOIA request at issue within the statutory timeframe.

4. The SEC exercised due diligence in responding to the FOIA request at issue and to the other FOIA requests it receives.

5. The SEC has properly withheld documents or portions of documents under exemptions listed in the Freedom of Information Act, including but not limited to the exemptions in subsections 5 U.S.C. §§ 552(b)(4), (5), and (6).

6. Plaintiff is not entitled to costs or fees.

Dated: January 25, 2023

Respectfully submitted,

_/s/ *Alexandra Verdi*

ALEXANDRA VERDI
Office of the General Counsel
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549
Telephone: (202) 551-5057
Fax: (202) 772-9263
Email: verdim@sec.gov

*Counsel for Defendant Securities and Exchange Commission*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Defendant. | No. 22-cv-03567-CJN |

**NOTICE OF SEC'S MOTION FOR SUMMARY JUDGMENT**

Defendant U.S. Securities and Exchange Commission ("SEC") hereby moves for summary judgment under Federal Rule of Civil Procedure 56 in this Freedom of Information Act action. The SEC requests that this Court grant summary judgment in its favor because no genuine issue of material fact exists, and the SEC is entitled to judgment as a matter of law. In support of this motion, the SEC respectfully refers the Court to the accompanying statement of material facts, memorandum of points and authorities, and declarations of Lizzette Katilius and Mark Tallarico with an accompanying exhibit.

Dated: July 12, 2023

Respectfully submitted,

/s/ *Alexandra Verdi*
Alexandra Verdi (NY Reg. No. 5480934)
Office of the General Counsel
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549
Telephone: (202) 551-5057
Fax: (202) 772-9263
verdim@sec.gov

*Counsel for Defendant*
*U.S. Securities and Exchange Commission*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Defendant. | No. 22-cv-03567-CJN |

**SEC'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF THE SEC'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 7(h)(1), in support of its motion for summary judgment, the SEC respectfully submits this statement of material facts as to which the SEC contends there is no genuine issue:

1. On July 12, 2022, Plaintiff submitted a FOIA request to the SEC seeking "[c]opies of certain records and documents of the Commission related to its April 5, 2022 statement regarding an identified 'control deficiency' within the Commission's system for administrative adjudications." Katilius Decl. ¶3; *see also* ECF No. 7 at ¶8. Plaintiff's FOIA request specified that it was seeking documents "regarding the following occurrences":

   1. The Commission's discovery of the deficiencies that allowed enforcement personnel to access the administrative adjudications system and documents of the Commission's Administrative Law Judges ('ALJs') and their staff.
   2. All instances in which enforcement personnel accessed, or could have accessed, documents stored in the administrative adjudications system, including a list and/or names of all cases in which enforcement personnel accessed or could have accessed

said system as well as the documents in every such case improperly accessed by enforcement personnel.

3. The Commission's determinations regarding the remedial measures that should be taken to address deficiencies that allowed enforcement personnel to access the administrative adjudications system.
4. The Commission's determination that 'access to the Adjudication memoranda would not have affected any Enforcement filings' in the following cases: a. *David S. Hall, P.C. d/b/a The Hall Group CPAs, David S. Hall, CPA, Michelle L. Helterbran Cochran, CPA, and Susan A. Cisneros*, Admin. Proc. 3-17228; *SEC v. Cochran*, No. 21- 1239 (S. Ct.); and b. *John Thomas Capital Mgmt. Grp. LLC d/b/a Patriot28 LLC, and George R. Jarkesy Jr.*, Admin. Proc. 3-15255; *Jarkesy v. SEC*, No. 20-61007 (5th Cir. May 18, 2022).
5. The Commission's findings regarding the effects of the control deficiency on all other cases in which the Commission identified that enforcement personnel accessed, or could have accessed the administrative adjudications system.
6. The decision of the Commission and its Office of the General Counsel to hire Berkley Research Group, LLC ('BRG'), a private consulting firm, to support the Commission's internal review of the control deficiency and the contract bid request, if any
7. Any reports, memoranda, or communications produced by BRG related to their review of the control deficiency
8. Copies of all contracts, including bid requests and scope of works, with BRG for the relevant time period.

9. The involvement of the Commission's Office of Inspector General ('OIG') in the Commission's discovery and remedy of the control deficiency and the OIG's subsequent findings, if any.

10. The Commission's determination to issue the April 5, 2022 statement, the pending report referenced therein, and any future actions the Commission plans to take regarding control deficiencies between the Adjudicatory and Enforcement Divisions.

Katilius Decl. ¶4.

2. On November 23, 2022, Plaintiff filed the complaint in this lawsuit concerning its FOIA request. *See* ECF No. 1 at ¶8; *see also* ECF No. 6 at ¶8.

3. On December 23, 2022, the SEC filed an answer to Plaintiff's complaint. *See* ECF No. 6.

4. On January 11, 2023, Plaintiff filed an amended complaint. *See* ECF No. 7.

5. On January 18, 2023, the FOIA Office issued an interim partial response to Plaintiff's FOIA request and released to Plaintiff 33 pages of records. Katilius Decl. ¶5. The FOIA Office redacted the records in part under FOIA Exemptions 4 and 6, 5 U.S.C. § 552(b)(4) and (6). *Id.* In its response, the FOIA Office explained that it would address sub-part 10 of the FOIA request in three parts. *Id.* The FOIA Office further explained that its interim partial response addressed Plaintiff's FOIA request sub-parts 2, 5, 8, 9, 10(b), and 10(c). *Id.*

6. On January 25, 2023, the SEC filed an answer to Plaintiff's amended complaint. *See* ECF No. 9.

7. On March 22, 2023, the FOIA Office sent a letter to the FOIA requester informing it that, among other things, the SEC had identified approximately 3,700 records, consisting of approximately 51,700 pages, that may be responsive to the remaining seven sub-

parts of the FOIA request (items 1, 3, 4(a) and (b), 6, 7, and 10(a)). Katilius Decl. ¶6. The letter also stated that, because the records potentially responsive to this request are voluminous, the FOIA Office would process them in the FOIA Office's Complex track. *Id.* The letter asked that, if Plaintiff was still interested in having the remaining sub-parts of the request processed, Plaintiff should contact the FOIA Office and identify the records that should be placed in the Complex track. *Id.*

8. In March, April, and May 2023, the SEC's counsel and Plaintiff's counsel discussed ways of narrowing the remaining seven sub-parts of Plaintiff's FOIA request (items 1, 3, 4(a) and (b), 6, 7, and 10(a)). Tallarico Decl. ¶5. The parties ultimately agreed that the SEC would process two categories of records instead of those seven sub-parts: (1) the report or reports prepared by Berkeley Research Group (BRG), with all supporting documents, interviews, statements etc. ("First Category"), and (2) the first page of the Order Instituting Proceedings (a public document) of every administrative proceeding in which the "control deficiency" occurred ("Second Category"). *Id.*; *see also* ECF No. 15 at 1-2.

9. On June 23, 2023, the FOIA Office issued a response to the First Category and released to Plaintiff 55 pages of records. Katilius Decl. ¶7. The records were redacted in part under FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5) and (6). *Id.* The FOIA Office also informed Plaintiff that it was withholding 1,835 pages of records in full pursuant to FOIA Exemptions 5 and 6. *Id.* The documents are all emails between SEC staff and SEC contractors about the SEC's internal review related to the control deficiency issue, and they contain discussions about conducting the internal review. Tallarico Decl. ¶7. Many of the emails have attachments with forensic data generated by BRG for use in the internal review. *Id*. One email

chain includes consultative discussions about a draft Commission statement and attaches the draft statement. *Id.*

10. For the Second Category, the SEC initially informed Plaintiff that it was withholding all the requested documents under Exemption 5. Tallarico Decl. ¶21.

11. On June 2, 2023, the SEC issued a statement regarding a control deficiency related to the separation of the SEC's enforcement and adjudicatory functions. *Second Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (June 2, 2023), https://www.sec.gov/news/statement/second-commission-statement-relating-certain-administrative-adjudications ("Second Statement"); Tallarico Decl. ¶22.

12. On June 13, 2023, the SEC's counsel emailed Plaintiff's counsel to inform them that the Second Statement allowed Plaintiff to access the Orders Instituting Proceedings that it was seeking in its Second Category. Tallarico Decl. ¶23. The SEC's counsel stated that by citing and providing links to the Orders Instituting Proceedings and electronic dockets in the Second Statement and its accompanying exhibits, the SEC had provided all documents responsive to the Second Category. *Id.* Plaintiff's counsel responded that Plaintiff also sought information about whether any closed, settled, or otherwise disposed-of matters were affected by the control deficiency. *Id.* The SEC's counsel responded that the SEC had provided responsive materials for every administrative proceeding in which it had made a determination that one or more Adjudication memoranda were accessed by Enforcement staff. *Id.* The SEC's Counsel further stated that to the extent that Plaintiff sought "the first page of the Order Instituting Proceedings" for additional administrative proceedings, such a request would be an improper FOIA request because it would be asking the SEC to conduct further analysis to determine

whether, and in which of those administrative proceedings, Enforcement staff accessed adjudication memoranda. *Id*.

13. The SEC has not withheld any information in connection with the Second Category. Tallarico Decl. ¶25.

14. Plaintiff informed the SEC that its position is that it can only agree that the SEC has satisfied the Second Category request if it receives information regarding closed, settled, or otherwise disposed of administrative proceedings affected by the control deficiency. *See* Tallarico Decl. ¶24.

15. The parties agreed that, on summary judgment, the issue to be resolved is the SEC's withholding of information from records responsive to the two categories of records that the parties agreed the SEC would process after the FOIA Office notified Plaintiff that its request was too voluminous to process outside of the Complex track. ECF No. 15 at 2; Tallarico Decl. ¶6. In light of the parties' subsequent discussions about the Second Category, the SEC is also addressing whether the Commission has provided a complete response to the Second Category. Tallarico Decl. ¶6.

16. In connection with the First Category, pursuant to FOIA Exemption 5, the SEC withheld certain information from 55 pages of records and withheld in full 1,835 pages of records under the attorney work-product doctrine and the deliberative process privilege. Tallarico Decl. ¶8.

17. The information withheld under FOIA Exemption 5 consists of information about the SEC's internal review of the control deficiency, which was conducted under the direction of and led by the SEC's Office of the General Counsel ("OGC") in anticipation of litigation. Tallarico Decl. ¶8; Ex. 1 (*Vaughn* index).

18. All of the information the SEC withheld under Exemption 5 is attorney work-product. Tallarico Decl. ¶10. The internal review was conducted by SEC staff and contractors at the direction and under the supervision of SEC attorneys in OGC in anticipation of litigation involving Enforcement cases tied to the control deficiency. *Id*.

19. As reflected in a contract between the SEC and BRG, the SEC retained BRG to support its internal review relating to the control deficiency. Tallarico Decl. ¶11. During the internal review, BRG contractors compiled forensic data and engaged in discussion with SEC staff as part of SEC staff's review of certain databases to assess the scope and potential impact of the SEC's control deficiency. *Id*. BRG conducted forensic analysis at the request of the SEC and to support the SEC's work. *Id.* BRG has no interest related to the SEC's control deficiency other than providing assistance pursuant to its contract with the SEC. *Id.*

20. The SEC retained General Dynamics contracting staff to support the SEC's Office of Information Technology ("OIT"). Tallarico Decl. ¶12. During the internal review, General Dynamics contractors helped OIT staff provide information to BRG and the review team so that BRG could conduct its forensic analysis. *Id.* General Dynamics contractors performed this work at the request of OIT and to support the SEC's work. *Id.* General Dynamics was not retained to assist with the internal review and has no interest related to the SEC's control deficiency other than providing assistance to OIT pursuant to its contract with the SEC. *Id.*

21. Litigation relating to the control deficiency was foreseeable at the time of the internal review because the SEC recognized that parties in affected administrative proceedings might raise claims in the administrative proceedings, in appeals from those proceedings, or in independent cases in federal courts related to the control deficiency. Tallarico Decl. ¶13.

22. The records reflect SEC staff's consultative discussions before final agency decisions or findings had been made concerning the Commission's internal review relating to the control deficiency. Tallarico Decl. ¶8.

23. The SEC also withheld portions of an email that contained pre-decisional discussions concerning a draft of a Commission statement relating to the control deficiency, as well as the draft that was discussed. *See* Ex. 1 at 13; Tallarico Decl. ¶9. Specifically, the records reflect SEC staff's discussions, edits, and recommendations concerning the draft statement. Tallarico Decl. ¶9.

24. Additionally, pursuant to FOIA Exemption 6, the SEC withheld certain names, email addresses, and telephone numbers of SEC staff and SEC contractors. Tallarico Decl. ¶17; Ex. 1 (*Vaughn* index). The SEC also withheld the names of SEC staff who were involved in the internal review, either as individuals who had access to the databases at issue in the control deficiency or as individuals being interviewed by the internal review team. *Id*.

25. SEC staff reviewed the records responsive to the First Category to determine whether any portions of those records could be segregated for public disclosure. Tallarico Decl. ¶19. SEC staff have provided all non-exempt information that could be segregated from exempt information. *Id.*

26. SEC staff have reviewed the records responsive to the First Category to determine if it is reasonably foreseeable that disclosure would harm an interest protected by one of the FOIA's statutory exemptions or the disclosure is prohibited by law. Tallarico Decl. ¶20. The SEC has disclosed all portions of documents that it reasonably foresees could be disclosed without causing harm. *Id.*

27. Disclosure of the information relating to the SEC's internal review that the SEC is withholding under the deliberative process privilege would chill ongoing discussions about addressing the control deficiency the SEC identified as well as discussions about addressing future issues the SEC may face. Tallarico Decl. ¶15. Public release of these discussions would also likely deter SEC staff's future willingness to share ideas, recommendations, and preliminary thoughts on issues and matters before them. *Id*. These confidential discussions and the data generated from the discussions also formed the basis for advice conveyed to SEC officials who needed to decide what actions to take in light of the internal review. *Id*. If these documents were disclosed in response to FOIA requests, staff across the SEC would likely limit their discussions and inhibit their candor in discussing issues relating to the control deficiency and other issues that may arise in the future. *Id*. Such chilling would make it more difficult for SEC leadership to obtain the advice necessary to efficiently and effectively address complex issues about its operations and would hamper comprehensive reviews designed to address and improve those issues. *Id*. Release of the discussions concerning the draft Commission statement, as well as the draft itself, would likely cause confusion to the public because these discussions and the draft statement contain deliberations about what the final statement should be and are not reflective of the publicly released statement. *Id*.

28. Overall, disclosure would jeopardize the candid and comprehensive discussions that are essential for efficient and effective decision-making. Tallarico Decl. ¶16.

29. Disclosure of the information relating to the SEC's internal review that the SEC is withholding under the attorney work-product doctrine would deprive the SEC of its ability to withhold any information in future litigation, and consequently would deprive SEC attorneys of a

zone of privacy within which to weigh facts and evidence and evaluate how to handle future litigation. Tallarico Decl. ¶14.

30. Additionally, disclosure of information in which individuals have a privacy interest would create foreseeable harm by unnecessarily exposing personal information to the public. Tallarico Decl. ¶18. Releasing the information would not provide information about the operations of the SEC. *Id.*

Dated: July 12, 2023

Respectfully submitted,

/s/ *Alexandra Verdi*
Alexandra Verdi (NY Reg. No. 5480934)
Office of the General Counsel
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549
Telephone: (202) 551-5057
Fax: (202) 772-9263
verdim@sec.gov

*Counsel for Defendant*
*U.S. Securities and Exchange Commission*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Defendant. | No. 22-cv-03567-CJN |

**DECLARATION OF LIZZETTE KATILIUS**

I, Lizzette Katilius, declare as follows:

1. I am a Freedom of Information Act ("FOIA") Branch Chief in the Office of FOIA Services ("FOIA Office") for the U.S. Securities and Exchange Commission ("SEC"). I have served in this capacity since November 2010. As a FOIA Branch Chief, I am responsible for, among other things, coordinating and processing FOIA requests, organizing searches for documents responsive to FOIA requests, making determinations as to whether requested information is exempt from disclosure under FOIA, and communicating with FOIA requesters. I am familiar with the FOIA.

2. In making this declaration, I have relied on my personal knowledge, or where my personal knowledge was lacking or incomplete, I have relied on my review of records routinely maintained in the ordinary course of business or representations made to me by other SEC staff.

3. On July 12, 2022, Plaintiff submitted a FOIA request to the SEC seeking "[c]opies of certain records and documents of the Commission related to its April 5, 2022 statement regarding an identified 'control deficiency' within the Commission's system for

administrative adjudications."

4. Plaintiff's FOIA request specified that it was seeking documents "regarding the following occurrences":

1. The Commission's discovery of the deficiencies that allowed enforcement personnel to access the administrative adjudications system and documents of the Commission's Administrative Law Judges ('ALJs') and their staff.
2. All instances in which enforcement personnel accessed, or could have accessed, documents stored in the administrative adjudications system, including a list and/or names of all cases in which enforcement personnel accessed or could have accessed said system as well as the documents in every such case improperly accessed by enforcement personnel.
3. The Commission's determinations regarding the remedial measures that should be taken to address deficiencies that allowed enforcement personnel to access the administrative adjudications system.
4. The Commission's determination that 'access to the Adjudication memoranda would not have affected any Enforcement filings' in the following cases: a. David S. Hall, P.C. d/b/a The Hall Group CPAs, David S. Hall, CPA, Michelle L. Helterbran Cochran, CPA, and Susan A. Cisneros, Admin. Proc. 3-17228; SEC v. Cochran, No. 21- 1239 (S. Ct.); and b. John Thomas Capital Mgmt. Grp. LLC d/b/a Patriot28 LLC, and George R. Jarkesy Jr., Admin. Proc. 3-15255; Jarkesy v. SEC, No. 20-61007 (5th Cir. May 18, 2022).
5. The Commission's findings regarding the effects of the control deficiency on all other cases in which the Commission identified that enforcement personnel

accessed, or could have accessed the administrative adjudications system.

6. The decision of the Commission and its Office of the General Counsel to hire Berkley Research Group, LLC ('BRG'), a private consulting firm, to support the Commission's internal review of the control deficiency and the contract bid request, if any
7. Any reports, memoranda, or communications produced by BRG related to their review of the control deficiency
8. Copies of all contracts, including bid requests and scope of works, with BRG for the relevant time period.
9. The involvement of the Commission's Office of Inspector General ('OIG') in the Commission's discovery and remedy of the control deficiency and the OIG's subsequent findings, if any.
10. The Commission's determination to issue the April 5, 2022 statement, the pending report referenced therein, and any future actions the Commission plans to take regarding control deficiencies between the Adjudicatory and Enforcement Divisions.

5. On January 18, 2023, the FOIA Office issued an interim partial response to Plaintiff's FOIA request and released to Plaintiff 33 pages of records. The FOIA Office redacted the records in part under FOIA Exemptions 4 and 6, 5 U.S.C. § 552(b)(4) and (6). In its response, the FOIA Office explained that it would address sub-part 10 of the FOIA request in three parts. The FOIA Office further explained that its interim partial response addressed Plaintiff's FOIA request sub-parts 2, 5, 8, 9, 10(b), and 10(c).

6. On March 22, 2023, the FOIA Office sent a letter to the FOIA requester

informing it that, among other things, the SEC had identified approximately 3,700 records, consisting of approximately 51,700 pages, that may be responsive to the remaining seven sub-parts of the FOIA request (items 1, 3, 4(a) and (b), 6, 7, and 10(a)). The letter also stated that, because the records potentially responsive to this request are voluminous, the FOIA Office would process them in the FOIA Office's Complex track. The letter asked that, if Plaintiff was still interested in having the remaining sub-parts of the request processed, Plaintiff should contact the FOIA Office and identify the records that should be placed in the Complex track.

7. Counsel in the SEC's Office of the General Counsel informed the FOIA Office that SEC's counsel and Plaintiff's counsel discussed ways of narrowing the remaining seven sub-parts of Plaintiff's FOIA request. The first narrowed category that Plaintiff seeks is the report or reports prepared by Berkeley Research Group (BRG), with all supporting documents, interviews, statements etc. ("First Category"). On June 23, 2023, the FOIA Office issued a response to the First Category of Plaintiff's FOIA request and released to Plaintiff 55 pages of records. The records were redacted in part under FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5) and (6). The FOIA Office also informed Plaintiff that it was withholding 1,835 pages of records in full pursuant to FOIA Exemptions 5 and 6.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my information and belief.

Executed on the 12th day of July, 2023 at Washington, D.C.

L Katilius

LIZZETTE KATILIUS

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Defendant. | No. 22-cv-03567-CJN |

**DECLARATION OF MARK TALLARICO**

I, Mark Tallarico, declare as follows:

1. I am an attorney in the Office of the General Counsel ("OGC") of the U.S. Securities and Exchange Commission ("SEC"). I have served in this capacity since November 2014. My duties include reviewing administrative appeals of decisions issued by the SEC's Office of FOIA Services ("FOIA Office") regarding Freedom of Information Act ("FOIA") requests and handling FOIA litigation against the SEC. I also serve as the FOIA Liaison for OGC and coordinate OGC's search for documents that may be responsive to a FOIA request. I am familiar with the SEC's procedures for responding to and searching for documents responsive to FOIA requests.

2. I submit this declaration to explain defendant SEC's processing of the FOIA requests at issue in the above-captioned action.

3. I make this declaration in my official capacity. The statements I make in this declaration are based on my review of the official files and records of the SEC maintained routinely in the ordinary course of business, my own personal knowledge, or information I acquired through the performance of my official duties or from other SEC staff.

4. Attached as **Exhibit 1** to this declaration is the *Vaughn* Index prepared by OGC staff in connection with the release made in response to the first category of Plaintiff's narrowed FOIA request (as described further below). The *Vaughn* Index lists the withholdings from 1,890 pages of records, withheld in full or in part, in connection with the request and summarizes the withholdings and the bases and justifications for the withholdings. For each withheld document, the *Vaughn* Index provides the date the document was sent, the author and recipient of the document, a description of the withheld document, the FOIA exemptions relied on for the withholdings, and an explanation of the basis for applying the FOIA exemptions. I have reviewed the *Vaughn* Index, and it accurately describes the information the SEC has withheld and the bases for applying FOIA exemptions.

5. In March, April, and May 2023, the SEC's counsel and Plaintiff's counsel discussed ways of narrowing seven sub-parts of Plaintiff's FOIA request (items 1, 3, 4(a) and (b), 6, 7, and 10(a)). The parties ultimately agreed that the SEC would process two categories of records instead of those seven sub-parts: (1) the report or reports prepared by Berkeley Research Group (BRG), with all supporting documents, interviews, statements etc. ("First Category"), and (2) the first page of the Order Instituting Proceedings (a public document) of every administrative proceeding in which the "control deficiency" occurred ("Second Category"). *See also* ECF 15.

6. The parties agreed that, on summary judgment, the issue to be resolved is the SEC's withholding of information from records responsive to the two categories of records that the parties agreed the SEC would process after the FOIA Office notified Plaintiff that its request was too voluminous to process outside of the Complex track. In light of the parties' subsequent discussions about the Second Category (described below in ¶¶21-25), the SEC is also addressing

whether the Commission has provided a complete response to the Second Category.

**FIRST CATEGORY**

**The SEC Withheld Information Under FOIA Exemption 5**

7. The records the FOIA Office released on June 23, 2023 in response to the First Category are all emails between SEC staff and SEC contractors about the SEC's internal review related to the control deficiency issue, and they contain discussions about conducting the internal review. Many of the emails have attachments with forensic data generated by BRG for use in the internal review. One email chain includes consultative discussions about a draft Commission statement and attaches the draft statement.

8. Pursuant to FOIA Exemption 5, the SEC withheld certain information from 55 pages of records and withheld in full 1,835 pages of records under the attorney work-product doctrine and the deliberative process privilege. The withheld information consists of information about the SEC's internal review relating to the control deficiency, which was conducted under the direction of and led by the SEC's Office of the General Counsel ("OGC") in anticipation of litigation involving Enforcement cases tied to the control deficiency. The records reflect SEC staff's consultative discussions before final agency decisions or findings had been made concerning the Commission's internal review relating to the control deficiency. The *Vaughn* Index provides more detail about the records and the bases for withholding them. *See* **Exhibit 1**.

9. The SEC also withheld portions of an email chain that contained pre-decisional discussions concerning a draft of a Commission statement relating to the control deficiency, as well as the draft that was discussed. Specifically, the records reflect SEC staff's discussions, edits, and recommendations concerning the draft statement.

10. All of the information the SEC withheld under Exemption 5 is attorney work-product. The internal review was conducted by SEC staff and contractors at the direction and under the supervision of SEC attorneys in OGC in anticipation of litigation involving Enforcement cases tied to the control deficiency.

11. As reflected in a contract between the SEC and BRG, the SEC retained BRG to support its internal review relating to the control deficiency. During the internal review, BRG contractors compiled forensic data and engaged in discussion with SEC staff as part of SEC staff's review of certain databases to assess the scope and potential impact of the SEC's control deficiency. BRG conducted forensic analysis at the request of the SEC and to support the SEC's work. BRG has no interest related to the SEC's control deficiency other than providing assistance pursuant to its contract with the SEC.

12. The SEC retained General Dynamics contracting staff to support the SEC's Office of Information Technology ("OIT"). During the internal review, General Dynamics contractors helped OIT staff provide information to BRG and the review team so that BRG could conduct its forensic analysis. General Dynamics contractors performed this work at the request of OIT and to support the SEC's work. General Dynamics was not retained to assist with the internal review and has no interest related to the SEC's control deficiency other than providing assistance to OIT pursuant to its contract with the SEC.

13. Litigation relating to the control deficiency was foreseeable at the time of the internal review because the SEC recognized that parties in affected administrative proceedings might raise claims in the administrative proceedings, in appeals from those proceedings, or in independent cases in federal courts related to the control deficiency.

14. Disclosure of the information relating to the SEC's internal review that the SEC is withholding under the attorney work-product doctrine would deprive the SEC of its ability to withhold any information in future litigation, and consequently would deprive SEC attorneys of a zone of privacy within which to weigh facts and evidence and evaluate how to handle future litigation.

15. Disclosure of the information relating to the SEC's internal review that the SEC is withholding under the deliberative process privilege would chill ongoing discussions about addressing the control deficiency the SEC identified as well as discussions about addressing future issues the SEC may face. Public release of these discussions would also likely deter SEC staff's future willingness to share ideas, recommendations, and preliminary thoughts on issues and matters before them. These confidential discussions and the data generated from the discussions also formed the basis for advice conveyed to SEC officials who needed to decide what actions to take in light of the internal review. If these documents were disclosed in response to FOIA requests, staff across the SEC would likely limit their discussions and inhibit their candor in discussing issues relating to the control deficiency and other issues that may arise in the future. Such chilling would make it more difficult for SEC leadership to obtain the advice necessary to efficiently and effectively address complex issues about its operations and would hamper comprehensive reviews designed to address and improve those issues. Release of the discussions concerning the draft Commission statement, as well as the draft itself, would likely cause confusion to the public because these discussions and the draft statement contain deliberations about what the final statement should be and are not reflective of the publicly released statement.

16. Overall, disclosure would jeopardize the candid and comprehensive discussions

that are essential for efficient and effective decision-making.

**The SEC Withheld Information Under FOIA Exemption 6**

17. Pursuant to FOIA Exemption 6, the SEC withheld certain names, email addresses, and telephone numbers of SEC staff and SEC contractors. The SEC also withheld the names of SEC staff who were involved in the internal review, either as individuals who had access to the databases at issue in the control deficiency or as individuals being interviewed by the internal review team. The *Vaughn* Index describes the withheld personal information in more detail. *See* **Exhibit 1.**

18. Disclosure of information in which individuals have a privacy interest would create foreseeable harm by unnecessarily exposing personal information to the public. Releasing the information would not provide information about the operations of the SEC.

19. SEC staff reviewed the records responsive to the First Category to determine whether any portions of those records could be segregated for public disclosure. SEC staff have provided all non-exempt information that could be segregated from exempt information.

20. SEC staff have reviewed the records responsive to the First Category to determine if it is reasonably foreseeable that disclosure would harm an interest protected by one of the FOIA's statutory exemptions or the disclosure is prohibited by law. The SEC has disclosed all portions of documents that it reasonably foresees could be disclosed without causing harm.

**<u>SECOND CATEGORY</u>**

21. For the Second Category, the SEC initially informed Plaintiff that it was withholding all the requested documents under Exemption 5.

22. On June 2, 2023, the SEC issued a statement regarding a control deficiency related to the separation of the SEC's enforcement and adjudicatory functions. Second

Commission Statement Relating to Certain Administrative Adjudications (available at https://www.sec.gov/news/statement/second-commission-statement-relating-certain-administrative-adjudications) ("Second Statement").

23. On June 13, 2023, the SEC's counsel emailed Plaintiff's counsel to inform them that the Second Statement allowed Plaintiff to access the Orders Instituting Proceedings that it was seeking in its Second Category. The SEC's counsel stated that by citing and providing links to the Orders Instituting Proceedings and electronic dockets in the Second Statement and its accompanying exhibits, the SEC had provided all documents responsive to the Second Category. Plaintiff's counsel responded that Plaintiff also sought information about whether any closed, settled, or otherwise disposed-of matters were affected by the control deficiency. The SEC's counsel responded that the SEC had provided responsive materials for every administrative proceeding in which it had made a determination that one or more Adjudication memoranda were accessed by Enforcement staff. The SEC's Counsel further stated that, to the extent that Plaintiff sought "the first page of the Order Instituting Proceedings" for additional administrative proceedings, such a request would be an improper FOIA request because it would be asking the SEC to conduct further analysis to determine whether, and in which of those administrative proceedings, Enforcement staff accessed adjudication memoranda.

24. Plaintiff informed the SEC that its position is that it can only agree that the SEC has provided all responsive documents in the Second Category if it receives information regarding closed, settled, or otherwise disposed of administrative proceedings affected by the control deficiency.

25. The SEC has not withheld any information in connection with the Second Category.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my information and belief.

Executed on the 12th day of July, 2023 in Ashburn, Virginia.

Mark Tallarico

MARK TALLARICO
Attorney, Office of the General Counsel
U.S. Securities and Exchange Commission

# Exhibit 1

**_Vaughn_ Index from the Securities and Exchange Commission's Withholdings from Certain Records**
**Responsive to FOIA Request No. 22-02497-FOIA Released on June 23, 2023 in _New Civil Liberties Alliance v. SEC_, 22-cv-03567**

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 1-5 | March 29-30, 2022 | SEC staff; SEC contractor staff from Berkeley Research Group LLC ("BRG") | RE: All memo ids for 2 matters | In emails between SEC staff and BRG contracting staff, information about a review of certain databases to assess the scope and potential impact of the SEC's control deficiency are withheld.<br><br>The email addresses of SEC staff and BRG contracting staff are withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The emails are intra-agency pursuant to the consultant corollary. The emails were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's Office of the General Counsel ("OGC"), which is leading the internal review. The internal review of the control deficiency and the emails generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The records also address the review of the handling and processing of *David S. Hall, P.C. d/b/a The Hall Group CPAs, David S. Hall, CPA, Michelle L. Helterbran Cochran, CPA, and Susan A. Cisneros*, Admin. Proc. 3-17228 ("*Cochran*") and *John Thomas Capital Mgmt. Grp. LLC d/b/a Patriot28 LLC, and George R. Jarkesy Jr.*, Admin. Proc. 3-15255 ("*Jarkesy*"). The records were generated in anticipation of litigation in those proceedings.<br><br>The information withheld from the emails is deliberative because it reflects staff's deliberations concerning its review of the control deficiency. The withheld information is pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff and its contractors have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 6-14 | March 30-31, 2022 | SEC staff; SEC contractor staff from BRG | RE: GC List – So Far | In emails between SEC staff and BRG contracting staff, discussions concerning staff's internal review of certain databases to assess the scope and potential impact of the SEC's control deficiency are withheld.<br><br>In attachments to an email, forensic data generated by BRG staff concerning the control deficiency is withheld.<br><br>The names of certain SEC staff are withheld.<br><br>The email addresses of SEC staff and BRG contracting staff are withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The emails and attachments are intra-agency pursuant to the consultant corollary. The emails and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The withheld information and data are deliberative because they reflect staff's deliberations concerning its review of the control deficiency. The withheld information and data are pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff referenced in these records have a privacy interest in their involvement in the internal review, either as someone who had access to the databases at issue in the control deficiency or as someone being interviewed by the internal review team. There is no public interest in knowing the names of SEC staff associated with the Commission's internal review of the control deficiency.<br><br>SEC staff and its contractors have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

JA52

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 15 | March 31, 2022 - April 1, 2022 | SEC staff; SEC contractor staff from BRG | RE: Follow-up from Today's meeting | In emails between SEC staff and BRG contracting staff, discussions concerning review of certain databases to assess the scope and potential impact of the SEC's control deficiency are withheld.<br><br>The names of certain SEC staff are withheld.<br><br>The email addresses of SEC staff and BRG contracting staff are withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The emails are intra-agency pursuant to the consultant corollary. The emails were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The information withheld from the emails is deliberative because it reflects staff's deliberations concerning its review of the control deficiency. The withheld information is pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff referenced in the emails have a privacy interest in their involvement in the internal review as someone who had access to the databases at issue in the control deficiency. There is no public interest in knowing the names of SEC staff associated with the Commission's internal review of the control deficiency.<br><br>SEC staff and its contractors have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 16-19 | March 30, 2022 - April 1, 2022 | SEC staff; SEC contractor staff from BRG | RE: OGC Staff Access to SharePoint | In emails between SEC staff and BRG contracting staff, discussions concerning review of certain databases to assess the scope and potential impact of the SEC's control deficiency are withheld.<br><br>In attachments to an email, forensic data generated by BRG staff concerning the control deficiency is withheld.<br><br>The names of certain SEC staff are withheld.<br><br>The email addresses and phone numbers of SEC staff and BRG contracting staff are withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The emails and attachments are intra-agency pursuant to the consultant corollary. The emails and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The withheld information and data are deliberative because they reflect staff's deliberations concerning its review of the control deficiency. The withheld information and data are pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff referenced in these records have a privacy interest in their involvement in the internal review as someone who had access to the databases at issue in the control deficiency. There is no public interest in knowing the names of SEC staff associated with the Commission's internal review of the control deficiency.<br><br>SEC staff and its contractors have a privacy interest in their email addresses and phone numbers, and there is no public interest in knowing their contact information. |

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 20-25; 32-41 | April 11-14, and 16, 2022 | SEC staff; SEC contractor staff from BRG | RE: Memos (for additional matters) | In emails between SEC staff and BRG contracting staff, information concerning review of certain databases to assess the scope and potential impact of the SEC's control deficiency are withheld.<br><br>In attachments to emails, forensic data generated by BRG staff concerning the control deficiency is withheld.<br><br>The names of certain SEC staff are withheld.<br><br>The email addresses of SEC staff and BRG contracting staff are withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The emails and attachments are intra-agency pursuant to the consultant corollary. The emails and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The withheld information and data are deliberative because they reflect staff's deliberations concerning its review of the control deficiency. The withheld information and data are pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff referenced in these records have a privacy interest in their involvement in the internal review as someone who had access to the databases at issue in the control deficiency. There is no public interest in knowing the names of SEC staff associated with the Commission's internal review of the control deficiency.<br><br>SEC staff and its contractors have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

JA55

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 26 | April 11, 2022 | SEC staff; SEC contractor staff from BRG | RE: Specific Memos – in NYRO Recommind DB | In emails between SEC staff and BRG contracting staff, information about a review of certain databases to assess the scope and potential impact of the SEC's control deficiency is withheld.<br><br>In attachments to emails, forensic data generated by BRG staff concerning the control deficiency is withheld.<br><br>The names of certain SEC staff are withheld.<br><br>The email addresses of SEC staff and BRG contracting staff are withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The emails and attachments are intra-agency pursuant to the consultant corollary. The emails and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The withheld information and data are deliberative because they reflect staff's deliberations concerning its review of the control deficiency. The withheld information and data are pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff referenced in these records have a privacy interest in their involvement in the internal review as someone who had access to the databases at issue in the control deficiency. There is no public interest in knowing the names of SEC staff associated with the Commission's internal review of the control deficiency.<br><br>SEC staff and its contractors have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 27 | April 11, 2022 | SEC staff; SEC contractor staff from BRG | [Redacted] | In an email between SEC staff and BRG contracting staff, information and forensic data generated from review of certain databases to assess the scope and potential impact of the SEC's control deficiency are withheld.<br><br>An SEC staff email address is withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The email is intra-agency pursuant to the consultant corollary. The email and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The withheld information and data are deliberative because they reflect staff's deliberations concerning its review of the control deficiency. The withheld information and data are pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 28 | April 11, 2022 | SEC staff; SEC contractor staff from BRG | [Redacted] all activity | In an email between SEC staff and BRG contracting staff, information about a review of certain databases to assess the scope and potential impact of the SEC's control deficiency is withheld.<br><br>In an attachment to the email, forensic data generated by BRG staff concerning the control deficiency is withheld.<br><br>The names of certain SEC staff are withheld.<br><br>An SEC staff email address is withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The email and attachment are intra-agency pursuant to the consultant corollary. The email and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The withheld information and data are deliberative because they reflect staff's deliberations concerning its review of the control deficiency. The withheld information and data are pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff referenced in these records have a privacy interest in their involvement in the internal review as someone who had access to the databases at issue in the control deficiency. There is no public interest in knowing the names of SEC staff associated with the Commission's internal review of the control deficiency.<br><br>SEC staff have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

JA57

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 29 | April 11, 2022 | SEC staff; SEC contractor staff from BRG | Hashes for Andrew | In an email between SEC staff and BRG contracting staff, an SEC staff email address is withheld.<br><br>In an attachment to the email, forensic data generated by BRG staff concerning the review of the control deficiency is withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The email and attachment are intra-agency pursuant to the consultant corollary. The email and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The withheld information and data are deliberative because they reflect staff's deliberations concerning its review of the control deficiency. The withheld information and data are pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>The attachment also addresses the review of the handling and processing of *Jarkesy*. The attachment was generated in anticipation of litigation in that proceeding.<br><br>SEC staff have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 30 | April 12, 2022 | SEC staff; SEC contractor staff from BRG | Searches | In an email between SEC staff and BRG contracting staff, an SEC staff email address is withheld.<br><br>In an attachment to the email, forensic data generated by BRG staff concerning the review of the control deficiency is withheld. The names of certain SEC staff are also withheld from the attachment. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The email and attachment are intra-agency pursuant to the consultant corollary. The email and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The withheld information and data are deliberative because they reflect staff's deliberations concerning its review of the control deficiency. The withheld information and data are pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff referenced in these records have a privacy interest in their involvement in the internal review as someone who had access to the databases at issue in the control deficiency. There is no public interest in knowing the names of SEC staff associated with the Commission's internal review of the control deficiency.<br><br>SEC staff have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 31 | April 12, 2022 | SEC staff; SEC contractor staff from BRG | All searches v2 | In an email between SEC staff and BRG contracting staff, an SEC staff email address is withheld.<br><br>In an attachment to the email, forensic data generated by BRG staff concerning the review of the control deficiency is withheld. The names of certain SEC staff are also withheld from the attachment. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The email and attachment are intra-agency pursuant to the consultant corollary. The email and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The withheld information and data are deliberative because they reflect staff's deliberations concerning its review of the control deficiency. The withheld information and data are pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff referenced in these records have a privacy interest in their involvement in the internal review as someone who had access to the databases at issue in the control deficiency. There is no public interest in knowing the names of SEC staff associated with the Commission's internal review of the control deficiency.<br><br>SEC staff have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |



JA60

JA61

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 42 | April 23, 2022 | SEC staff; SEC contractor staff from BRG | [Redacted] analysis | In an email between SEC staff and BRG contracting staff, discussion concerning review of certain databases to assess the scope and potential impact of the SEC's control deficiency is withheld.<br><br>In an attachment to the email, forensic data generated by BRG staff concerning the control deficiency is withheld.<br><br>The email addresses of SEC staff and BRG contracting staff are withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The email and attachment are intra-agency pursuant to the consultant corollary. The email and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The withheld information and data are deliberative because they reflect staff's deliberations concerning its review of the control deficiency. The withheld information and data are pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff and its contractors have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 43 | April 25, 2022 | SEC staff; SEC contractor staff from BRG | [Redacted] | In an email between SEC staff and BRG contracting staff, discussions concerning a draft of a Commission statement relating to the control deficiency are withheld.<br><br>In an attachment to the email, a draft of a Commission statement relating to the control deficiency is withheld.<br><br>An SEC staff email address is withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The email and attachment are intra-agency pursuant to the consultant corollary. The email and draft document were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the directive of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the email and draft document generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The information withheld from the email is deliberative because it reflects staff's consultative discussions, edits, and recommendations concerning the draft statement. The withheld information is pre-decisional because the discussions concern a draft document which was not adopted as the final agency statement. The document attached to the email is deliberative because it is a draft that differs from the final Commission statement that was published on June 2, 2023. The document is pre-decisional because it is a draft that was not adopted as the final agency statement.<br><br>SEC staff have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

JA63

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 44 | September 23 and 26, 2022 | SEC staff; SEC contractor staff from BRG | RE: SharePoint Queries | In emails between SEC staff and BRG contracting staff, discussions concerning review of certain databases to assess the scope and potential impact of the SEC's control deficiency are withheld.<br><br>In an attachment to an email, forensic data generated by BRG staff concerning the control deficiency is withheld.<br><br>The names of certain SEC staff are withheld.<br><br>The email addresses of SEC staff and BRG contracting staff are withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The emails and attachment are intra-agency pursuant to the consultant corollary. The emails and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The withheld information and data are deliberative because they reflect staff's deliberations concerning its review of the control deficiency. The withheld information and data are pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff referenced in these records have a privacy interest in their involvement in the internal review as someone who had access to the databases at issue in the control deficiency. There is no public interest in knowing the names of SEC staff associated with the Commission's internal review of the control deficiency.<br><br>SEC staff and its contractors have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 45-46 | September 26-28, 2022 | SEC staff; SEC contractor staff from BRG | RE: Quick Call | In emails between SEC staff and BRG contracting staff, discussions concerning review of certain databases to assess the scope and potential impact of the SEC's control deficiency are withheld.<br><br>The email addresses and phone numbers of SEC staff and BRG contracting staff are withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The emails are intra-agency pursuant to the consultant corollary. The emails and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The information withheld from the emails is deliberative because it reflects staff's deliberations concerning its review of the control deficiency. The withheld information is pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff and its contractors have a privacy interest in their email addresses and phone numbers, and there is no public interest in knowing their contact information. |

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 47 | September 29, 2022 | SEC staff; SEC contractor staff from BRG | Dates | In an email between SEC staff and BRG contracting staff, information concerning review of certain databases to assess the scope and potential impact of the SEC's control deficiency are withheld.<br><br>In an attachment to the email, forensic data generated by BRG staff concerning the control deficiency is withheld.<br><br>An SEC staff email address is withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The email and attachment are intra-agency pursuant to the consultant corollary. The email and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the email and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The withheld information and data are deliberative because they reflect staff's deliberations concerning its review of the control deficiency. The withheld information and data are pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 48-49 | October 5, 8, 10, 18, and 19, 2022 | SEC staff; SEC contractor staff from BRG | RE: Memos for Search | In emails between SEC staff and BRG contracting staff, discussions concerning review of certain databases to assess the scope and potential impact of the SEC's control deficiency are withheld.<br><br>In attachments to the emails, forensic data generated by BRG staff concerning the control deficiency is withheld.<br><br>The email addresses of SEC staff and BRG contracting staff are withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The emails and attachments are intra-agency pursuant to the consultant corollary. The emails and forensic data were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The withheld information and data are deliberative because they reflect staff's deliberations concerning its review of the control deficiency. The withheld information and data are pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff and its contractors have a privacy interest in their email addresses, and there is no public interest in knowing their contact information. |

JA67

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 50-54 | November 22-23 and 28, 2022 | SEC staff; SEC contractor staff from BRG | RE: BRO Team's File Request – Continuation | In emails between SEC staff and BRG contracting staff, discussions concerning review of certain databases to assess the scope and potential impact of the SEC's control deficiency are withheld.<br><br>The email addresses of SEC staff and BRG contracting staff are withheld.<br><br>The access information of a Webex meeting is also withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The emails are intra-agency pursuant to the consultant corollary. The emails were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The information withheld from the emails is deliberative because it reflects staff's deliberations concerning its review of the control deficiency. The withheld information is pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff and its contractors have a privacy interest in their email addresses, and there is no public interest in knowing their contact information.<br><br>The SEC has a privacy interest in Webex meeting access information, and there is no public interest in knowing this contact information. |

| PDF Page Nos. | Document Date(s) | Authors and Recipients | Subject Line of Email(s)/Document(s) | Description of Redacted Information/Documents | FOIA Exemption | Basis for Withholding |
|---|---|---|---|---|---|---|
| 55 | December 20-21, 2022 | SEC staff; SEC contractor staff from BRG and General Dynamics | RE: Hash and transfer round 2 | In emails between SEC staff and BRG contracting staff, discussions concerning review of certain databases to assess the scope and potential impact of the SEC's control deficiency are withheld.<br><br>The email addresses and phone numbers of SEC staff and BRG and General Dynamics contracting staff are withheld. | Exemption 5; attorney work-product doctrine, deliberative process privilege<br><br>Exemption 6 | The emails are intra-agency pursuant to the consultant corollary. The emails were generated in furtherance of the Commission's internal review of the control deficiency concerning certain databases and under the direction of the SEC's OGC, which is leading the internal review. The internal review of the control deficiency and the emails and data generated as part of this review were generated in anticipation of litigation because litigation related to or arising from the control deficiency is reasonably foreseeable.<br><br>The information withheld from the emails is deliberative because it reflects staff's deliberations concerning its review of the control deficiency. The withheld information is pre-decisional because no final agency decisions or findings had been made concerning the Commission's internal review of the control deficiency.<br><br>SEC staff and its contractors have a privacy interest in their email addresses and phone numbers, and there is no public interest in knowing their contact information. |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Defendant. | No. 22-cv-03567-CJN |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF SEC'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

III. PROCEDURAL BACKGROUND ..... 6

IV. ARGUMENT ..... 6

A. Summary judgment is appropriate because no material facts are in dispute. ..... 8

B. The SEC properly withheld information under FOIA Exemptions 5 and 6 in responding to Plaintiff's First Category. ..... 8

1. Agencies can withhold exempt information when responding to FOIA requests. ..... 8

2. Exemption 5 allows agencies to withhold documents protected by the attorney work-product doctrine and the deliberative process privilege. ..... 9

3. The SEC properly determined that communications with BRG and General Dynamics were intra-agency communications. ..... 10

4. The SEC properly withheld information under the attorney work-product doctrine. ..... 11

5. The SEC properly withheld information under the deliberative process privilege. ..... 14

6. The SEC properly withheld information under Exemption 6. ..... 17

7. The SEC conducted a segregability analysis and reasonably foresaw that disclosure of the withheld information would harm interests protected by Exemptions 5 and 6. ..... 20

C. The SEC has not withheld any information from the Second Category. ..... 22

V. CONCLUSION ..... 24

## TABLE OF AUTHORITIES

**CASES**

*ACLU v. CIA*, No. 1:18-cv-2784 (CJN), 2022 WL 306360 (D.D.C. Feb. 2, 2022)...................... 17

*ACLU v. Dep't of Defense*, 628 F.3d 612 (D.C. Cir. 2011)........................................................... 9

*Amiri v. NSF*, No. 1:20-cv-02006 (TNM), 2021 WL 4438910 (D.D.C. Sept. 28, 2021)......... 9, 14

*Cause of Action Inst. v. U.S. DOJ*, 282 F. Supp. 3d 66 (D.D.C. 2017) .......................................... 8

*Cause of Action Inst. v. U.S. DOJ*, 513 F. Supp. 3d 116 (D.D.C. 2021) ....................................... 8

*Center for Biological Diversity v. U.S. EPA*, 369 F. Supp. 3d 128 (D.D.C. 2019) ...................... 16

*Chavis v. U.S. DOJ*, No. 1:20-cv-00638 (TNM), 2021 WL 1668069 (D.D.C. Apr. 28, 2021)...... 9

*Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585 (D.D.C. Nov. 21, 2022) 6, 7, 14

*Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 21-2201 (RC), 2022 WL 4182189 (D.D.C. Sept. 13, 2022) ......................................................................................... 8

*Competitive Enter. Inst. v. United States EPA*, 232 F. Supp. 3d 172 (D.D.C. 2017) .................. 14

*Cotton v. Adams*, 798 F. Supp. 22 (D.D.C. 1992) ........................................................................ 19

*Davidson v. United States*, 264 F. Supp. 3d 97 (D.D.C. 2017) ............................................. 18, 19

*Democracy Forward Found. v. Centers for Medicare & Medicaid Servs.*, No. CV 18-635 (JDB), 2020 WL 1508508 (D.D.C. March 30, 2020)............................................................................ 11

*Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1 (2001) .......................... 10

*Dillon v. U.S. DOJ*, 444 F. Supp. 3d 67 (D.D.C. 2020).................................................................. 7

*Elec. Frontier Found. v. U.S. DOJ*, 739 F.3d 1 (D.C. Cir. 2014).......................................... 14, 15

*Elec. Privacy Info. Ctr. v. U.S. DOJ*, 320 F. Supp. 3d 110 (D.D.C. 2018) ................................. 16

*Elec. Privacy Info. Ctr. v. FBI*, No. 1:17-cv-00121 (TNM), 2018 WL 2324084 (D.D.C. May 22, 2018) ......................................................................................................................................... 20

*Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97 (D.D.C. 2010)....... 10, 18

*Greenspan v. Bd. of Governors of the Fed. Rsrv. Sys.*, No. 1:21-cv-01968 (TNM), 2022 WL 17356879 (D.D.C. Dec. 1, 2022) ........................................................................ 7, 8, 9

*Hall & Assocs. v. U.S. EPA*, No. 16-5315, 2018 WL 1896493 (D.C. Cir. Apr. 9, 2018) ............ 23

*Hertzberg v. Veneman*, 273 F. Supp. 2d 67 (D.D.C. 2003) ........................................................ 12

*Horvath v. U.S. Secret Serv.*, 419 F. Supp. 3d 40 (D.D.C. 2019)................................................ 19

*Jarvis v. Comm'r, Soc. Sec. Admin.*, No. 18-5170, 2018 WL 6722401 (D.C. Cir. Dec. 18, 2018)...................................................................................................... 23

*Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*, 736 F. Supp. 2d 202 (D.D.C. 2010) ........................................................................................................................ 21

*Judicial Watch, Inc. v. U.S. DOJ*, 432 F.3d 366 (D.C. Cir. 2005)............................................... 21

*Judicial Watch, Inc. v. U.S. DOJ*, 806 F. App'x 5 (D.C. Cir. 2020) ........................................... 12

*Leopold v. U.S. DOJ*, 487 F. Supp. 3d 1 (D.D.C. 2020)............................................................ 13

*Lewis v. U.S. Dep't of Treasury*, No. 17-cv0943 (DLF), 2020 WL 1667656 (D.D.C. Apr. 3, 2020) ........................................................................................................................ 17

*McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331 (D.C. Cir. 2011)....... 10, 12

*Media Research Ctr. v. U.S. DOJ*, 818 F. Supp. 2d 131 (D.D.C. 2011) ....................................... 7

*Miller v. U.S. DOJ*, 872 F. Supp. 2d 12 (D.D.C. 2012)................................................................. 7

*Nat'l Sec. Archive v. CIA*, 752 F.3d 460 (D.C. Cir. 2014)......................................................... 16

*Nova Oculus Partners, LLC v. U.S. SEC*, 486 F. Supp. 3d 280 (D.D.C. 2020) .......................... 19

*Public Employees for Envtl. Responsibility v. U.S. EPA*, No. 18-cv-2219 (BAH), 2021 WL 2515007 (D.D.C. June 18, 2021) ............................................................................ 17

*Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194 (D.D.C. 2007) ....... *passim*

*Skinner v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 12-5319, 2013 WL 3367431 (D.C. Cir. May 31, 2013) ........................................ 23

*Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16 (D.D.C. 2011)........................................ 16

*Telematch, Inc. v. U.S. Dep't Agric.*, 45 F.4th 343 (D.C. Cir. 2022) ........................................ 18

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) ................................ 10, 15

**RULES**

5 U.S.C. § 552(a)(8)(A) ........................................ 20

5 U.S.C. § 552(b) ........................................ 8, 9, 17

Fed. R. Civ. P. 26(b)(3)........................................ 12

Fed. R. Civ. P. 56(a) ........................................ 6

**OTHER AUTHORITIES**

*Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (Apr. 5, 2022), https://www.sec.gov/news/statement/commission-statement-relating-certain-administrative-adjudications........................................ 1, 13

Letter from the Solicitor General, *SEC v. Cochran*, No. 21-1239 (S. Ct. Apr. 8, 2022), (*available at* https://www.supremecourt.gov/DocketPDF/21/21-1239/220641/20220408165202974_Letter%2021-1239%20final.pdf)........................................ 13

Notice of Supplemental Authorities, Doc. 00516268389, *Jarkesy v. SEC*, No. 20-61007 (5th Cir. Apr. 5, 2022)........................................ 13

*SEC Enforcement Staff Accessed Adjudicatory Documents in Midst of Administrative Proceedings*, NCLA (Apr. 6, 2022), https://nclalegal.org/2022/04/sec-enforcement-staff-accessed-adjudicatory-documents-in-midst-of-administrative-proceedings ........................................ 14

*Second Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (June 2, 2023), https://www.sec.gov/news/statement/second-commission-statement-relating-certain-administrative-adjudications .............................. *passim*

## I. INTRODUCTION

Defendant U.S. Securities and Exchange Commission ("SEC") moves for summary judgment concerning the Freedom of Information Act ("FOIA") request at issue in this litigation. Summary judgment is appropriate here because there is no genuine dispute of material facts concerning Plaintiff's FOIA request. The SEC has responded fully to Plaintiff's narrowed FOIA request and appropriately withheld records under FOIA Exemptions 5 and 6.

Accordingly, the SEC respectfully requests that the Court grant the SEC's motion for summary judgment.

## II. STATEMENT OF FACTS[1]

On April 5, 2022, the SEC issued a statement explaining that it had "identified a control deficiency related to the separation of its enforcement and adjudicatory functions within its system for administrative adjudications." *Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (Apr. 5, 2022), https://www.sec.gov/news/statement/commission-statement-relating-certain-administrative-adjudications ("April 5, 2022 Statement"). The SEC said that it had "commence[d] a comprehensive internal review to assess the scope and potential impact of the issue" and that it was "releasing the findings of that review as it relates to two adjudicatory matters currently in litigation in federal court." *Id.* The statement describes the internal review and says that it is "being conducted by experienced investigative staff from the Division of Examinations under the supervision of the Commission's General Counsel." *Id.* The statement also describes the role of a consulting firm in the internal review:

[1] The SEC's Statement of Material Facts in Support of the SEC's Motion for Summary Judgment is referred to herein as "SMF." The Declaration of Mark Tallarico is referred to herein as "Tallarico Decl." The Declaration of Lizzette Katilius is referred to herein as "Katilius Decl."

> To support the internal review, the Office of the General Counsel retained the Berkeley Research Group, LLC ("BRG"), a consulting firm with staff that includes a team of experienced investigators and forensic analysists. Together, the internal team and BRG staff are in the process of performing a comprehensive review of the facts surrounding the control deficiency and assessing its potential impact on administrative adjudicatory matters. BRG is also conducting an independent forensic analysis to determine the scope and potential impact of the control deficiency. That analysis includes a detailed review of the Office of the Secretary databases in which the Adjudication memoranda were stored and the Enforcement databases into which some of those memoranda were uploaded. BRG is also conducting an analysis of access logs for the various systems.

*Id.* The majority of the statement discusses the impact of the control deficiency on two administrative proceedings that had related matters pending in federal court, *SEC v. Cochran*, No. 21-1239 (S. Ct.), and *Jarkesy v. SEC*, No. 20-61007 (5th Cir.). *Id.* The statement concludes by stating that "[t]he review team will continue to assess the remaining affected adjudicatory matters, and we will release those findings as soon as we are able to do so." *Id.*

On July 12, 2022, Plaintiff submitted a FOIA request to the SEC seeking "[c]opies of certain records and documents of the Commission related to its April 5, 2022 statement regarding an identified 'control deficiency' within the Commission's system for administrative adjudications." SMF ¶1. Plaintiff's FOIA request specified that it was seeking documents "regarding the following occurrences":

1. The Commission's discovery of the deficiencies that allowed enforcement personnel to access the administrative adjudications system and documents of the Commission's Administrative Law Judges ('ALJs') and their staff.
2. All instances in which enforcement personnel accessed, or could have accessed, documents stored in the administrative adjudications system, including a list and/or names of all cases in which enforcement personnel accessed or could have accessed said system as well as the documents in every such case improperly accessed by enforcement personnel.
3. The Commission's determinations regarding the remedial measures that should be taken to address deficiencies that allowed enforcement personnel to access the administrative adjudications system.

4. The Commission's determination that 'access to the Adjudication memoranda would not have affected any Enforcement filings' in the following cases:

    a. *David S. Hall, P.C. d/b/a The Hall Group CPAs, David S. Hall, CPA, Michelle L. Helterbran Cochran, CPA, and Susan A. Cisneros*, Admin. Proc. 3-17228; *SEC v. Cochran*, No. 21- 1239 (S. Ct.); and

    b. *John Thomas Capital Mgmt. Grp. LLC d/b/a Patriot28 LLC, and George R. Jarkesy Jr.*, Admin. Proc. 3-15255; *Jarkesy v. SEC*, No. 20-61007 (5th Cir. May 18, 2022).

5. The Commission's findings regarding the effects of the control deficiency on all other cases in which the Commission identified that enforcement personnel accessed, or could have accessed the administrative adjudications system.

6. The decision of the Commission and its Office of the General Counsel to hire Berkley Research Group, LLC ('BRG'), a private consulting firm, to support the Commission's internal review of the control deficiency and the contract bid request, if any

7. Any reports, memoranda, or communications produced by BRG related to their review of the control deficiency

8. Copies of all contracts, including bid requests and scope of works, with BRG for the relevant time period.

9. The involvement of the Commission's Office of Inspector General ('OIG') in the Commission's discovery and remedy of the control deficiency and the OIG's subsequent findings, if any.

10. The Commission's determination to issue the April 5, 2022 statement, the pending report referenced therein, and any future actions the Commission plans to take regarding control deficiencies between the Adjudicatory and Enforcement Divisions.

*Id*.

On January 18, 2023, the FOIA Office issued an interim partial response to Plaintiff's FOIA request and released to Plaintiff 33 pages of records. SMF ¶5. The FOIA Office redacted the records in part under FOIA Exemptions 4 and 6, 5 U.S.C. § 552(b)(4) and (6). *Id.* In its response, the FOIA Office explained that it would address sub-part 10 of the FOIA request in three parts. *Id.* The FOIA Office further explained that its interim partial response addressed Plaintiff's FOIA request sub-parts 2, 5, 8, 9, 10(b), and 10(c). *Id.*

On March 22, 2023, the FOIA Office sent a letter to the FOIA requester informing it that, among other things, the SEC had identified approximately 3,700 records, consisting of approximately 51,700 pages, that may be responsive to the remaining seven sub-parts of the FOIA request (items 1, 3, 4(a) and (b), 6, 7, and 10(a)). SMF ¶7. The letter also stated that, because the records potentially responsive to this request are voluminous, the FOIA Office would process them in the FOIA Office's Complex track. *Id.* The letter asked that, if Plaintiff was still interested in having the remaining sub-parts of the request processed, Plaintiff should contact the FOIA Office and identify the records that should be placed in the Complex track. *Id.*

In March, April, and May 2023, the SEC's counsel and Plaintiff's counsel discussed ways of narrowing the remaining seven sub-parts of Plaintiff's FOIA request (items 1, 3, 4(a) and (b), 6, 7, and 10(a)). SMF ¶8. The parties ultimately agreed that the SEC would process two categories of records instead of those seven sub-parts: (1) the report or reports prepared by Berkeley Research Group (BRG), with all supporting documents, interviews, statements etc. ("First Category"), and (2) the first page of the Order Instituting Proceedings (a public document) of every administrative proceeding in which the "control deficiency" occurred ("Second Category"). *Id.*; *see also* ECF No. 15 at 1-2.

On June 23, 2023, the FOIA Office issued a response to the First Category and released to Plaintiff 55 pages of records. SMF ¶9. The records were redacted in part under FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5) and (6). *Id.* The FOIA Office also informed Plaintiff that it was withholding 1,835 pages of records in full pursuant to FOIA Exemptions 5 and 6. *Id.* The documents are all emails between SEC staff and SEC contractors about the SEC's internal review related to the control deficiency issue, and they contain discussions about conducting the internal review. *Id.*; Ex. 1. Many of the emails have attachments with forensic data generated by

BRG for use in the internal review. *Id*. One email chain includes consultative discussions about a draft Commission statement and attaches the draft statement. *Id.*; Ex. 1 at 13.

For the Second Category, the SEC initially informed Plaintiff that it was withholding all the requested documents under Exemption 5. SMF ¶10. However, on June 2, 2023, the SEC issued a second statement regarding the control deficiency related to the separation of the SEC's enforcement and adjudicatory functions. *See Second Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (June 2, 2023), https://www.sec.gov/news/statement/second-commission-statement-relating-certain-administrative-adjudications ("Second Statement"). The Second Statement and its five exhibits provide, among other things, additional information about *Cochran*, *Jarkesy*, twenty-eight additional "Affected Matters" that were pending before the Commission, and sixty-one then-pending matters encompassed by eight "Omnibus Memoranda." *Id.* The Second Statement cites and contains links to the Orders Instituting Proceedings for each of the twenty-eight "Affected Matters," and Exhibit 5 contains links to the electronic dockets for the sixty-one matters it describes. *Id.*

On June 13, 2023, the SEC's counsel emailed Plaintiff's counsel to inform them that the Second Statement allowed Plaintiff to access the Orders Instituting Proceedings that it was seeking in its Second Category. SMF ¶12. The SEC's counsel stated that by citing and providing links to the Orders Instituting Proceedings and electronic dockets in the Second Statement and its accompanying exhibits, the SEC had provided all documents responsive to the Second Category. *Id.* Plaintiff's counsel responded that Plaintiff also sought information about whether any closed, settled, or otherwise disposed-of matters were affected by the control deficiency. *Id.* The SEC's counsel responded that the SEC had provided responsive materials

for every administrative proceeding in which it had made a determination that one or more Adjudication memoranda were accessed by Enforcement staff. *Id.* The SEC's counsel further stated that to the extent that Plaintiff sought "the first page of the Order Instituting Proceedings" for additional administrative proceedings, such a request would be an improper FOIA request because it would be asking the SEC to conduct further analysis to determine whether, and in which of those administrative proceedings, Enforcement staff accessed adjudication memoranda. *Id.*

## III. PROCEDURAL BACKGROUND

On November 23, 2022, Plaintiff filed the complaint in this lawsuit concerning its FOIA request. *See* ECF No. 1; SMF ¶2. On January 11, 2023, Plaintiff filed an amended complaint. *See* ECF No. 7; SMF ¶4.

The parties agreed that, on summary judgment, the issue to be resolved is the SEC's withholding of information from records responsive to the two categories of records that the parties agreed the SEC would process after the FOIA Office notified Plaintiff that its request was too voluminous to process outside of the Complex track ((1) BRG reports and supporting documents, and (2) the first page of the Order Instituting Proceedings of every administrative proceeding in which the "control deficiency" occurred). ECF No. 15 at 2; SMF ¶¶8, 15. In light of the parties' subsequent discussions about the Second Category, the SEC is also addressing whether the Commission has provided a complete response to the Second Category. SMF ¶15.

## IV. ARGUMENT

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Most FOIA cases are resolved on motions for summary judgment. *Clemente v.*

*FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585, at *1 (D.D.C. Nov. 21, 2022) A party is "entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located has either been produced to the plaintiff or is exempt from disclosure." *Miller v. U.S. DOJ*, 872 F. Supp. 2d 12, 18 (D.D.C. 2012).

To demonstrate its entitlement to summary judgment, "[a]n agency may submit sufficiently detailed affidavits or declarations, a Vaughn index of the withheld documents, or both, to demonstrate that [it] has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption." *Clemente*, 2022 WL 17092585, at *2 (internal quotations omitted). The SEC "bears the burden to show that the claimed exemptions apply." *Id.* The Court may accept as true the factual assertions in the SEC's declarations "unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary." *Media Research Ctr. v. U.S. DOJ*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011). "The Court may grant summary judgment based solely on the agency's declarations if neither record evidence nor evidence of the agency's bad faith contradicts them." *Greenspan v. Bd. of Governors of the Fed. Rsrv. Sys.*, No. 1:21-cv-01968 (TNM), 2022 WL 17356879, at *2 (D.D.C. Dec. 1, 2022). An agency's declarations "receive a presumption of good faith." *Id.* (internal quotations omitted).

When addressing a motion for summary judgment, the Court "is to strike a balance between adequate review and respecting an agency's expertise and, accordingly, should not overstep the proper limits of the judicial role in FOIA review." *Dillon v. U.S. DOJ*, 444 F. Supp. 3d 67, 83 (D.D.C. 2020) (internal quotations omitted).

### A. Summary judgment is appropriate because no material facts are in dispute.

"FOIA cases do not ordinarily involve disputed facts." *Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 21-2201 (RC), 2022 WL 4182189, at *3 (D.D.C. Sept. 13, 2022). Like most FOIA cases, the only remaining dispute in this case is legal in nature, namely whether the SEC permissibly withheld records responsive to Plaintiff's First Category and whether the SEC has fully responded to Plaintiff's Second Category. *See* SMF ¶15; ECF No. 15 at 2. Summary judgment is warranted because the SEC "has fully discharged its obligations under the FOIA," even "after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Cause of Action Inst. v. U.S. DOJ*, 282 F. Supp. 3d 66, 72 (D.D.C. 2017) (internal quotations omitted).

### B. The SEC properly withheld information under FOIA Exemptions 5 and 6 in responding to Plaintiff's First Category.

#### 1. Agencies can withhold exempt information when responding to FOIA requests.

Though under the FOIA an agency must make certain government records available to the public upon proper request, the FOIA contemplates that some information may be kept from the public, as described in the FOIA's nine enumerated exemptions allowing the government to withhold documents or portions of documents. *See* 5 U.S.C. § 552(b)(1)-(9); *Cause of Action Inst. v. U.S. DOJ*, 513 F. Supp. 3d 116, 123 (D.D.C. 2021) (Nichols, J.) ("Congress recognized that the release of certain information may harm legitimate governmental or private interests.") (internal quotation omitted). The agency bears the burden of justifying the withholding of information under an exemption. *Greenspan*, 2022 WL 17356879, at *2.

In support of an exemption claimed under the FOIA, "an agency may rely on declarations describing the applicability of a FOIA exemption to information that the agency has withheld." *Id.* An agency's declarations support summary judgment if they "describe[] the justifications for withholding the information with specific detail" and "demonstrate[] that the information withheld logically falls within the claimed exemption." *ACLU v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). "The Court may grant summary judgment based solely on the agency's declarations if neither record evidence nor evidence of the agency's bad faith contradicts them." *Greenspan*, 2022 WL 17356879, at *2. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *ACLU*, 628 F.3d at 619 (internal quotations omitted).

In addition to declarations, the SEC may rely on a *Vaughn* index to justify its withholdings. *Chavis v. U.S. DOJ*, No. 1:20-cv-00638 (TNM), 2021 WL 1668069, at *4 (D.D.C. Apr. 28, 2021); *Amiri v. NSF,* No. 1:20-cv-02006 (TNM), 2021 WL 4438910, at *5 (D.D.C. Sept. 28, 2021) ("[i]n FOIA cases, agencies typically provide their justifications for withholding information in a *Vaughn* index" which "must contain an adequate description of the records and a plain statement of the exemptions relied upon") (internal quotations omitted). Both the declarations and the *Vaughn* index have a presumption of good faith. *Chavis*, 2021 WL 1668069, at *4.

**2. Exemption 5 allows agencies to withhold documents protected by the attorney work-product doctrine and the deliberative process privilege.**

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Communications are "intra-agency" if they "ha[ve] been

received by an agency, to assist it in the performance of its own functions, from a person acting in a governmentally conferred capacity other than on behalf of another agency-*e.g.,* in a capacity as an employee or consultant to the agency." *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 9-10 (2001) (citation and quotation omitted); *see also McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011) ("intra-agency" includes "agency records containing comments solicited from nongovernmental parties"); *Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 104 (D.D.C. 2010) ("[T]he Supreme Court has implicitly recognized a consultant corollary that extends Exemption 5 to cover records submitted by outside consultants to government agencies when those consultants played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done.") (internal quotations omitted). Courts have interpreted Exemption 5 to cover "the privileges available to Government agencies in civil litigation," which includes the attorney work-product doctrine and the deliberative process privilege. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).

**3. The SEC properly determined that communications with BRG and General Dynamics were intra-agency communications.**

For communications with persons who are not officers or employees of an agency to be intra-agency, "'the consultant does not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it.'" *McKinley*, 647 F.3d at 336 (quoting *Klamath*, 532 U.S. at 11). The consultant's "only obligations [must be] to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do." *Klamath*, 532 U.S. at 11. An agency can satisfy this requirement by providing evidence in an agency declaration that the agency solicited the advice or assistance of

a contractor and that the contractor's purpose was to provide that advice or assistance. *See Democracy Forward Found. v. Centers for Medicare & Medicaid Servs.*, No. CV 18-635 (JDB), 2020 WL 1508508, at *1 (D.D.C. March 30, 2020).

Communications with BRG are intra-agency because, as reflected in a contract between the SEC and BRG, the SEC retained BRG to support its internal review relating to the control deficiency. SMF ¶19. During the internal review, BRG contractors compiled forensic data and engaged in discussion with SEC staff as part of SEC staff's review of certain databases to assess the scope and potential impact of the SEC's control deficiency. *Id.* BRG conducted forensic analysis at the request of the SEC and to support the SEC's work. *Id.* BRG has no interest related to the SEC's control deficiency other than providing assistance pursuant to its contract with the SEC. *Id.*

Communications with General Dynamics staff are also intra-agency because the SEC retained General Dynamics to support the SEC's Office of Information Technology ("OIT"). SMF ¶20. During the internal review, General Dynamics contractors helped OIT staff provide information to BRG and the review team so that BRG could conduct its forensic analysis. *Id.* General Dynamics contractors performed this work at the request of OIT and to support the SEC's work. *Id.* General Dynamics was not retained to assist with the internal review and has no interest related to the SEC's control deficiency other than providing assistance to OIT pursuant to its contract with the SEC. *Id.*

**4. The SEC properly withheld information under the attorney work-product doctrine.**

The attorney work-product doctrine protects records prepared in anticipation of litigation "by or for another party or by or for that other party's representative (including the other party's

attorney, consultant, surety, indemnitor, insurer, or agent)." *McKinley*, 647 F.3d at 341 (internal quotations omitted); *see also* Fed. R. Civ. P. 26(b)(3) (codifying privilege). For purposes of the attorney work-product doctrine, "[w]hile litigation need not be imminent or certain in order to satisfy the anticipation of litigation prong of the test, this circuit has held that at the very least some articulable claim, likely to lead to litigation, must have arisen, such that litigation was fairly foreseeable at the time the materials were prepared." *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 75 (D.D.C. 2003) (internal quotations omitted).

As detailed in the *Vaughn* index, the SEC withheld information concerning its internal review of the control deficiency pursuant to the attorney work-product doctrine embedded in FOIA Exemption 5. *See* Ex. 1; SMF ¶¶17-18. All of the information the SEC withheld under Exemption 5 is attorney work-product. SMF ¶18. The internal review was conducted by SEC staff and contractors at the direction and under the supervision of SEC attorneys in OGC in anticipation of litigation involving Enforcement cases tied to the control deficiency. *Id*. During the internal review, BRG contractors compiled forensic data and engaged in discussion with SEC staff as part of SEC staff's review of certain databases to assess the scope and potential impact of the SEC's control deficiency. *See* Ex. 1; SMF ¶19. Courts have found that information from similar situations, including internal agency investigations, is appropriately withheld pursuant to the attorney work-product doctrine. *See, e.g.*, *Judicial Watch, Inc. v. U.S. DOJ*, 806 F. App'x 5, 7 (D.C. Cir. 2020) (holding that DOJ "adequately demonstrated that the [FBI forms used by non-attorney agents] fit within the attorney work-product privilege" where forms obtained because of prospect of litigation and work conducted under attorney direction); *Hertzberg*, 273 F. Supp. 2d at 77-78 (protecting "statements of Forest Service employees taken by Forest Service investigators" because employees conducting investigation and preparing statements were "party

representatives" under Federal Rule of Civil Procedure 26(b)(3)); *Leopold v. U.S. DOJ*, 487 F. Supp. 3d 1, 11-12 (D.D.C. 2020) (noting that "in the FOIA context, the District of Columbia Circuit has long held that documents prepared by non-attorneys in anticipation of litigation may also be protected by the privilege" and holding attorney work-product privilege applied to FBI interview-related records prepared by law enforcement agents) (cleaned up).

The SEC's internal review at issue here was undertaken with an eye toward possible litigation, as litigation related to or arising from the control deficiency was reasonably foreseeable. The control deficiency relates "to the separation of enforcement and adjudicatory functions within the agency's system for administrative adjudication." *See* Second Statement, *supra*. Specifically, "for a period of time, certain databases maintained by [the SEC's] Office of the Secretary ('OS') were not configured to restrict access by staff from [the SEC's] Division of Enforcement ('Enforcement') to memoranda drafted by staff from the Adjudication Group ('Adjudication') in [the SEC's] Office of the General Counsel ('OGC')." *Id.* Litigation relating to the control deficiency was foreseeable at the time of the internal review because the SEC recognized that parties in affected administrative proceedings might raise claims in the administrative proceedings, in appeals from those proceedings, or in independent cases in federal courts related to the control deficiency. SMF ¶21. Indeed, recognizing the connection to ongoing litigation, following the issuance of the April 5, 2022 Statement, the Department of Justice, which represents the SEC, submitted information regarding the control deficiency to the courts in which the litigation referred to in the April 5, 2022 Statement was pending.[2] As

---

[2] *See, e.g.,* Letter from the Solicitor General, *SEC v. Cochran*, No. 21-1239 (S. Ct. Apr. 8, 2022), (*available at* https://www.supremecourt.gov/DocketPDF/21/21-1239/220641/20220408165202974_Letter%2021-1239%20final.pdf); Notice of Supplemental Authorities, Doc. 00516268389, *Jarkesy v. SEC*, No. 20-61007 (5th Cir. Apr. 5, 2022).

Plaintiff represents Cochran in her case against the SEC, Plaintiff is well aware of the relevance of these matters to litigation. *See SEC Enforcement Staff Accessed Adjudicatory Documents in Midst of Administrative Proceedings*, NCLA (Apr. 6, 2022), https://nclalegal.org/2022/04/sec-enforcement-staff-accessed-adjudicatory-documents-in-midst-of-administrative-proceedings.

Because the withheld information was created by SEC staff and contractors as part of an internal review led by OGC in reasonable anticipation of litigation, information about the internal review fits squarely within the attorney work-product doctrine embedded in Exemption 5 and was appropriately withheld.

**5. The SEC properly withheld information under the deliberative process privilege.**

The deliberative process privilege applies to material that is both "predecisional" and "deliberative." *Amiri*, 2021 WL 4438910, at *6. A record is "predecisional if the agency generated it before its final decision on a matter" and "deliberative if the agency prepared it to 'help the agency formulate its position.'" *Clemente*, 2022 WL 17092585, at *5; *Elec. Frontier Found. v. U.S. DOJ*, 739 F.3d 1, 4 (D.C. Cir. 2014) (Exemption 5 "allows an agency to withhold 'all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be[.]'").

The deliberative process privilege protects "from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Competitive Enter. Inst. v. United States EPA*, 232 F. Supp. 3d 172, 184 (D.D.C. 2017) (internal quotations omitted). The deliberative process privilege also "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the

policy of the agency." *Id.* (internal quotations omitted). "To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure." *Sierra Club*, 141 S. Ct. at 785. The privilege also "protects agencies from being 'forced to operate in a fishbowl.'" *Elec. Frontier Found.*, 739 F.3d at 7. The deliberative process privilege "calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Id.* (internal quotations omitted). "[C]ourts have allowed agencies to withhold factual information that is 'inextricably intertwined' with deliberative material." *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 203 (D.D.C. Oct. 5, 2007), *report and recommendation adopted*, 520 F. Supp. 2d 194 (D.D.C. Nov. 8, 2007).

As detailed in the *Vaughn* Index, the SEC withheld information about its internal review of the control deficiency under the deliberative process privilege embedded in Exemption 5. *See* Ex. 1. The withheld records consist of pre-decisional discussion and analysis concerning the agency's review of the control deficiency. *See* Ex. 1; SMF ¶22. Specifically, the records reflect staff's deliberations concerning its review of the control deficiency prior to the agency's final findings about the control deficiency. *See* Ex. 1; SMF ¶¶19, 22 In these records, SEC staff and contractors compile and discuss forensic data used to assess the scope and potential impact of the SEC's control deficiency. *See id*. This analysis occurred prior to final agency decisions or findings concerning the internal review. *See id.* Courts have found that this type of discussion among agency staff and contractors about data is appropriately withheld pursuant to the deliberative process privilege. *Reliant*, 520 F. Supp. 2d at 204-06 (deliberative process privilege applied to draft reports about investigation, emails and other records with substantive discussion

of issues under investigation, and spreadsheets and tables analyzing raw data); *Center for Biological Diversity v. U.S. EPA*, 369 F. Supp. 3d 128, 138 (D.D.C. 2019) (finding that deliberative process privilege protected factual information "inextricably intertwined" with deliberative discussions because it was "selected, organized, and presented in such a way that requires 'the exercise of discretion and judgment calls,' and does not amount to an 'essentially technical' recitation of scientific data or other facts"); *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 465 (D.C. Cir. 2014) (concluding that deliberative process privilege protected internal draft agency history and noting that "the selection of the facts thought to be relevant" is part of deliberative process because "it necessarily involves policy-oriented judgment") (internal quotations omitted); *Elec. Privacy Info. Ctr. v. U.S. DOJ*, 320 F. Supp. 3d 110, 119 (D.D.C. 2018) ("The deliberative process privilege protects a compilation of factual material 'assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action.'"). Because the SEC's internal analysis pre-dated the SEC's final findings about the control deficiency and reflects deliberation about the internal review, the records were appropriately withheld under Exemption 5.

The SEC also withheld portions of an email that contained pre-decisional discussions concerning a draft of a Commission statement relating to the control deficiency, as well as the draft that was discussed. *See* Ex. 1 at 13; SMF ¶23. Specifically, the records reflect SEC staff's discussions, edits, and recommendations concerning the draft statement. *Id*. Courts have found that internal correspondence between agency staff about draft agency documents as well as the draft document itself are appropriately withheld pursuant to the deliberative process privilege. *See Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 27 (D.D.C. 2011) (D.C. "Circuit has

held that draft documents likely are to be protected under the deliberative process privilege because draft documents, by their very nature, are typically pre-decisional and deliberative.") (internal quotations omitted); *Lewis v. U.S. Dep't of Treasury*, No. 17-cv0943 (DLF), 2020 WL 1667656, at *7 (D.D.C. Apr. 3, 2020) (Exemption 5 applied to draft documents "prepared to help [agency] officials finalize the language in the agency's proposed rulemaking" that "contain[ed] comments and redline edits . . . reflect[ing] the give-and-take of the consultative process between [agency] officials regarding what material the final document should include") (cleaned up), *aff'd*, 851 F. App'x 214 (D.C. Cir. 2021); *ACLU v. CIA*, No. 1:18-cv-2784 (CJN), 2022 WL 306360, at *8 (D.D.C. Feb. 2, 2022) (Nichols, J.) ("draft documents, email exchanges, and preliminary communications in response to Senate, White House, and media inquiries" appropriately withheld under deliberative process privilege because they reflect agency's "'internal and confidential decision-making process'" and agency "did not treat the documents as final, but rather as preliminary versions subject to feedback and change"); *Public Employees for Envtl. Responsibility v. U.S. EPA*, No. 18-cv-2219 (BAH), 2021 WL 2515007, at *9-10 (D.D.C. June 18, 2021) (Exemption 5 protected version of agency assessment because it was identified as draft version, preceded final assessment, "contain[ed] redlines, indicating proposed changes, and comment bubbles" and "comprise[d] the agency's tentative selection and synthesis of facts and studies upon which to base its assessment").

**6. The SEC properly withheld information under Exemption 6.**

The FOIA prevents disclosure of "personnel files and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To withhold information under Exemption 6, an agency must first establish that the information is contained in personnel, medical, or "similar" files. *See Reliant*, 520 F.

Supp. 2d at 207. If the information meets that threshold, a court assesses whether disclosure would lead to a "clearly unwarranted invasion of personal privacy." *See id*. Specifically, "the court must undertake a balancing of the public interest in disclosure on the one side and the individual's interest in privacy on the other." *Id.* (internal quotations omitted).

The records at issue here are in "similar files." "The Supreme Court has held that Congress intended the words 'similar files' to be interpreted broadly." *Reliant*, 520 F. Supp. 2d at 207. Exemption 6 is not limited to personnel or medical files; it covers any "'detailed Government records on an individual which can be identified as applying to that individual.'" *Gov't Accountability Project*, 699 F. Supp. 2d at 105 (quoting *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)). Exemption 6 also covers not just the files themselves, but also "bits of personal information, such as names and addresses." *Telematch, Inc. v. U.S. Dep't Agric.*, 45 F.4th 343, 351 (D.C. Cir. 2022) (internal quotations omitted). Because the SEC is withholding SEC staff and contractor email addresses and phone numbers as well as the names of SEC staff who either had access to the databases at issue in the control deficiency or were interviewed by the internal review team, the information is deemed to be in "similar files." *See* Ex. 1; SMF ¶24.

Individuals have a privacy interest in this information. Courts have consistently protected employee names and contact information under Exemption 6. *See, e.g.*, *Davidson v. United States*, 264 F. Supp. 3d 97, 115 (D.D.C. 2017) (Exemption 6 covers personal information "the release of which would create a palpable threat to privacy") (internal quotation omitted), *aff'd*, 728 F. App'x 7 (D.C. Cir. 2018). The privacy interest in names and contact information is substantial because individuals have a privacy interest in information that could lead to them being harassed if released. *See, e.g.*, *id.* at 110, 115 (concluding individuals have substantial

privacy interest in their names and contact information where the agency withheld the information to avoid "unwanted attention for the employee"); *Nova Oculus Partners, LLC v. U.S. SEC*, 486 F. Supp. 3d 280, 290 (D.D.C. 2020) (SEC appropriately withheld under Exemption 6 names and contact information of SEC staff). The only names withheld are of SEC staff who had access to the databases at issue in the control deficiency or who were interviewed during the review, and the potential for harassment exists from persons who may want to question or attack individuals they think may have acted improperly. *See Horvath v. U.S. Secret Serv.*, 419 F. Supp. 3d 40, 47 (D.D.C. 2019) ("agents interviewed in the investigation have a substantial privacy interest in withholding information that would associate them with internal agency investigations and threatens to identify them as witnesses to alleged workplace misconduct") (cleaned up); *Cotton v. Adams*, 798 F. Supp. 22, 26 (D.D.C. 1992) ("individuals named as witnesses or as subjects of an investigation . . . have a discernible privacy interest in . . . avoiding the embarrassment and potential harassment that may result from public disclosure of their association with the Inspector General's inquiry") (internal citation omitted).

No public interest outweighs the privacy interests in the names and contact information the SEC withheld. To overcome a privacy interest, it is the requester's obligation to articulate a sufficient and significant public interest. *See Reliant*, 520 F. Supp. 2d at 207 ("If the requesting party cannot demonstrate a public interest in disclosure then the court will not order disclosure, because, as this Circuit has noted, 'something, even a modest privacy interest, outweighs nothing every time.'"). Under the FOIA, the only relevant public interest is whether disclosing the personal information would shed light on governmental activities or operations. *Davidson*, 264 F. Supp. 3d at 115-16. "Information that reveals little or nothing about an agency's own conduct does not further the statutory purpose[.]" *Id.* (internal quotations omitted). Releasing contact

information and the names of people with access to the databases at issue in the control deficiency or who were interviewed during the review would not shed light on the SEC's activities or operations. SMF ¶30.

The SEC properly withheld names and contact information under Exemption 6 to protect the privacy interests of its employees and of its contractor's employees.

**7. The SEC conducted a segregability analysis and reasonably foresaw that disclosure of the withheld information would harm interests protected by Exemptions 5 and 6.**

Under the FOIA, an agency may withhold exempt information only if it "reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption," "consider[s] whether partial disclosure of information is possible," and "take[s] reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A). "A record is not reasonably segregable if 'exempt and nonexempt information are inextricably intertwined, such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value.'" *Elec. Privacy Info. Ctr. v. FBI*, No. 1:17-cv-00121 (TNM), 2018 WL 2324084, at *6 (D.D.C. May 22, 2018). The SEC "enjoy[s] 'a presumption that they complied with the obligation to disclose reasonably segregable material.'" *Id.*

SEC staff reviewed the records responsive to the First Category to determine whether any portions of those records could be segregated for public disclosure. SMF ¶25. SEC staff have provided all non-exempt information that could be segregated from exempt information. *Id.* With respect to information protected by the attorney work-product doctrine, courts have

recognized that "[i]f a document is fully protected as work product, then segregability is not required." *Judicial Watch, Inc. v. U.S. DOJ*, 432 F.3d 366, 371 (D.C. Cir. 2005).

SEC staff have also reviewed the records responsive to the First Category to determine if it is reasonably foreseeable that disclosure would harm an interest protected by one of the FOIA's statutory exemptions or the disclosure is prohibited by law. SMF ¶26. The SEC has disclosed all portions of documents that it reasonably foresees could be disclosed without causing harm. *Id*. Disclosure of the information relating to the SEC's internal review that the SEC is withholding under the attorney work-product doctrine would deprive the SEC of its ability to withhold any information in future litigation, and consequently would deprive SEC attorneys of a zone of privacy within which to weigh facts and evidence and evaluate how to handle future litigation. SMF ¶29; *see Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 209 (D.D.C. 2010) ("privilege aims to protect the adversary trial process by providing attorneys a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories").

Additionally, disclosure of the information relating to the SEC's internal review that the SEC is withholding under the deliberative process privilege would chill ongoing discussions about addressing the control deficiency the SEC identified as well as discussions about addressing future issues the SEC may face. SMF ¶27. Public release of these discussions would also likely deter SEC staff's future willingness to share ideas, recommendations, and preliminary thoughts on issues and matters before them. *Id*. These confidential discussions and the data generated from the discussions also formed the basis for advice conveyed to SEC officials who needed to decide what actions to take in light of the internal review. *Id*. If these documents were disclosed in response to FOIA requests, staff across the SEC would likely limit their discussions

and inhibit their candor in discussing issues relating to the control deficiency and other issues that may arise in the future. *Id.* Such chilling would make it more difficult for SEC leadership to obtain the advice necessary to efficiently and effectively address complex issues about its operations and would hamper comprehensive reviews designed to address and improve those issues. *Id.* Release of the discussions concerning the draft Commission statement, as well as the draft itself, would likely cause confusion to the public because these discussions and the draft statement contain deliberations about what the final statement should be and are not reflective of the publicly released statement. *Id.* Overall, disclosure would jeopardize the candid and comprehensive discussions that are essential for efficient and effective decision-making. SMF ¶28; *see Reliant*, 520 F. Supp. 2d at 204 (releasing documents related to factual investigation "would allow a reader to probe too deeply into the thought processes of the drafters and would have a chilling effect on communication between agency employees").

Finally, disclosure of information in which individuals have a privacy interest would create foreseeable harm by unnecessarily exposing personal information to the public and resulting in an unwarranted invasion of personal privacy to these individuals. SMF ¶30.

**C. The SEC has not withheld any information from the Second Category.**

Plaintiff's Second Category seeks "the first page of the Order Instituting Proceedings (a public document) of every administrative proceeding in which the 'control deficiency' occurred." SMF ¶8. Thus, instead of using the FOIA to seek documents that are not otherwise available to the public, Plaintiff is using the FOIA to seek information about the status and progress of the SEC's internal review. The release of the Second Statement and its associated exhibits provided Plaintiff with information about the Commission's findings about administrative proceedings impacted by the control deficiency. *See* Second Statement, *supra*.

Indeed, the exhibits contained links to Orders Instituting Proceedings and electronic dockets for the matters in which the Commission has determined that one or more SEC Adjudication memoranda were accessed by SEC Division of Enforcement staff. *See id*. By providing this information, the SEC has provided all documents responsive to the Second Category and has not withheld any information. SMF ¶13. As such, there is no dispute concerning the application of any FOIA exemptions.

Plaintiff informed the SEC that its position is that it can only agree that the SEC has satisfied the Second Category request if it receives information regarding closed, settled, or otherwise disposed of administrative proceedings affected by the control deficiency. SMF ¶14. As such, Plaintiff claims that the SEC has not provided all responsive documents because it wants "the first page of the Order Instituting Proceedings" for additional administrative proceedings that were not addressed in the Second Statement and as to which the SEC has not determined that Adjudication memoranda were accessed by Division of Enforcement staff. Plaintiff's claim makes clear that instead of seeking specific documents, it is asking the SEC to conduct further analysis to determine whether, and in which administrative proceedings, Enforcement staff accessed adjudication memoranda. Such a request would be an improper FOIA request because FOIA does not require agencies to "undertake research, analysis, and formulation of opinions." *Hall & Assocs. v. U.S. EPA*, No. 16-5315, 2018 WL 1896493, at *2 (D.C. Cir. Apr. 9, 2018). In addition, the request is not focused on obtaining records that exist but on having the SEC create records that do not exist. Agencies do not have an obligation to create records to respond to FOIA requests. *See Jarvis v. Comm'r, Soc. Sec. Admin.*, No. 18-5170, 2018 WL 6722401, at *1 (D.C. Cir. Dec. 18, 2018) ("[N]o duty to create statistical records in response to appellant's FOIA request."); *Skinner v. Bureau of Alcohol, Tobacco, Firearms &*

*Explosives*, No. 12-5319, 2013 WL 3367431, at *1 (D.C. Cir. May 31, 2013) ("FOIA does not require federal agencies to create or obtain records").

Because a request for additional Orders Instituting Proceedings would be an improper FOIA request, Plaintiff has received all the information the SEC currently has that is responsive to its Second Category.

## V. CONCLUSION

For the foregoing reasons, the SEC respectfully requests that the Court grant the SEC's motion for summary judgment.

Dated: July 12, 2023

Respectfully submitted,

/s/ *Alexandra Verdi*
Alexandra Verdi (NY Reg. No. 5480934)
Office of the General Counsel
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549
Telephone: (202) 551-5057
Fax: (202) 772-9263
verdim@sec.gov

*Counsel for Defendant*
*U.S. Securities and Exchange Commission*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Defendant. | No. 22-cv-03567-CJN |

**[PROPOSED] ORDER GRANTING SEC'S MOTION FOR SUMMARY JUDGMENT**

Having considered the defendant U.S. Securities and Exchange Commission's ("SEC") motion for summary judgment,

IT IS HEREBY ORDERED that the SEC's motion for summary judgment is granted.

IT IS SO ORDERED.

Date:

____________________________________
Hon. Carl J. Nichols
UNITED STATES DISTRICT JUDGE

Pursuant to Local Civil Rule 7(k), the names and addresses of all attorneys entitled to be notified of the entry of this proposed order granting the SEC's motion for summary judgment are as follows:

Christopher C. Horner
1725 I Street NW, Suite 300
Washington, DC 20006

Matthew D. Hardin
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006

Margaret A. Little
New Civil Liberties Alliance
1225 19th Street NW, Suite 450
Washington, DC 20036

*Counsel for Plaintiff New Civil Liberties Alliance*

Alexandra Verdi
Office of the General Counsel
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549

*Counsel for Defendant U.S. Securities and Exchange Commission*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Defendant. | ) | Civil Action No. 22-3567 (CJN) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................................2

1. The SEC's Administrative Enforcement Structure............................................................2

2. The SEC's "Control Deficiency."........................................................................................3

3. The Cochran Decision at the Supreme Court…………………..……………………6

4. The June 2 Press Release………………………………………………………………6

5. The Instant FOIA Case………………………………………………………………7

LEGAL STANDARD.............................................................................................................8

ARGUMENT……………………………………………………………………….…………10

I. By Simply Referring Plaintiff to a Press Statement, Defendant Does Not Satisfy its Burden to Adequately Search for Records or to Respond to Plaintiff's FOIA Request....10

II. Summary Judgement is Inappropriate Because Defendant's Vaughn Index Provides Only Boilerplate, Repetitive, and Insufficiently Detailed Assertions of Why the Records are Privileged and Covered by Exemption 5 or 6. ..............................................13

III. Defendant Does Not Show the Harm Needed to Withhold or Redact the Responsive Records it Does Acknowledge. ...........................................................................................30

CONCLUSION......................................................................................................................34

## INTRODUCTION

Plaintiff was forced to file this suit under the Freedom of Information Act, 5 U.S.C. § 552 *et seq*. ("FOIA"), after the SEC refused to comply with its statutory obligations and had made clear its intent to indefinitely withhold the requested documents.[1] The motive behind the agency's defiance is obvious—disclosure of the records will expose an internal scheme of illegal misconduct in the administration of the SEC's unconstitutional in-house court system and its attempt to control the fallout from the scandal. But the agency's fears of embarrassment are not among the statutory exemptions that would allow it to withhold records under FOIA, the very purpose of which is to act as a "check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 214, 242 (1978). By flouting the fundamental requirements of FOIA, the agency seems determined to avoid that accountability.

There is no genuine issue of material fact controverting the averments in the Complaint, and the agency has not submitted any evidence, admissible or otherwise, which explains its failure to comply with the law. This brand of agency chicanery is one of the reasons why "FOIA cases typically and appropriately are decided on motions for summary judgment." *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012). At the summary judgment stage "the court views all facts and inferences in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA." *Buzzfeed, Inc. v. U.S. Dep't of Homeland Sec.*, 610 F. Supp. 3d 139, 144 (D.D.C. 2022). This is a burden the SEC cannot meet and has made no effort at all to meet; the agency simply has not complied with FOIA.

[1] Even after litigation began following months of agency delay, the SEC continued to assert it would take approximately three years to prepare this case for summary judgment. Hardin Declaration, Exhibit B.

SEC has violated the Freedom of Information Act ("FOIA") by referring Plaintiff to a press release rather than responding to one portion of the Plaintiff's FOIA request, and by redacting heavily or even in full documents responsive to the other portion. Because the SEC's practice of "government by press release" is so unusual, and because it sheds light on the importance of the documents requested and the necessity for releasing them over the SEC's risible assertions that release will cause "foreseeable harm," Plaintiff briefly recounts here the context of its request and the SEC's response. Plaintiff then turns to the merits, including why SEC cannot satisfy its FOIA obligations via press releases and why the information it continues to withhold is improperly withheld.

## FACTUAL AND PROCEDURAL BACKGROUND

The broader factual context in which Plaintiff's FOIA request was filed is necessary to explain the meaning of the records sought, the significance of the request, and the underlying motives of the agency in scorning FOIA's demands. "[E]vidence of agency bad faith" is recognized as probative of the agency's noncompliance. *See Jud. Watch, Inc. v. Dep't of Just.*, 619F. Supp. 3d 69, 75 (D.D.C. 2022).

### 1. The SEC's Administrative Enforcement Structure

The FOIA request that ultimately led to this litigation arose out of SEC's practice of bringing enforcement actions before Administrative Law Judges instead of in federal courts. In *Cochran v. United States SEC*, 20 F.4th 194, 198 (5th Cir. 2021), the Fifth Circuit summarized the history of that formative case:

> In April 2016, the Securities and Exchange Commission ("SEC") brought an enforcement action against Michelle Cochran, a certified public accountant… After a hearing, an SEC administrative law judge ("ALJ") ruled against Cochran, imposing a $22,500 penalty and a five-year ban on practicing before the SEC. The SEC adopted the ALJ's decision. Cochran objected.

> Before the SEC ruled on Cochran's objection, the Supreme Court intervened. In *Lucia v. SEC*, the Court held that SEC ALJs are officers of the United States under the Appointments Clause, who must be appointed by the President, a court of law, or a department head. 138 S. Ct. 2044, 2049, 2051, 201 L. Ed. 2d 464 & n.3 (2018). Because the ALJ who had issued the initial decision in *Lucia* had not been appointed by a person or entity in one of those three categories (but had instead been appointed by SEC staff members), the Court remanded the case to the SEC for further proceedings before a constitutionally appointed ALJ. Id. at 2050, 2055.
>
> In response to *Lucia*, the SEC remanded all pending administrative cases for new proceedings before constitutionally appointed ALJs. Cochran's case was reassigned to a new ALJ.
>
> Cochran filed suit in federal district court to enjoin the SEC's administrative enforcement proceedings against her. Though the SEC had fixed the appointment problem *Lucia* addressed, Cochran contended it did not fix a removability problem *Lucia* declined to reach: she alleged that, because SEC ALJs enjoy multiple layers of "for-cause" removal protection, they are unconstitutionally insulated from the President's Article II removal power. Cochran also asserted that the SEC violated her due process rights by failing to adhere to its own rules and procedures.

**2. The SEC's "Control Deficiency."**

Just as the *Cochran* case was headed to the Supreme Court, the SEC disclosed damning evidence confirming the worst fears of those who had long challenged the constitutionality of SEC administrative enforcement actions. On April 5, 2022, the SEC filed a Notice with the Supreme Court and district court in *Cochran*[2] and also with the Fifth Circuit in *Jarkesy v. SEC,*[3] a case raising similar constitutional challenges to the combination of prosecutorial and adjudicatory functions in a single agency. The notice disclosed:

> The Commission has identified a control deficiency related to the separation of its enforcement and adjudicatory functions within its system for administrative adjudications …
>
> The Commission has determined that, for a period of time, certain databases maintained by the Commission's Office of the Secretary were not configured to

---

[2] Letter from Elizabeth Prelogar to Supreme Court dated April 8, 2022, available at https://www.supremecourt.gov/DocketPDF/21/21-1239/220641/20220408165202974_Letter%2021-1239%20final.pdf in *Securities and Exchange Commission, et al. v. Michelle Cochran*, U.S. Supreme Court Case No. 21-1239.

[3] *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), Notice in Case No. 20-61007, Document 117.

> restrict access by Enforcement personnel to memoranda drafted by Adjudication staff. As a result, in a number of adjudicatory matters, administrative support personnel from Enforcement, who were responsible for maintaining Enforcement's case files, accessed Adjudication memoranda via the Office of the Secretary's databases. Those individuals then emailed Adjudication memoranda to other administrative staff who in many cases uploaded the files into Enforcement databases.

As the Wall Street Journal put it

> It's the equivalent of a party in litigation having access to a judge's briefs from her law clerks … This breach reinforces the problem with the SEC's administrative process in which the commission has total discretion to deprive parties of their ability to have matters litigated in federal court.[4]

University of Tennessee Law Professor Glenn Reynolds, blogging at his Instapundit, declared: "The SEC needs a Special Counsel Investigation," stressing,

> Understand: The "prosecutors" at the SEC illegally accessed filed belonging to the "judges." This raises serious questions about the trustworthiness of the SEC, and demands an outside investigation with subpoena power.[5]

New Civil Liberties Alliance ("NCLA"), which had served as counsel for Michelle Cochran, promptly filed a FOIA request with the SEC for production of all records relevant to this "control deficiency" in June of 2022. Other than a copy of the SEC's contract with the Berkeley Research Group ("BRG") to conduct an internal investigation (with information about the cost of the contract redacted), NCLA received no production from the SEC office in charge of FOIA compliance. That stonewalled FOIA request is now before this Court.

On July 19, 2022, the House Financial Services Committee on Oversight of the SEC called SEC Chairman Gary Gensler for questioning on the "control deficiency," who sent SEC Director of Enforcement Gurbir Grewal in his stead. Asked if SEC's Inspector General ("IG") was

---

[4] Dave Michaels, *SEC Says Employees Improperly Accessed Privileged Legal Records*, WALL ST. J. April 6, 2022. https://www.wsj.com/amp/articles/sec-says-employees-improperly-accessed-privileged-legal-records-11649205758.
[5] https://instapundit.com/515245/.

investigating, Grewal claimed ignorance, telling Rep. William Huizenga: "You would have to ask the Inspector General."[6] There is no evidence, one way or the other, whether the SEC Inspector General has investigated the SEC's "control deficiency." Instead, and despite the provisions of the Inspector General Act, 5 U.S.C. § 401 *et seq*. providing for a taxpayer-funded office to address just such internal agency problems, SEC hired BRG to conduct what it prefers to call an "internal investigation." Public records show that BRG provides expert witness services to SEC in its enforcement actions under contracts totaling millions of dollars.[7]

The notices filed with the *Cochran* and *Jarkesy* courts represented that BRG found, to paraphrase, "nothing to see here," while adding that the investigation was not complete and the breach had occurred in other, unnamed cases.

Grewal represented to Congress that the control deficiency was publicly reported when it happened.[8] Later in the hearing, Rep. Huizinga presented Grewal with information from the Wall Street Journal that the breach dated back to 2017. Rep. Huizenga also countered Grewal with information that the Wall Street Journal had reported that SEC discovered the breach in the fall of 2021. The control deficiency was first disclosed to the courts and two of the affected parties only in April of 2022. At the end of the hearing, Rep. Huizinga admonished Grewal for his lack of transparency, incorrect answers, and testimony that was "too little, too late—neither side got answers."[9]

---

[6] U.S. House Committee on Financial Services-Oversight of the SEC's Division of Enforcement, Hearing Held July 19, 2022, video available at https://youtu.be/hlYJ4aa8k2I?t=1570 26:00-28:00
[7] Federal Procurement Data System (last visited Aug. 2, 2023), https://www.fpds.gov/ezsearch/search.do?q=Berkeley+Research+Group+DEPARTMENT_FULL_NAME%3A%22SECURITIES+AND+EXCHANGE+COMMISSION%22&s=FPDS.GOV&templateName=1.5.3&indexName=awardfull (contracts between BRG and SEC).

[8] *Id*., https://youtu.be/hlYJ4aa8k2I?t=1570..
[9] *Id*., https://youtu.be/hlYJ4aa8k2I?t=1570 at 1:27:46 – 1:28:51.

### 3. The Cochran Decision at the Supreme Court

On April 14, 2023, the Supreme Court held in *Axon Enterprise Inc. v. FTC*[10] that constitutional questions raising "separation of powers principles … as well as the combination of prosecutorial and adjudicatory functions in a single agency" raise "fundamental, even existential" challenges that "the agencies, as currently structured, are unconstitutional in much of their work" should be heard in district court before the constitutional injury takes place.

### 4. The June 2, 2023 Press Release

Before Cochran could file a complaint in district court, the SEC dismissed her administrative case as part of an unprecedented agency dismissal of all 42 open proceedings that could have brought these questions to an Article III Court. Forty-five industry bar orders were also lifted. A ten-year quest by numerous plaintiffs nationwide for judicial review of the SEC's unconstitutional proceedings was eviscerated, to say nothing of SEC deep-sixing untold years of enforcement resources that cost millions of taxpayer dollars.

The reason the SEC gave for its unprecedented, sweeping attempt to insulate its administrative processes from judicial review was its "control deficiency." The SEC announced its decision by press release, which it later provided to undersigned counsel for the Plaintiff in this action, declaring that the SEC had no additional information to provide. Hardin Declaration, Exhibit A.

The SEC's unprecedented dismissal orders and lifts of industry bars in nearly 90 matters were accompanied by a report apparently prepared by BRG. That report raises more questions than it answers, is long on conclusory exculpatory statements and devoid of primary documents, interviews, or any other material that Cochran and others could have readily obtained in litigation

[10] 143 S.Ct 890 (2023).

to test the SEC's *ipse dixit* claims in its 2022 Notices and the 2023 BRG press release report that there is "nothing to see here." SEC has taken the position in this FOIA litigation that this is all the public, and the Plaintiff, will get. The SEC report specifically refuses to provide information regarding enforcement targets in closed or settled cases tainted by the "control deficiency," even though they may be the ones most damaged by a corrupted prosecution.

The SEC's malfeasance has gone on far too long—since at least 2017 if press reports are to be believed. The SEC's summary dismissals effectuates a massive nullification of constitutional rights.

SEC's undeniable goal in this litigation is to bury the record of what went on, and use the "control deficiency" as a ploy to control the federal dockets by dismissing any case that could bring to an Article III court what the *Axon/Cochran* Court called the "fundamental, even existential" claims that SEC, "as currently structured [is] unconstitutional in much of [its] work."

**5. The Instant FOIA Case**

Plaintiff's suit here arises from the Freedom of Information Act.

SEC's violations of that Act are laid bare first by SEC's *Vaughn* Index lacking sufficient detail to support either its withholdings or the idea that there is no reasonably segregable information in these records. SEC's justifications for why the records (many of which were shared outside the agency with contractors it brought on specifically to circumvent, or *de facto* displace, Inspector General review) are allegedly covered by FOIA's Exemption 5 are boilerplate and repetitive. Thus, SEC fails to establish that the withheld information is covered by the deliberative process privilege articulated by FOIA's Exemption 5. To the extent SEC raises Exemption 6 at all, it has not properly balanced a personal privacy interest against the extreme public interest in discerning the facts of the SEC's most unusual investigation of itself. Further, and separately, a

freestanding reason why SEC's withholdings are invalid is that it has not shown that disclosure of any of the records, in whole or in part, would cause harm, as the 2016 FOIA Amendments require for withholding even exempt information. Nor has Defendant explained how it can satisfy a FOIA request by simply releasing a statement to the press and referring a requester's counsel to that release, as opposed to independently satisfying the obligation to search for and provide records to the individual who requested such records.

In the instant matter, the SEC redacted emails ("Category 1" records) and declared that a press release with links satisfies Plaintiff's "Category 2." Plaintiff's position is that, even accepting, *arguendo*, the propriety of "response by press release," there remains the issue of records in the closed cases as the SEC's press release only addressed the open ones. The SEC then insists that there are no closed cases (or at least that it has made no determinations with respect to such cases), and that there are therefore no records being withheld, notwithstanding that the multiple links in this fractured chain of agency reasoning are not supported or explained in any declaration, anywhere, and the agency performed no relevant search for potentially responsive records from any closed cases which, as the record as described, *infra*, affirms, do exist.

As such, SEC has not met its undeniable burden to show and support that it produced all reasonably segregable records responsive to Plaintiff's FOIA requests.

**LEGAL STANDARD**

FOIA was enacted "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173, 112 S. Ct. 541, 116 L. Ed. 2d 526 (1991) (cleaned up). Under FOIA, an agency is obligated to demonstrate that "each document that falls within the class requested" has either "been produced" or is "exempt." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978). The agency bears the "burden of showing that its

search was adequate," rather than the FOIA requestor having to prove that it was inadequate. *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.1994). The burden never shifts to the plaintiff at any stage. *Nat'l Sec. Counselors v. CIA*, 320 F. Supp. 3d 200, 209 (D.D.C. 2018)

In a lawsuit under the Freedom of Information Act, the "burden is on the agency to demonstrate, not the requester to disprove, that the materials sought … have not been 'improperly' 'withheld.'" *Department of Justice v. Tax Analysts*, 492 U.S. 136, 142 n. 3 (1989).

"The burden is on the agency to prove de novo in trial court that the information sought fits under one of the exemptions to the FOIA." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). Because of FOIA's presumption in favor of disclosure, exemptions are "narrowly construed." *FBI v. Abramson*, 456 U.S. 615, 630 (1982); *accord Dep't of Air Force v. Rose,* 425 U.S. 352, 360–61 (1976); *Loving v. Dep't of Defense*, 550 F.3d 32, 37 (D.C. Cir. 2008).

Moreover, "Under the FOIA Improvement Act of 2016, the government may not withhold even those privileged materials unless it also 'reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption." *Reporters Committee v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021), *citing* 5 U.S.C. § 552(a)(8)(A)(i)(I). This "reasonable foreseeability of harm" standard requires the withholding agency to provide "context or insight into the specific decision making processes or deliberations at issue, and how they in particular would be harmed by disclosure" of the contested records*.* *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. 17-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019). That is, the agency must demonstrate the foreseeability of harm, as well as the existence of an otherwise exempt exchange.

An agency's summary-judgment declarations to support these withholdings must contain "reasonable specificity of detail rather than merely conclusory statements," that "are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial*

*Watch. v. U.S. Secret Serv*., 726 F.3d 208, 215 (D.C. Cir. 2013). A declaration must therefore "provide detailed and specific information demonstrating that material withheld is logically within the domain of the exemption claimed." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998), as amended (Mar. 3, 1999).

Even when an agency carries its burden to demonstrate that *some* material may be exempt, the agency nevertheless has a duty to "segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii). This duty is so essential that even if the FOIA requester does not challenge the agency's failure to release nonexempt information, "the District Court ha[s] an affirmative duty to consider the segregability issue *sua sponte*." *Transpacific Policing v. U.S. Customs*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

## I. By Simply Referring Plaintiff to a Press Statement, Defendant Does Not Satisfy its Burden to Adequately Search for Records or to Respond to Plaintiff's FOIA Request.

SEC's motion and its decision to simply refer to a press release rather than respond to the Plaintiff's FOIA request calls into question the adequacy of SEC's search for records and its general process for responding to the Plaintiff's FOIA request. These questions cannot be answered by SEC's declarants and are apparent on the face of the record.

In order to meet the standard required for an adequate FOIA search, the agency must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *ACLU v. Dep't of Homeland Sec.,* Civil Action No. 20-3204 (RDM), 2023 U.S. Dist. LEXIS 57430, at *16 (D.D.C. Mar. 31, 2023) citing *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68, 287 U.S. App. D.C. 126 (D.C. Cir. 1990).

An adequate search may be supported by "[a] *reasonably detailed* affidavit [or declaration], setting forth the search terms and the type of search performed, and averring that all files likely to

contain responsive materials (if such records exist) were searched." *Id.* (emphasis added). "Although a requester must reasonably describe the records sought, an agency also has a duty to construe a FOIA request liberally." *Nation Mag., Wash. Bureau v. U.S. Customs Serv*., 71 F.3d 885, 890, 315 U.S. App. D.C. 177 (D.C. Cir. 1995).

SEC's declarations barely support the notion that *any* type of a search for responsive documents was conducted, and the SEC's description of the search does not meet the applicable legal standard. First, there is the Declaration of Lizzette Katilius, who is the "Branch Chief" of SEC's FOIA Office. ECF No. 16-2. Ms. Katilius asserts, about her responsibility for the process, only that "I am responsible for, among other things, coordinating and processing FOIA requests, organizing searches for documents responsive to FOIA requests, making determinations as to whether requested information is exempt from disclosure under FOIA, and communicating with FOIA requesters." She asserts that SEC provided certain records but says nothing about the redaction process or how SEC determined that no "Category 2" records existed or were being withheld.[11] Second, there is the Declaration of Mark Tallarico. ECF No 16-3. Mr. Tallarico is an attorney and "FOIA Liaison." His Declaration states only that "The SEC has not withheld any information in connection with the Second Category" (¶ 25) and that because the SEC provided a press release to Plaintiff on June 13, 2023 (after providing it to the press on June 2, 2023) that SEC had therefore "allowed" Plaintiff access to the records it requested in that category (¶23). Mr. Tallarico's characterization of correspondence between counsel has compelled Plaintiff to supplement the record with the Hardin Declaration (and its accompanying Exhibit A), Tallarico does not explain, in ¶ 23 of his Declaration or elsewhere, how SEC made the determination that it

[11] SEC's assertions in its correspondence attached as Exhibit A to the Hardin Declaration appear to be entirely unsupported in this litigation by any admissible evidence.

possessed no additional records relating to closed or settled cases and whether such determination was based upon a search.

The SEC has failed to carry its burden of proof for two basic reasons: First, because the SEC has failed entirely to explain how the repositories of records were searched and by whom, its Declarations are insufficient to permit Plaintiff (or indeed the Court) to determine the sufficiency of the search. Second, to the extent the SEC has simply concluded that by providing a copy of a press release it has therefore satisfied Plaintiff's request for records, the SEC has failed to explain how the press release was determined to include all records requested by Plaintiff and whether the press release was itself based on an adequate search of all repositories or files. The SEC has additionally failed to explain as a general matter how providing a press release can ever satisfy a FOIA request, unless the request sought that press release by name or description, insofar as press releases and FOIA responses are fundamentally different species of documents with different purposes and different characteristics.

With respect to the adequacy of SEC's declaration, Plaintiff notes that declarations that "do not denote which files were searched or by whom" or "do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized," have been held to be "inadequate and too conclusory to justify a grant of summary judgment." *Santos v. Drug Enforcement Agency*, 357 F.Supp.2d 33, 37 (D.D.C. 2004) (quoting *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C.Cir.1980) (affidavit that fails to "denote which files were searched or by whom" is insufficient); see also *Steinberg v. Department of Justice*, 23 F.3d 548, 552-553 (D.C. Cir. 1994) (finding description of search, such as reference to what "EOUSA" office did, inadequate because it failed "to describe in any detail what records were searched" and "by whom"); *Murray v. BOP*, 741 F.Supp.2d 156, 163 (D.D.C. 2010) ("affidavits or declarations

submitted by the agency…must describe what records were searched, by whom") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 92 (D.D.C. 2009)).

This same deficiency is present in SEC's declarations here. The agency has made a remarkable and sweeping assertion that it has no records whatsoever to provide Plaintiff, outside of a copy of a press release its counsel provided to Plaintiff eleven days after the release was provided to the media. But the agency hasn't bothered to back up the remarkable and unprecedented suggestion that it can respond to a FOIA request by way of a self-serving press release. SEC provides no assurances that this provision of a *post facto* press release with links to records represents the universe of records sought or what type of search it conducted in order to determine that it did or did not possess the actual records Plaintiff requested. It is a dismissive, even farcical response to Plaintiff's request.

The Court should require SEC to submit admissible evidence that explains where – if anywhere – SEC searched for records responsive to the second category of records at issue, why SEC conducted its search in the way that it did, who conducted the searches, and why, other than perfunctory reasons, the agency should be permitted to assert that no additional records exist in the absence of any evidence regarding the search or a declaration from an individual involved in the underlying events regarding the existence or non-existence of records not contained in that press release.

## II. Summary Judgement is Inappropriate Because Defendant's Vaughn Index Provides Only Boilerplate, Repetitive, and Insufficiently Detailed Assertions of Why the Records are Privileged and Covered by Exemption 5 or 6.

Defendant has not met a basic, threshold requirement for a Vaughn Index, ECF No. 16-4, which requires presenting how and why the withheld information is exempt under a claimed privilege.

The SEC asserts that the records it has identified in its press release are responsive "Category 2" records because they met the following description provided in Plaintiff's request: "the report or reports prepared by Berkeley Research Group (BRG), with all supporting documents, interviews, statements etc." ECF No. 16-3, ¶ 5. SEC has the burden of demonstrating its withholding is appropriate for each and every record and portion of a record. Particularly given the certain existence of closed cases affected by the "control deficiency," the SEC's failure to search its closed cases for or provide and records related to one category of plaintiff's request, necessarily fails to meet even the most basic of its statutory obligations under FOIA. By shielding numerous parts of many documents and the entirety of each and every word of other responsive records, SEC surely shields more than truly "deliberative" information relating to agency decisions shared between covered individuals from view. Shielding the entirety of every undisclosed document *in toto*, SEC inherently has hidden factual and nondeliberative material from view. And insofar as SEC admits – and the underlying request necessarily called for – communications between SEC and outside actors at the Berkley Research Group — SEC also must demonstrate how this sort of information can be shielded under Exemption 5 at all. In addition, SEC's redaction of the cost information in the BRG contract is absurd. The public is clearly entitled to know the cost of retaining this friendly vendor to investigate rather than following the provisions of the IG Act.

**A) Exemption 5 does not Apply to the Records at Issue.**

Defendant has withheld almost the entirety of some records, which are referred to herein as "Category 1" records, under Exemption 5, and cites Exemption 5 with respect to each and every withholding which it acknowledges in its Vaughn Index (occasionally alongside another Exemption). The SEC cites the deliberative process privilege and occasionally also the attorney

work product privilege. See Vaughn Index at 1 (ECF No. 19-4); ECF No. 19-1 at 9. The SEC is wrong to do so for at least three fundamental reasons:

*First,* because the SEC has not established that it was engaged in "deliberations" or similar activities relating to final agency decision making or policy, the agency cannot establish that Exemption 5 protects the records in any fashion. *Second*, because the correspondence was necessarily already shared outside the government, the government cannot now refuse to share this same information under FOIA. To the extent that this Court recognizes the so-called "consultant corollary," it does not apply to the records at issue which were generated in an intentional and deliberate scheme to evade the requirements of the Inspector General Act. And the consultant corollary is itself a judicial innovation that directly conflicts with the plain text of FOIA. *Georgia v. United States DOJ*, No. 1:21-cv-03138 (TNM), 2023 U.S. Dist. LEXIS 28341, at *9 (D.D.C. Feb. 20, 2023), citing, inter alia, *Lucaj v. FBI*, 852 F.3d 541, 548-49 (6th Cir. 2017) and *Rojas v. FAA*, 989 F.3d 666, 673-74 (9th Cir. 2021) (en banc), 989 F.3d at 683-90 (Wardlaw, J., concurring in part and dissenting in part) (dissenting from decision to recognize consultant corollary). *Third*, to the extent that Exemption 5, Exemption 6, or any other doctrine or privilege ever applied to the requested records, any claim has been waived by sharing the information at issue with favored parties while simultaneously attempting to hide it from Plaintiff.

**i) The SEC Has Not Established that the Deliberative Process Privilege Applies.**

The SEC cannot establish that Exemption 5 applies to the records at issue in this case at all, regardless of whether it attempts to do so by relying on the "deliberative process" prong of that Exemption or the "attorney work product" prong.

"Recommendations from subordinates to superiors lie at the core of the deliberative-process privilege," *Amadis v. United States Dep't of State*, 971 F.3d 364, 370 (2020), but the SEC

has not bothered to explain who was making recommendations to whom in this case, much less whether the "recommenders" were inside or outside the agency or what the relevant final agency decision was. See *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 512-13 (2010) (for the proposition that at an independent agency, the Commissioners are collectively the agency "head" to whom recommendations are made). A record is not "deliberative," and thus is not covered by deliberative process privilege, unless "it 'reflects the give-and-take of the consultative process." *CREW v. DOJ*, 45 F.4th 963, 972 (D.C. Cir. 2022) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)).

Mere reporting of forensic irregularities or even discussion regarding the consequences of such irregularities does not reflect any such "give-and-take." Internal discussions are not privileged at all if they are "peripheral to actual policy formulation," *Ethyl Corp*., 25 F.3d at 1248, or if they apply existing policy to newly arising facts. Even internal evaluations of agency policy that are far more connected to policy formulation than a mere topic such as a "control deficiency" can be beyond the reach of the deliberative-process privilege, no matter how chilling their disclosure might be. See *Vaughn v. Rosen*, 523 F.2d 1136, 1143 (D.C. Cir. 1975) (finding an agency's efforts to evaluate and change its personnel policies, rules and standards too amorphous to qualify as a process for the purposes of the deliberative process privilege).

Moreover, some policy decisions are just too trivial to be the "stuff" of deliberative process privilege. See *Hennessey v. US AID*, No. 97-1113, 1997 WL 537998, at *6 (4th Cir. Sept. 2, 1997) (agency contract dispute was not the "stuff" of deliberative process privilege). Defendant's explanation of its withholdings gives no hint as to what specific policy decisions – as opposed to generalized topics — the redacted information might relate to, and whether they have any real significance. It is not enough that a redaction relates to a proposed policy without

being more specific. As the D.C. Circuit explained in *CREW v. DOJ*, 45 F.4th 963, 972 (D.C. Cir. 2022), "Assessing whether a record is pre-decisional or deliberative necessarily requires identifying the decision (and the associated decisional process) to which the record pertains. An agency invoking the deliberative-process privilege thus must 'establish what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" Thus, Defendant's Exemption 5 claims are too conclusory, even assuming a topic or date can be redacted because it is related to a policy decision. To be sure, the deliberative-process privilege may apply even when the agency never reaches a final decision, or the decision making may still be ongoing. That could happen, for instance, if an idea "dies on the vine" or meets a "dead-end." *Sierra Club*, 141 S. Ct. at 786. But to carry its burden in such a situation, the agency still must tie the withheld records to a decision-making process, even if that process did not ultimately result in a decision or is still ongoing. *CREW v. DOJ*, 45 F.4th 963, 972 (D.C. Cir. 2022).

But Defendant, while alleging based on inadmissible hearsay or on a basis that is entirely unclear from the cursory declarations of its "Branch Chief" FOIA Officer and its own in-house Counsel, that some of the redacted or withheld information relates to the agency's response to a "control deficiency," does meet this standard. The proferred declaration is insufficiently detailed to meet the agency's burden. Its description of the redacted meeting topics is vaguer than the descriptions courts have found too vague, such as saying that withheld information relates to "high tech policy issues," *ICM Registry, LLC v. U.S. Dept. of Commerce*, No. 06-cv-0949 (JR), 2007 WL 1020748, *6 (D.D.C. March 29, 2007), "wilderness issues," *Wilderness Society v. Dep. of Interior*, 344 F.Supp.2d 1, 12 (D.D.C. 2004), "environmental testing and safety measures," *Judicial Watch*, 297 F.Supp.2d at 264, or "HLCG information sharing principles." *Electronic Frontier Foundation v. U.S. Dept. of Justice*, 826 F.Supp.2d 157, 168-70 (D.D.C. 2011).

Describing records as being related to an unspecified policy proposal is insufficient, because it contains essentially no information. See *FPL Group v. IRS*, 698 F.Supp.2d 66, 90 (D.D.C. 2010).

The agency's arguments relating to the work product privilege are even more cursory and fare no better under close scrutiny.

This Court explained in *Judicial Watch, Inc. v. United States DOJ*, 391 F. Supp. 3d 43, 50 (D.D.C. 2019) that "[t]he attorney work-product doctrine was explained in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), as intended to protect lawyers and their agents who are assembling facts and law in anticipation of litigation." In *Judicial Watch*, the Court traced the history of the work produce from *Hickman* to the present and held that "[t]oday, the attorney work-product doctrine protects documents that were prepared in anticipation of litigation by an attorney or an attorney's agent." Id., citing *United States v. Deloitte LLP,* 610 F.3d 129, 135, 391 U.S. App. D.C. 318 (D.C. Cir. 2010) and Fed. R. Civ. P. 26(b)(3)).

In evaluating whether material was prepared in anticipation of litigation, the D.C. Circuit has adopted a "because of" test. *Equal Emp't Opportunity Comm'n v. Lutheran Soc. Servs*., 186 F.3d 959, 968, 337 U.S. App. D.C. 373 (D.C. Cir. 1999). "This inquiry encompasses two related but distinct concepts—one a question of timing and the other a question of intent." *Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin*., 370 F. Supp. 3d 116, 135 (D.D.C. 2019) (citing *U.S. ex rel. Fago v. M & T Mortg. Corp*., 242 F.R.D. 16, 18 (D.D.C. 2007)). The threshold temporal inquiry considers "whether there was 'a subjective belief that litigation was a real possibility' at the time the document was prepared and whether that belief was 'objectively reasonable.'" *Id.* (quoting *Lutheran Soc. Servs*., 186 F.3d at 968).

Only once it is established that litigation was reasonably anticipated, the second element of the "because of" test—the motivational element"—"demands that the document be prepared

or obtained because of the prospect of litigation." *Animal Welfare*, 370 F. Supp. 3d at 135 (citing *Lutheran Soc. Servs*., 186 F.3d at 968). "[T]he question is whether [the document] records information prepared by [the attorneys] or [their] representatives because of the prospect of litigation." Deloitte, 610 F.3d at 137.

In this case, the SEC cannot possibly meet the second prong of this two-part test for establishing work product protection, and has not attempted to do so in its declarations. SEC asserts that it conducted an internal review of the control deficiency, in which outside contractors were brought in to conduct forensic analyses of which staff inappropriately accessed the files of its administrative law judges. Does SEC seriously assert that it would not have conducted a review of its own impropriety but for the fear of being sued? But for the prospect of litigation, would the SEC have refused to cooperate with the requirements of the Inspector General Act, the demands of Congress, and common principles of management? Any confession that SEC initiated an investigation only because it feared litigation – under a "but for" standard of causation – assumes the very worst about government agencies and their inclination to carry on without properly accounting for or correcting malfeasance. While Plaintiff can occasionally be accused of such thinking, exactly the opposite presumption applies as a matter of law. *Palantir USG, Inc. v. United States*, 904 F.3d 980, 995 (Fed. Cir. 2018) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001) (for the proposition that agencies are entitled to a presumption of regularity.)

**ii) The "Consultant Corollary" is atextual and, even if it exists, it does not protect the documents at issue in this case from disclosure.**

The so-called "consultant corollary" is found nowhere in the text of the Freedom of Information Act, and conflicts with the plain text of the statute. This Court should therefore decline to recognize this purported "corollary" to Exemption 5 at all. However, if the Court

nevertheless accepts the applicability, in general, of precedents which acknowledge the so-called "consultant corollary" it should strictly construe such precedents rather than further expand Exemption 5 here to allow SEC to utilize the consulting process, i.e., bring on private contractors in a fashion that evades the ordinary requirements of the Inspector General Act then shield those records from scrutiny.[12]

"Exemption 5 of FOIA… exempts from this requirement "inter-agency or intra-agency memorandums or letters" which would not be available by law to a party other than an agency in litigation with the agency. *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 4, 121 S. Ct. 1060, 1063 (2001), citing 5 USCS 552(b)(5). "Although neither the terms of the exemption nor the statutory definitions say anything about communications with outsiders, some Courts of Appeals have held that in some circumstances a document prepared outside the Government may nevertheless qualify as an 'intra-agency' memorandum under Exemption 5." *Klamath*, 532 U.S. at 9, 121 S. Ct. at 1066. Even in 2001, prior to the rise of textualism as an interpretive imperative,[13] the Supreme Court only "assumed, without deciding" that the consultant corollary was a possible interpretation of FOIA. *Id.*, 532 U.S. at 4, 121 S. Ct. at 1063. At least one judge of this Court recently recounted the history of judicial innovation in this arena, noted that Exemption 5 does "not say anything about communications with outsiders," and refused to expand the doctrine even further. *Georgia v. United States DOJ*, No. 1:21-cv-03138 (TNM),

[12] It appears that the business of contracting for SEC is quite lucrative. According to the Federal Procurement Data System (last visited Aug. 2, 2023), https://www.fpds.gov/ezsearch/search.do?q=Berkeley+Research+Group+DEPARTMENT_FULL_NAME%3A%22SECURITIES+AND+EXCHANGE+COMMISSION%22&s=FPDS.GOV&templateName=1.5.3&indexName=awardfull, there have been numerous contracts awarded to SEC's preferred internal investigative teams.

[13] The Supreme Court as recently as 2022 declared that it will not "stray[] from its commitment to textualism." *West Virginia v. EPA*, 142 S. Ct. 2587, 2625 (2022).

2023 U.S. Dist. LEXIS 28341, at *10 (D.D.C. Feb. 20, 2023). The Georgia case ecxpressly cautioned Exemption 5 "is not [meant] to protect Government secrecy pure and simple." *Id*.

This Court should reject outright application of the so-called "consultant corollary" to these facts and order that any and all documents shared with outside actors at the Berkley Research Group, General Dynamics, or any other outside contractor or entity identified in the SEC's Vaughn Index are to be immediately released to Plaintiff. Even if this Court accepts application of the consultant corollary here as a general principle, however, it must nevertheless reject the SEC's expansive and even farcical use of the corollary in this case.

In *Klamath*, the Supreme Court noted the lower courts that invented the consultant corollary had assumed that "the consultant functions just as an employee [of the agency] would be expected to do," 532 U.S. at 11. The lower courts which invented and applied this atextual doctrine, which is hostile to the text of the FOIA, assumed that so-called consultants do not properly represent "an interest of [their] own" nor "the interest of any other client when it advises the agency that hires [them]." *Id*. at 10-11.

In this case, the SEC asserts that, "the SEC retained BRG to support its internal review relating to the control deficiency." SEC further says that "During the internal review, BRG contractors compiled forensic data and engaged in discussion with SEC staff as part of SEC staff's review of certain databases to assess the scope and potential impact of the SEC's control deficiency." Tallarico Declaration, ECF No. 16-3, ¶ 1. A similar arrangement was apparently entered into by SEC with General Dynamics. *Id*., ¶12.

The chief problem with applying the consultant corollary to the documents at issue here, as SEC asserts this Court should do, is that the two "consultants" did not behave "just as an employee of the agency." The agency has clear statutory obligations to engage with its Inspector

General when its own malfeasance is uncovered and to cooperate with the Inspector General's Investigation. See, e.g., 5 U.S.C. § 401. Instead of complying with a statute that provides for an independent and impartial investigation with public reporting, the agency elected to evade the statutory scheme by paying outside "contractors" to conduct what it calls an "internal review." The agency and its employees were obligated to call in the Inspector General and cooperatei with his or her investigation. The Berkley Research Group and General Dynamicsare not proper substitutes, and therefore the consultant corollary cannot credibly be argued to apply, if in fact such a corollary is recognized in law in any manner at all.

**iii) Any Exemption or Privilege that Arguably Attached has been Waived.**

Assuming, *arguendo*, that Exemption 5 ever applied to the records at issue in this case, SEC voluntarily waived the protection of Exemption 5 by sharing the underlying documents with its favored vendors and issuing press releases linking to selected records, which necessarily call for a fuller explanation.

Deliberative process privilege is waived if an agency shares communications with private citizens or non-federal employees. See *Department of Interior v. Klamath Water Users Protective Assn*., 532 U.S. 1, 9 (2001) (tribe's communications with agency were not covered by Exemption 5, even where agency labeled tribe as consultant and cited need for confidentiality; "'the communication must be "inter-agency or intra-agency.' 5 U. S. C. § 552(b)(5)," not "communications with outsiders"). To show communications are "intra-agency" or "inter-agency" for purposes of FOIA, and thus potentially privileged under Exemption 5, an agency must list the "names and affiliations of all senders and recipients," even "for documents that" are described by the agency as "purely internal." *People for the American Way Foundation v. U.S. Department of Educ*., 516 F.Supp.2d 28, 30, 41-42 (D.D.C. 2007) (ordering agency to "submit a

new Vaughn index" including "the names and affiliations of all senders and recipients"; even "for documents that are purely internal to [the agency] the Vaughn index shall include the names and affiliations of all senders and recipients for each communication in addition to an explanation of why each document is predecisional and deliberative.").

Defendant's conclusory description of the communications as "internal" or as part of an "internal review" is not controlling. Agencies sometimes characterize communications with consultants and others as internal to the executive branch, even though courts deem such communications not "intra-agency" and thus not covered by exemption 5. See, e.g., *CEI v. OSTP*, 161 F.Supp.2d 120, 128, 134-35 (D.D.C. 2016) (agency claimed drafts "remained internal to the Executive Branch," but the court concluded that the consultant they were exchanged with was outside the Executive Branch for purposes of Exemption 5, waiving any deliberative process privilege claim; consultant was not "enough like the agency's own personnel to justify calling [her] communications `intra-agency,'" and so the draft pages were "not covered by the deliberative process privilege and cannot be withheld under Exemption 5.").

The work product privilege is similarly waivable, and waiver is the ordinary presumption when a party takes actions such as the SEC has taken in this case, by releasing certain records to the public by way of a press release while hiding other, less flattering or narrative-supporting records from release under FOIA. The doctrine of implied waiver "aim[s] to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information." *Carr v. C.R. Bard, Inc*., 297 F.R.D. 328, 335 (N.D. Ohio 2014), citing *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987). SEC's actions here are exactly that: "distortion of the judicial process."

In July of 2022, when the House Oversight Committee summoned SEC Chair Gary

Gensler, he instead sent Enforcement Director Grewal, who gave provably incorrect answers to Congress, declared ignorance on others and stonewalled. Now, SEC has dismissed dozens of cases following Supreme Court and Circuit Court holdings that cast grave doubt on the constitutionality of its administrative enforcement proceedings, both generally in terms of how ALJs were appointed and protected from removal and as applied in terms of the SEC's file-sharing between its quasi-judicial and quasi-prosecutorial arms. After dismissing these cases, the SEC ran to the press, declared that it had conducted a full "internal review," and the BRG report is all there is to know. Over a week after releasing this information to the media, the SEC also sent the press release to undersigned counsel for the Plaintiff as purported FOIA compliance. But the SEC simultaneously seeks to hide the underlying documents from the public, claiming that disclosure would be both harmful and violative of various privileges. By doing so, the SEC abuses the doctrine and distorts the judicial process that would ordinarily play out but for the SEC's machinations as herein described.

Having stonewalled Congress, precluded discovery by Cochran (and 41 others) after they won the right to challenge their adjudications in district court by dismissing those administrative proceedings, production of these public records under FOIA is both necessary and required by law. The SEC cannot selectively disclose information not only to its own contractors, but also to Congress, to its legal adversaries, and to the press, while claiming that disclosure under FOIA is somehow a bridge too far.

**B) Exemption 6 Does not Apply to These Records.**

Defendant has improperly withheld the names of government employees and "consultants" or "contractors" who helped the government evade transparency and the requirements of the Inspector General Act. The Tallarico Declaration explains that "Pursuant to

FOIA Exemption 6, the SEC withheld certain names, email addresses, and telephone numbers of SEC staff and SEC contractors. The SEC also withheld the names of SEC staff who were involved in the internal review, either as individuals who had access to the databases at issue in the control deficiency or as individuals being interviewed by the internal review team." ECF No. 16-3, ¶ 17.

Agencies don't usually withhold the names of staff — as opposed to private citizens — under Exemption 6. Exemption 6 case law generally requires agency employees' names to be released, even when that would not shed light on policymaking. See, e.g., *International Federation of Professional and Technical Engineers v. Superior Court*, 64 Cal.Rptr.3d 693 (Cal. 2007) (state government employees had no privacy right in their names or salaries, which had to be produced in response to public-records request); *National W. Life Ins. v. United States*, 512 F. Supp. 454, 461 (N.D. Tex. 1980) (no expectation of privacy in names and duty stations of Postal Service employees); *American Oversight v. HHS*, 2022 WL 1719001 (D.D.C. May 27, 2022), Slip Op. at 64 ("The Court concludes that Defendants are required to disclose the names of attendees and locations of meetings."). Defendant does not explain why the usual rule in favor of disclosure does not apply here. The agency also attempts to "have its cake and eat it too" by claiming that outside contractors are "private individuals" with respect to Exemption 6 but are somehow the functional equivalent of agency employees for purposes of the consultant corollary to Exemption 5.

Even private citizens' names should not be withheld when, as here, they are so influential they are conducting an "internal review" of SEC malfeasance and are apparently influencing the government's policy with respect to its own violations of due process in at least dozens of high-profile cases. It is blackletter law that the names of people lobbying government officials cannot

be withheld under Exemption 6. *EFF v. Office of the Director of National Intelligence*, 639 F.3d 876, 887-88 (9th Cir. 2010) ("public interest in obtaining information about the effects of lobbying on government decision making" outweighed "the privacy concerns of telecommunications industry lobbyists"). If releasing their names might help shed light on who is influencing agency policy – as is obviously true here -- then disclosure is warranted. See *People for the Am. Way Found v. National Park Service*, 503 F.Supp.2d 284, 306 (D.D.C. 2007) (even private citizens' names had to be released when they sought policy changes). Who these contractors and SEC's employees chose to lend an ear to is also of public interest. See, e.g., *Lardner v. DOJ*, No. 03--0180, 2005 WL 758267, at *17 (D.D.C. March 31, 2005) (ordering release of the names of unsuccessful pardon applicants, which would assist the public in analyzing the "circumstances in which the executive chooses to grant or deny a pardon and the factors that bear on that decision"); *Lardner v. DOJ*, 398 Fed. Appx. 609, 610 (D.C. Cir. 2010) (*per curiam*) (holding that public interest in names of unsuccessful clemency applicants outweighed applicants' privacy interests).

Disclosure of names is so mundane and unlikely to cause harm, as the 2016 FOIA Amendments require, that disclosing the "names" of the parties to a communication (including all staffers) is required for a Vaughn Index, *Coastal Corp. v. Dept. of Energy*, 496 F.Supp. 57, 59 (D. Del. 1980), and for establishing that privilege claims, including those claimed to be wholly internal to the government. See *People for the American Way Foundation v. U.S. Department of Education*, 516 F.Supp.2d 28, 30, 41-42 (D.D.C. 2007).

Defendant is also wrong to withhold staff and contractor email addresses. Purely private citizens' email addresses can generally be withheld (unless that is the only clue as to their identity), but see *Prechtel v. FCC*, 330 F.Supp.3d 320, 329-34 (D.D.C. 2018) (ordering citizens'

email addresses released where it was alleged that spam comments had been submitted by fake commenters), but government employees' email addresses usually can't be withheld, because they have no privacy interest in concealing their taxpayer-provided email address. See *Kleinert v. BLM*, 132 F.Supp.3d 79 (D.D.C. 2015) (finding that defendant did not meet its burden to support use of Exemption 6 to withhold email addresses). Defendant has not explained why that precept does not apply here, especially insofar as SEC wants to simultaneously claim that these particular contractors are the functional equivalent of government employees.

Defendant is also wrong to withhold staff and contractors' phone numbers from the records on its Vaughn Index. There is no privacy interest in such phone numbers that would justify withholding them. See *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) ("no privacy interest" in telephone numbers used for work); *Brown v. FBI*, 873 F.Supp.2d 388, 402 (D.D.C. 2012) ("Work telephone numbers are different from personal information that would be protected"). Thus, the redacted staff and contractor phone numbers should all be produced.

**C) The SEC's Vaughn Index is Riddled with Deficiencies.**

Further, the *Vaughn* Index entries do not in fact describe why the withholdings are exempt, failing to satisfy a key requirement for a *Vaughn* Index. The standard requires "a detailed description…of the entire content of each withheld agency record or deletion from a released agency record" as well as "detailed justification statements giving particularized and specific justifications for each claim of exemption …[which] shall: …(d) contain specific factual or evidentiary material to support each element of a claimed exemption [and]… the specific injury to [the agency] which release would allegedly create; and (h) why the public interest does not favor disclosure." See, e.g., *Coastal Corp. v. Dept. of Energy*, 496 F.Supp. 57, 59 (D. Del. 1980).

The index submitted by Defendant is anything but "detailed" and makes only conclusory assertions as its explanation for the claimed exemptions. In each entry, SEC merely states that the communications meet the standard rather than describing how they do so.

The SEC's broad and repetitive reasons for withholding, through redactions and with numerous documents withheld in full, and without giving enough detail about the content to understand meaningfully why the documents were withheld, are facially inadequate. Without knowing which kind of information is in a redaction, the Court is hampered in assessing the validity of the claim, and the plaintiff is prevented from highlighting the weakness of even the weakest such claims. See *Campaign for Responsible Transplantation v. FDA*, 219 F. Supp. 2d 106, 116 (D.D.C. 2002) ("Without a proper *Vaughn* index, a requester cannot argue effectively for disclosure and this court cannot rule effectively.").

Moreover, neither declaration establishes that the withheld content is deliberative. The Tallarico Declaration states only the general topics of purported deliberations. The *Vaughn* Index ought to describe in more detail the pre-decisional deliberations to which this language relates, but barely makes an effort to do so in any way other than plugging in the name or reference to a rule to which the boilerplate refers. The declarant does not explain how the documents meet the standard, nor does he offer any factual basis for the assertions in the Vaughn log. Again: SEC's mere assertions of the applicability of an exemption do not suffice.

The agency's Vaughn must contain far more information than it does if SEC hopes to carry its burden to establish any of its claimed exemptions. "An agency invoking the deliberative-process privilege…must 'establish what deliberative process is involved, and the role played by the documents in issue in the course of that process.'…The agency… 'bears the burden of establishing the character of the decision, the deliberative process involved, and the role played by

the documents in the course of that process.'" *CREW v. DOJ*, 45 F.4th 963, 972 (D.C. Cir. 2022) (citations omitted). SEC's short *Vaughn* descriptions do not come close to meeting this burden. Indeed, SEC seems to substitute an *assertion of deliberation* for requisite facts that would establish deliberation. The character of the decisions in question is not mentioned in any of the *Vaughn* entries. Neither do any of them describe the deliberative process or the role of the documents in question, other than to use generalities or topics. ECF 16-3. These generalities could apply to nearly any document prior in time to proposed legislation or lit8igation. The extent to which the documents are actually reflective of a deliberative process is impossible for the court to assess without additional, non-generic, detail.

The bare assertion in the Tallarico Declaration at ¶ 18 and ¶ 20 that release of the messages at issue (see, *infra*) would somehow cause harm does not contain sufficient detail to show they are privileged. Not all agency decisions are covered by the deliberative process privilege. *See, e.g., Elkem Metals Co. v. U.S.*, 126 F.Supp.2d 567, 576-77 (C.I.T. 2000) (privilege did not protect "a draft of the ITC's issuance of a schedule for the conduct of its changed circumstances reviews," or agency's "draft of a proposed work schedule" or "another proposed work schedule"; items were "not protected by the deliberative process privilege," especially since "disclosure" of "scheduling information" would not "discourage candid discussions within the agency" and such information did not "reflect the give-and-take" of the agency's "decision-making process"); *Hennessey v. U.S. Agency For Intern. Development,* 121 F.3d 698, 1997 WL 537998, *5 (4th Cir. Sept. 2, 1997) (even "construction scheduling dispute" that gave rise to legal claim against agency was not shielded by deliberative-process privilege because it did "not bear on a policy-oriented judgment of the kind contemplated by Exemption 5"; even if a "decision" regarding such a matter "can be regarded as a 'policy,'" it is not the "'stuff' of the deliberative process privilege" if it is at the "very outer

limits" of what is a policy). Without a sufficiently detailed *Vaughn* index, it is impossible for Plaintiff to know if the cited exemptions apply, or are as they appear on their face to be, merely recitations of the standard.

Defendant's *Vaughn* Index entries are far less detailed than the descriptions courts have found too lacking in detail to support a deliberative-process privilege claim, for example saying that withheld information relates to "high tech policy issues," *ICM Registry, LLC v. U.S. Dept. of Commerce*, No. 06-cv-0949 (JR), 2007 WL 1020748, *6 (D.D.C. March 29, 2007), "wilderness issues," *Wilderness Society v. Dep. of Interior*, 344 F.Supp.2d 1, 12 (D.D.C. 2004), "environmental testing and safety measures," *Judicial Watch,* 297 F.Supp.2d at 264, or "HLCG information sharing principles." *Electronic Frontier Foundation v. U.S. Dept. of Justice*, 826 F.Supp.2d 157, 168-70 (D.D.C. 2011). Similarly, SEC's *Vaughn* index simply claims the covered documents are related to "ESG" or "climate-related rulemaking."

Just because withheld documents are related to the "control deficiency" is insufficient to establish that they are deliberative in nature. "We reemphasize the narrow scope of Exemption 5 and the strong policy of the FOIA that the public is entitled to know what its government is doing and why. The exemption is to be applied "as narrowly as consistent with efficient Government operation." *Coastal States Gas Corp. v. Dep't of Energy*, 199 U.S. App. D.C. 272, 617 F.2d 854, 868 (1980). (internal citations omitted).

## III. Defendant Does Not Show the Harm Needed to Withhold or Redact the Responsive Records it Does Acknowledge.

Assuming, *arguendo*, that SEC had met the burden to establish that Exemption 5 or 6 applied at all, SEC nevertheless does not "concretely explain how" and "why actual harm would foreseeably result from release," which is an independent requirement under the 2016 FOIA Amendments before material otherwise privileged under Exemptions 5 and 6 can be withheld.

*Reporters Committee v. FBI*, 3 F.4th 350, 369-71 (D.C. Cir. 2021), citing 5 U.S.C. § 552(a)(8)(A)(i)(I). SEC instead makes general statements, none of which adequately describe the harm that would result from release, and so all of which fail to meet SEC's burden.

"Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld. Agencies cannot rely on "mere 'speculative or abstract fears,' or fear of embarrassment" to withhold information. Nor may the government meet its burden with "generalized assertions[.]" *Reporters Comm. for Freedom of the Press v. FBI*, 453 U.S. App. D.C. 50, 69, 3 F.4th 350, 369 (2021) (internal citations omitted).

The *Vaughn* Index does not allege that release of the identified record(s) would reasonably foreseeably cause harm or have any chilling effect on agency deliberations or how or why. *See* ECF No. 16-3.

Similarly, the declarations do not adequately establish the potential for harm. The Tallarico Declaration, ECF No. 16-3, contains only three mentions of the word "harm" (once at ¶ 18 and twice in ¶ 20) and zero references to how the agency balanced any privacy interests against any public interest before or during its "foreseeable harm" analysis. The Katilius Declaration adds no substance and fails to even cursorily examine the topic of foreseeable harm or personal privacy interests.

With no reasonably articulated or plausible ill effect, it is hard to fathom how release of the withheld information in the correspondence here, which SEC has already publicly acknowledged reflects a glaring internal deficiency in SEC's administrative adjudication process. No explanation of how disclosure would or could cause further harm here is attempted, much less

provided. Indeed disclosure can only benefit both the agency and the public by providing assurances that identified and public deficiencies have already been or are being corrected. Defendant never addresses this beyond general, boilerplate conclusory statements. Embarrassment is not an exemption to FOIA, and the fact of embarrassing facts having been revealed, seriously impacting numerous prosecuted parties' rights, only enhances the imperative for public release.

How would the release of such information relating to a topic that has already been publicly acknowledged and ostensibly corrected cause public confusion or interfere with SEC's duties, including its duty of candor to the courts and its duties of disclosure to those it prosecutes? The declarants do not explain how, and simply assert that it will as if such a truth were somehow self-evident. Plaintiff cannot speculate as to SEC's fears or its basis, and this Court should similarly refrain and hold SEC to its burden of proof.

The D.C. Circuit in *Reporters Committee* found "wholly generalized and conclusory" an agency exemption claim that disclosure of whether a now-proposed rule was going to include or address a particular matter "would chill full and frank discussions between agency personnel and decision makers regarding a decision." *Reporters Committee v. FBI*, 3 F.4th at 370. It found insufficiently detailed the statement that:

> Disclosure … would have an inhibiting effect upon agency decisionmaking and the development of policy because it would chill full and frank discussions between agency personnel and decision makers regarding a decision. If agency personnel know that their preliminary impressions, opinions, evaluations, or comments would be released to the general public, they would be less candid and more circumspect in expressing their thoughts, which would impede the fulsome discussion of issues necessary to reach a well-reasoned decision.

Defendant's explanation for why release of the redacted material would allegedly chill the staff's ability to do their work is also far shorter, less detailed, and less unequivocal than the explanation found both "vague" and "insufficiently specific" in *Project on Government Oversight*

*v. DHS*, Case No. l:18-CV-2051-RCL (Feb. 20, 2023), Memorandum Opinion, at pp. 16-17, https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2018cv2051-62, even though the defendant in that case explained in more detail than the case at bar that disclosure would "severely undermine" its "ability" to "investigate" violations of civil rights and civil liberties.

In that case, the agency stated, in far more detail (at pg. 17) that:

> Court-ordered disclosure of the information would severely undermine the Department's ability to efficiently and effectively investigate allegations of civil rights or civil liberties violations, and for its investigators and decision-makers at various points of the decisional process outlined above to offer uninhibited opinions and recommendations on the matters at issue. Without the continued assurance of confidentiality, CRCL's expert consultants would not provide the Department with the meaningful information it needs to properly investigate civil rights complaints. Maintaining the confidentiality of these types of predecisional and deliberative communications is critical for the Department to carry out its mission…
>
> Disclosure of this information would chill the free and frank exchange of ideas and recommendations at DHS, including between CRCL's expert and CRCL, and between CRCL and the affected DHS component agencies that have been the subject of complaints that require investigation. Release of the information would severely undermine the Agency's ability to efficiently and effectively investigate allegations of civil rights or civil liberties violations, and for its investigators and decision-makers at various points of the decisional process ... to offer uninhibited opinions and recommendations on the matters at issue.

Defendant's assertion of foreseeable harm is also far less detailed and specific than that found "insufficiently specific" in *Project on Government Oversight v. DHS*, Case No. l:18-CV-2051-RCL (Feb. 20, 2023), Memorandum Opinion, at pg. 18, https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2018cv2051-62, where the agency said:

> Moreover, release could cause unnecessary public confusion .... [T]he Reports contain the experts' preliminary findings and recommendations. The Reports contain the experts' unverified observations of first impression. For any number of reasons, the Department may not necessarily agree with, or adopt the experts' findings or recommendations. In the Department's view, release of the experts' preliminary findings and recommendations poses a substantial risk of confusing the public as to any eventual final actions of the Department concerning the complaints in question, or the reasons for them.

Defendant's submissions fall far short of all of these examples, none of which were deemed sufficient by courts to support a claim of harm justifying non-disclosure.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment should be denied.

Respectfully submitted this the 2nd day of August, 2023,

*/s/ Matthew D. Hardin*______
Matthew D. Hardin, D.C. Bar # 1032711
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
(202) 802-1948
MatthewDHardin@gmail.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES & EXCHANGE COMMISSION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:22-cv-3567-CJN |

**PLAINTIFF'S RESPONSE**
**TO DEFENDANT'S**
**STATEMENT OF UNDISPUTED FACTS**

NOW COMES the Plaintiff, the New Civil Liberties Alliance, and submits the following Response to Defendant's Statement of Undisputed Material Facts.

**Plaintiff's Response to Defendant's Statement of Undisputed Facts**

| ¶ | **Movant's Statement** | **Plaintiff's Response to Movant's Statement** |
|---|---|---|
| 1. | 1. On July 12, 2022, Plaintiff submitted a FOIA request to the SEC seeking "[c]opies of certain records and documents of the Commission related to its April 5, 2022 statement regarding an identified 'control deficiency' within the Commission's system for administrative adjudications." Katilius Decl. ¶3; *see also* ECF No. 7 at ¶8. Plaintiff's FOIA request specified that it was seeking documents "regarding the following occurrences":<br><br>1. The Commission's discovery of the deficiencies that allowed enforcement personnel to access the administrative adjudications system and documents of the Commission's Administrative Law Judges ('ALJs') and their staff. | Admitted. |

| | | |
|---|---|---|
| | 2. All instances in which enforcement personnel accessed, or could have accessed, documents stored in the administrative adjudications system, including a list and/or names of all cases in which enforcement personnel accessed or could have accessed said system as well as the documents in every such case improperly accessed by enforcement personnel.<br><br>3. The Commission's determinations regarding the remedial measures that should be taken to address deficiencies that allowed enforcement personnel to access the administrative adjudications system.<br><br>4. The Commission's determination that 'access to the Adjudication memoranda would not have affected any Enforcement filings' in the following cases: a. *David S. Hall, P.C. d/b/a The Hall Group CPAs, David S. Hall, CPA, Michelle L. Helterbran Cochran, CPA, and Susan A. Cisneros*, Admin. Proc. 3-17228; *SEC v. Cochran*, No. 21- 1239 (S. Ct.); and b. *John Thomas Capital Mgmt. Grp. LLC d/b/a Patriot28 LLC, and George R. Jarkesy Jr.*, Admin. Proc. 3-15255; *Jarkesy v. SEC*, No. 20-61007 (5th Cir. May 18, 2022).<br><br>5. The Commission's findings regarding the effects of the control deficiency on all other cases in which the Commission identified that enforcement personnel accessed, or could have accessed, the administrative adjudications system.<br><br>6. The decision of the Commission and its Office of the General Counsel to hire Berkley Research Group, LLC ('BRG'), a private consulting firm, to support the Commission's internal review of the control deficiency and the contract bid request, if any | |

| | | |
|---|---|---|
| | 7. Any reports, memoranda, or communications produced by BRG related to their review of the control deficiency<br><br>8. Copies of all contracts, including bid requests and scope of works, with BRG for the relevant time period.<br><br>9. The involvement of the Commission's Office of Inspector General ('OIG') in the Commission's discovery and remedy of the control deficiency and the OIG's subsequent findings, if any.<br><br>10. The Commission's determination to issue the April 5, 2022, statement, the pending report referenced therein, and any future actions the Commission plans to take regarding control deficiencies between the Adjudicatory and Enforcement Divisions.<br><br>Katilius Decl. ¶4. | |
| 2. | On November 23, 2022, Plaintiff filed the complaint in this lawsuit concerning its FOIA request. *See* ECF No. 1 at ¶8; *see also* ECF No. 6 at ¶8. | Admitted. |
| 3. | On December 23, 2022, the SEC filed an answer to Plaintiff's complaint. *See* ECF No. 6. | Admitted. |
| 4. | On January 11, 2023, Plaintiff filed an amended complaint. *See* ECF No. 7. | Admitted. |
| 5. | On January 18, 2023, the FOIA Office issued an interim partial response to Plaintiff's FOIA request and released to Plaintiff 33 pages of records. Katilius Decl. ¶5. The FOIA Office redacted the records in part under FOIA Exemptions 4 and 6, 5 U.S.C. § 552(b)(4) and (6). *Id*. In its response, the FOIA Office explained that it would address sub-part 10 of the FOIA request in three parts. *Id*. The FOIA Office further explained that its interim partial response addressed Plaintiff's FOIA request sub-parts 2, 5, 8, 9, 10(b), and 10(c). *Id*. | *Admitted* that the SEC's FOIA Office responded and that this statement accurately reflects the terminology of the SEC's response. To the extent that the cited language is inconsistent with the ecited Declaration, or pertains to conclusions of law which are solely within the province of the Court, including the applicability of various FOIA exemptions, Plaintiff *objects* |

| | | |
|---|---|---|
| | | *to* this statement pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). |
| 6. | On January 25, 2023, the SEC filed an answer to Plaintiff's amended complaint. *See* ECF No. 9. | Admitted. |
| 7. | On March 22, 2023, the FOIA Office sent a letter to the FOIA requester informing it that, among other things, the SEC had identified approximately 3,700 records, consisting of approximately 51,700 pages, that may be responsive to the remaining seven sub-parts of the FOIA request (items 1, 3, 4(a) and (b), 6, 7, and 10(a)). Katilius Decl. ¶6. The letter also stated that, because the records potentially responsive to this request are voluminous, the FOIA Office would process them in the FOIA Office's Complex track. *Id*. The letter asked that, if Plaintiff was still interested in having the remaining sub-parts of the request processed, Plaintiff should contact the FOIA Office and identify the records that should be placed in the Complex track. *Id*. | *Admitted* that the SEC's FOIA Office resent a letter and that this statement accurately reflects the terminology of the SEC's response. To the extent that the cited language is inconsistent with the declaration itself, or pertains to conclusions of law which are solely within the province of the Court, including but not limited to the proper processing "track" for the request at issue, Plaintiff *objects to* this statement pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). Plaintiff further alleges that the SEC's estimate that it would take approximately three years to respond to the Plaintiff's request absent the narrowing that Plaintiff reluctantly agreed to at ECF No. 15, was unreasonable and improper. See also Hardin Declaration, Exhibit B. |
| 8. | In March, April, and May 2023, the SEC's counsel and Plaintiff's counsel discussed ways of narrowing the remaining seven sub-parts of Plaintiff's FOIA request (items 1, 3, 4(a) and (b), 6, 7, and 10(a)). Tallarico Decl. ¶5. The parties ultimately agreed that the SEC would process two categories of records instead of those seven sub-parts: (1) the report or reports prepared by Berkeley | Admitted. |

| | | |
|---|---|---|
| | Research Group (BRG), with all supporting documents, interviews, statements etc. ("First Category"), and (2) the first page of the Order Instituting Proceedings (a public document) of every administrative proceeding in which the "control deficiency" occurred ("Second Category"). *Id.*; *see also* ECF No. 15 at 1-2. | |
| 9. | On June 23, 2023, the FOIA Office issued a response to the First Category and released to Plaintiff 55 pages of records. Katilius Decl. ¶7. The records were redacted in part under FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5) and (6). *Id*. The FOIA Office also informed Plaintiff that it was withholding 1,835 pages of records in full pursuant to FOIA Exemptions 5 and 6. *Id*. The documents are all emails between SEC staff and SEC contractors about the SEC's internal review related to the control deficiency issue, and they contain discussions about conducting the internal review. Tallarico Decl. ¶7. Many of the emails have attachments with forensic data generated by BRG for use in the internal review. *Id*. One email chain includes consultative discussions about a draft Commission statement and attaches the draft statement. *Id*. | *Admitted* that the FOIA Office issued what it characterizes as a "response" and released 55 pages of records in part.<br><br>*Admitted* that "The FOIA Office also informed Plaintiff that it was withholding 1,835 pages of records in full pursuant to FOIA Exemptions 5 and 6."<br><br>Except as specifically admitted, Plaintiff *objects to* this statement pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). The cited Declaration either does not support this conclusion, or does not support it in an admissible form (because it appears to be outside the personal knowledge of the Declarant or is based on hearsay not within a hearsay exemption and outside the scope of this Court's precedents permitting hearsay when such hearsay is based on the declarant's supervision of a search). The applicability of FOIA exemptions is a question of law solely within the province of this Court and the declarant cannot competently testify thereto. |

| | | |
|---|---|---|
| 10. | For the Second Category, the SEC initially informed Plaintiff that it was withholding all the requested documents under Exemption 5. Tallarico Decl. ¶21. | Admitted. |
| 11. | On June 2, 2023, the SEC issued a statement regarding a control deficiency related to the separation of the SEC's enforcement and adjudicatory functions. Second Commission Statement Relating to Certain Administrative Adjudications, U.S. Securities and Exchange Commission (June 2, 2023), https://www.sec.gov/news/statement/second-commissionstatement-relating-certain-administrative-adjudications ("Second Statement"); Tallarico Decl. ¶22. | Admitted. |
| 12. | On June 13, 2023, the SEC's counsel emailed Plaintiff's counsel to inform them that the Second Statement allowed Plaintiff to access the Orders Instituting Proceedings that it was seeking in its Second Category. Tallarico Decl. ¶23. The SEC's counsel stated that by citing and providing links to the Orders Instituting Proceedings and electronic dockets in the Second Statement and its accompanying exhibits, the SEC had provided all documents responsive to the Second Category. *Id*. Plaintiff's counsel responded that Plaintiff also sought information about whether any closed, settled, or otherwise disposed-of matters were affected by the control deficiency. *Id*. The SEC's counsel responded that the SEC had provided responsive materials for every administrative proceeding in which it had made a determination that one or more Adjudication memoranda were accessed by Enforcement staff. *Id*. The SEC's Counsel further stated that to the extent that Plaintiff sought "the first page of the Order Instituting Proceedings" for additional administrative proceedings, such a request would be an improper FOIA request because it would be asking the SEC to conduct further analysis to determine whether, and in which of those administrative proceedings, | *Admitted* that "On June 13, 2023, the SEC's counsel emailed Plaintiff's counsel to inform them that the Second Statement allowed Plaintiff to access the Orders Instituting Proceedings that it was seeking in its Second Category," but *denied* that this June 13, 2023 correspondence accurately reflects the facts.<br><br>*Admitted in part*, that "Plaintiff's counsel responded that Plaintiff also sought information about whether any closed, settled, or otherwise disposed-of matters were affected by the control deficiency." Specifically, Plaintiff's counsel responded as follows, and Plaintiff *Admits* the cited portion of the statement only insofar as it is consistent with the text quoted herein: "Notwithstanding that the information SEC has |

| | | |
|---|---|---|
| | Enforcement staff accessed adjudication memoranda. *Id*. | provided does not exactly match the request, and without waiving its rights to the information it requested, NCLA notes one additional concern: the 'Statement' you refer to below appears to reflect only then-pending (now dismissed) "affected matters."<br><br>However, Plaintiff NCLA sought information regarding all affected matters, not only matters that were pending as of the date of the request. It is conceivable or even likely that closed cases were also "affected matters," and NCLA can only agree that SEC has satisfied its request if it receives information regarding such closed/settled/otherwise-disposed-of matters." Hardin Decl., Exhibit A.<br><br>*Admitted* that "The SEC's counsel responded that the SEC had provided responsive materials for every administrative proceeding in which it had made a determination that one or more Adjudication memoranda were accessed by Enforcement staff." And that "The SEC's Counsel further stated that to the extent that Plaintiff sought 'the first page of the Order Instituting Proceedings' for additional administrative proceedings, such a request would be an improper FOIA |

| | | |
|---|---|---|
| | | request because it would be asking the SEC to conduct further analysis to determine whether, and in which of those administrative proceedings, Enforcement staff accessed adjudication memoranda."<br><br>Plaintiff *objects* pursuant to Fed. R. Civ. P. 54 (c)(2) and (c)(4) insofar as the SEC's letters in support of its own position are legally irrelevant, necessarily based upon hearsay not within the personal knowledge of the attorney who wrote such letters, and represent legal conclusions or argument which are inadmissible or solely within the province of the Court to determine. |
| 13. | The SEC has not withheld any information in connection with the Second Category. Tallarico Decl. ¶25. | *Denied*. The SEC conflates "information" with "records." Plaintiff sought specifically described records, and the Tallarico declaration does not support any conclusion that Plaintiff has ever been provided any records at all. Instead, as is reflected in SEC's own briefing and in the Tallarico Declaration, SEC has elected to issue a press release which links to certain dockets, but has not provided Plaintiff with the information it seeks. Even assuming, arguendo, that the information in the publicly released dockets constituted some of the information responsive to Plaintiff's request, SEC has made no |

| | | |
|---|---|---|
| | | formal determination within the meaning of 5 U.S.C. 552 that the information is responsive to the Plaintiff's request or is being released in response to a particular request. Nor does reference to public dockets represent materials or satisfy what Plaintiff actually sought in its FOIA request, but instead what SEC has voluntarily chosen to release to all parties notwithstanding Plaintiff's request.<br><br>In brief: Plaintiff did not request a press release. SEC's decision to release one to Plaintiff or publicly does not mean that SEC has responded to Plaintiff's request or that SEC has released or is not withholding any information responsive to Plaintiff's request. |
| 14. | Plaintiff informed the SEC that its position is that it can only agree that the SEC has satisfied the Second Category request if it receives information regarding closed, settled, or otherwise disposed of administrative proceedings affected by the control deficiency. *See* Tallarico Decl. ¶24. | *Objected to* pursuant to Fed. R. civ. P. 56 (c)(2) and (c)(4) and Fed. R. Evid. 408.<br><br>Without waiving these objections, Plaintiff also *denies* this statement. As is evidenced by a true and correct copy of Plaintiff's letter, through counsel, attached to the Hardin Declaration as Exhibit A, and cited above in ¶ 12, Plaintiff noted numerous reasons for its position that SEC has not complied with Plaintiff's FOIA request. |
| 15. | The parties agreed that, on summary judgment, the issue to be resolved is the | Admitted that in the document filed at ECF No. |

| | | |
|---|---|---|
| | SEC's withholding of information from records responsive to the two categories of records that the parties agreed the SEC would process after the FOIA Office notified Plaintiff that its request was too voluminous to process outside of the Complex track. ECF No. 15 at 2; Tallarico Decl. ¶6. In light of the parties' subsequent discussions about the Second Category, the SEC is also addressing whether the Commission has provided a complete response to the Second Category. Tallarico Decl. ¶6. | 15, the parties limited the scope of summary judgment briefing.<br><br>Except as specifically admitted above, this statement is either irrelevant or argumentative in nature and is not properly before the Court. Specifically:<br><br>1) The SEC's preferred narrative regarding the timing of the parties' agreement to limit the scope of summary judgment briefing is irrelevant to any of the issues to be briefed on summary judgment, and not properly before the Court. Plaintiff therefore believes that such references must be disregarded pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4, as well as Fed. R. Evid. 408.<br>2) The SEC's assertions regarding the complexity of the request or the proper processing track for the request are irrelevant or moot in light of the scope of summary judgment briefing.<br>3) The SEC's assertion that it provided a "complete response to the Second Category" is |

| | | |
|---|---|---|
| | | unsupported by the record and Plaintiff therefore *objects* to pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). |
| 16. | In connection with the First Category, pursuant to FOIA Exemption 5, the SEC withheld certain information from 55 pages of records and withheld in full 1,835 pages of records under the attorney work-product doctrine and the deliberative process privilege. Tallarico Decl. ¶8. | Admitted that SEC withheld the identified portions of the identified records. Insofar as the applicability of any exemption SEC has claimed is a question of law and solely within the province of the Court, Plaintiff otherwise *objects* to this statement pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). |
| 17. | The information withheld under FOIA Exemption 5 consists of information about the SEC's internal review of the control deficiency, which was conducted under the direction of and led by the SEC's Office of the General Counsel ("OGC") in anticipation of litigation. Tallarico Decl. ¶8; Ex. 1 (Vaughn index). | *Objected to* pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). Insofar as the characterization of the SEC's review as "internal" is unsupported by the record or is a conclusion rather than a statement of fact.<br><br>To the extent SEC asserts a generalized power of its Office of General Counsel to review its own actions under the protection of the deliberative process privilege or the work product privilege and outside the confines of the Inspector General Act, 5 U.S.C. § 401 *et seq*., Plaintiff asserts that Congress specifically proscribed any attempt by SEC to shield the sort of records it generated which are at issue in this litigation and that any attempt by SEC to create a relationship of |

| | | |
|---|---|---|
| | | privilege with a contractor was *ultra vires* and void. |
| 18. | All of the information the SEC withheld under Exemption 5 is attorney work product. Tallarico Decl. ¶10. The internal review was conducted by SEC staff and contractors at the direction and under the supervision of SEC attorneys in OGC in anticipation of litigation involving Enforcement cases tied to the control deficiency. *Id*. | Whether "all of the information the SEC withheld under Exemption 5 is attorney work product" is a question of law solely within the province of the Court to determine and is outside the competence of any witness. Therefore, Plaintiff *objects* pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4) to the first sentence of the SEC's statement.<br><br>*Admitted* that what SEC characterizes as an "internal review" was conducted by, *inter alia*, contractors.<br><br>Plaintiff *objects* to the SEC's generalized statements of the anticipation of litigation pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4) on the grounds that the SEC has not identified specific litigation that was anticipated, has not tied the relevant records to that specific litigation, and has not established the basis of the declarant's personal knowledge with respect to any such litigation. |
| 19. | As reflected in a contract between the SEC and BRG, the SEC retained BRG to support its internal review relating to the control deficiency. Tallarico Decl. ¶11. During the internal review, BRG contractors compiled forensic data and engaged in discussion with SEC staff as part of SEC staff's review of certain databases to assess the scope and potential impact of the SEC's control | *Admitted* that SEC purports to have entered into the relevant contract. *Admitted* that BRG contractors compiled forensic data and "engaged in discussion with SEC staff" regarding the relevant topics. *Admitted* that BRG conducted its |

| | | |
|---|---|---|
| | deficiency. *Id*. BRG conducted forensic analysis at the request of the SEC and to support the SEC's work. *Id*. BRG has no interest related to the SEC's control deficiency other than providing assistance pursuant to its contract with the SEC. *Id*. | analysis at the request of the SEC and to support the SEC's work.<br><br>*Denied* that SEC has the authority to enter into contracts which have the purpose or effect of evading the statutory role of its Inspector General or which run counter the statutory investigative scheme of the Inspector General Act, 5 U.S.C. § 401 *et seq*. |
| 20. | The SEC retained General Dynamics contracting staff to support the SEC's Office of Information Technology ("OIT"). Tallarico Decl. ¶12. During the internal review, General Dynamics contractors helped OIT staff provide information to BRG and the review team so that BRG could conduct its forensic analysis. I*d*. General Dynamics contractors performed this work at the request of OIT and to support the SEC's work. *Id*. General Dynamics was not retained to assist with the internal review and has no interest related to the SEC's control deficiency other than providing assistance to OIT pursuant to its contract with the SEC. *Id*. | *Admitted* with respect to the pure statements of fact relating to the role of various contractors. To the extent that the characterization of these facts as arising from an "internal review" is inconsistent with the facial implication of the facts and relationships described, Plaintiff *objects* to such characterization as unsupported by the record or as inadmissible argument pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). |
| 21. | Litigation relating to the control deficiency was foreseeable at the time of the internal review because the SEC recognized that parties in affected administrative proceedings might raise claims in the administrative proceedings, in appeals from those proceedings, or in independent cases in federal courts related to the control deficiency. Tallarico Decl. ¶13. | *Admitted* that SEC anticipated facing legal consequences for its actions in allowing files to be accessed and shared by both administrative prosecutors and administrative judges, in a manner that has been determined to violate the law and principles of due process by multiple federal courts.<br><br>Notwithstanding the foregoing, the Tallarico |

| | | |
|---|---|---|
| | | Declaration does not support a specific anticipation of specific litigation or set forth facts other than the generalized fears that litigants in some for a, somewhere, might seek to hold SEC responsible in some fashion. Whether SEC anticipated litigation in a sufficiently concrete way to give rise to the protection of any work product privilege is a question of law and solely within the province of the Court. As such, Plaintiff *objects* pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). |
| 22. | The records reflect SEC staff's consultative discussions before final agency decisions or findings had been made concerning the Commission's internal review relating to the control deficiency. Tallarico Decl. ¶8. | Plaintiff *admits* that "consultative discussions" took place.<br><br>Plaintiff *denies* that the Tallarico Declaration otherwise reflects the discussions that took place, as it does not identify the specific parties engaged in such discussions, nor did the declarant explain whom (if anyone) was making recommendations to whom, such that an analysis of the deliberative process implications of these discussions can be intelligently undertaken. *See*, *e.g.*, *Amadis v. United States Dep't of State*, 971 F.3d 364, 370 (2020) ("[R]ecommendations from subordinates to superiors lie at the core of the deliberative-process privilege."). |

| | | |
|---|---|---|
| 23. | The SEC also withheld portions of an email that contained pre-decisional discussions concerning a draft of a Commission statement relating to the control deficiency, as well as the draft that was discussed. *See* Ex. 1 at 13; Tallarico Decl. ¶9. Specifically, the records reflect SEC staff's discussions, edits, and recommendations concerning the draft statement. Tallarico Decl. ¶9. | *Admitted* that SEC withheld portions of an email.<br><br>Whether the email was "pre-decisional" is a question of law solely within the province of the Court and Plaintiff otherwise *objects* pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). |
| 24. | Additionally, pursuant to FOIA Exemption 6, the SEC withheld certain names, email addresses, and telephone numbers of SEC staff and SEC contractors. Tallarico Decl. ¶17; Ex. 1 (Vaughn index). The SEC also withheld the names of SEC staff who were involved in the internal review, either as individuals who had access to the databases at issue in the control deficiency or as individuals being interviewed by the internal review team. *Id*. | *Admitted* that the stated information was redacted and/or withheld and that SEC purported to do so pursuant to Exemption 6. To the extent that the SEC continues to characterize its actions as an "internal review," Plaintiff maintains its *objections* to that characterization pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). |
| 25. | SEC staff reviewed the records responsive to the First Category to determine whether any portions of those records could be segregated for public disclosure. Tallarico Decl. ¶19. SEC staff have provided all non-exempt information that could be segregated from exempt information. *Id*. | *Admitted* that SEC staff reviewed the records.<br><br>Whether SEC provided all non-exempt information is a legal conclusion solely within the province of the Court and outside the competence of the witness. Plaintiff therefore *objects* to the extent this represents such a conclusion pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4). |
| 26. | SEC staff have reviewed the records responsive to the First Category to determine if it is reasonably foreseeable that disclosure would harm an interest protected by one of the FOIA's statutory exemptions or the disclosure is prohibited by law. Tallarico Decl. ¶20. The SEC has disclosed all portions of documents that it reasonably | *Admitted* that SEC staff reviewed the records. Plaintiff *objects* to the remainder of this statement pursuant to Fed. R. Civ. P. 56 (c)(2) and (c)(4) because it is a legal conclusion, speculative, and/or outside the competence of the |

| | | |
|---|---|---|
| | foresees could be disclosed without causing harm. *Id*. | declarant to opine that harm will result from disclosure. |
| 27. | Disclosure of the information relating to the SEC's internal review that the SEC is withholding under the deliberative process privilege would chill ongoing discussions about addressing the control deficiency the SEC identified as well as discussions about addressing future issues the SEC may face. Tallarico Decl. ¶15. Public release of these discussions would also likely deter SEC staff's future willingness to share ideas, recommendations, and preliminary thoughts on issues and matters before them. *Id*. These confidential discussions and the data generated from the discussions also formed the basis for advice conveyed to SEC officials who needed to decide what actions to take in light of the internal review. *Id*. If these documents were disclosed in response to FOIA requests, staff across the SEC would likely limit their discussions and inhibit their candor in discussing issues relating to the control deficiency and other issues that may arise in the future. *Id*. Such chilling would make it more difficult for SEC leadership to obtain the advice necessary to efficiently and effectively address complex issues about its operations and would hamper comprehensive reviews designed to address and improve those issues. Id. Release of the discussions concerning the draft Commission statement, as well as the draft itself, would likely cause confusion to the public because these discussions and the draft statement contain deliberations about what the final statement should be and are not reflective of the publicly released statement. Id. | This statement is either a conclusion of law solely within the province of the Court, and therefore object to pursuant to Fed. R. civ. P. 56 (c)(2) and (c)(4), or is boilerplate which fails to satisfy the requirements of exemption 5, or account for the interests protected by the relevant exemption in violation of USCS § 552 (a)(8)(A) and how such interests can be protected with narrow redactions. Moreover, the SEC has failed to reconcile the purpose of Exemption 5, which is to protect deliberations regarding legitimate considerations within an agency, with the purpose of the Inspector General Act, which is to protect public confidence in agencies by ensuring that investigations are not conducted internally and that the results of investigations are shared publicly. |
| 28. | Overall, disclosure would jeopardize the candid and comprehensive discussions that are essential for efficient and effective decision-making. Tallarico Decl. ¶16. | Plaintiff incorporates by reference its response to ¶ 27, *supra*. |
| 29. | Disclosure of the information relating to the SEC's internal review that the SEC is withholding under the attorney work-product | Plaintiff incorporates by reference its response to ¶¶ 27-28, *supra*. |

| | | |
|---|---|---|
| | doctrine would deprive the SEC of its ability to withhold any information in future litigation, and consequently would deprive SEC attorneys of a zone of privacy within which to weigh facts and evidence and evaluate how to handle future litigation. Tallarico Decl. ¶14. | |
| 30. | Additionally, disclosure of information in which individuals have a privacy interest would create foreseeable harm by unnecessarily exposing personal information to the public. Tallarico Decl. ¶18. Releasing the information would not provide information about the operations of the SEC. *Id.* | *Objected* to on the basis that the nature of the harm SEC "foresees" is speculative at best and therefore inadmissible or outside the competence of the declarant. Fed. R. Civ. P. 56 (c)(2) and (c)(4).<br><br>*Denied* that the information would not provide information about the operations of the SEC. Plaintiff respectfully submits that insofar as SEC has admitted throughout this litigation and in multiple other courts that its in-house prosecutors unlawfully accessed records of its in-house judges in numerous cases, and that numerous administrative enforcement actions have been dismissed as a result of this malfeasance, there is a heightened public interest in ascertaining how SEC behaved and how it investigated its own behavior. SEC's admission in this litigation that it attempted to conduct an "internal review" which it could shield from the public eye instead of an investigation led by its Inspector General only heightens the public interest |

| | | |
|---|---|---|
| | | in how the SEC operates when it investigates itself, and what employees or non-governmental actors are responsible for such in-house investigations of in-house malfeasance relating to in-house prosecutions. |

Respectfully submitted this the 2nd day of August, 2023,

NEW CIVIL LIBERTIES ALLIANCE

**By Counsel:**

/s/Matthew D. Hardin
Matthew D. Hardin, D.C. Bar No. 1032711
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
Phone: 202-802-1948
Email: MatthewDHardin@protonmail.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Defendant. | Civil Action No. 22-3567 (CJN) |

**DECLARATION OF MATTHEW HARDIN**

I, Matthew Hardin, declare as follows:

1. I am an adult and competent to testify to the matters set forth herein.
2. I am counsel to the Plaintiff in this matter and am admitted to practice law in this Court.
3. Attached hereto as Exhibit A is a true and correct copy of email correspondence I exchanged with defense counsel in this matter, which is cited in the Defendant's affidavits and briefing but is not quoted in full.
4. Attached as Exhibit B is a true and correct copy of correspondence in which the SEC asserted it would have taken approximately three years to respond to Plaintiff's request but for the narrowing reflected at ECF No. 15.
5. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my information and belief. Further I say nothing.

Executed on the 2nd day of August, 2023 at Keokuk, Iowa.

*/s/ Matthew D. Hardin*______
Matthew D. Hardin, D.C. Bar # 1032711
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
(202) 802-1948
MatthewDHardin@gmail.com

*Counsel for Plaintiff*

**A**

**Date:** Jun 16, 2023 at 4:01 PM
**From:** Verdi, Alexandra <VerdiA@SEC.GOV>
**To:** The Law Office of Matthew D. Hardin, PLLC <hardinlawpllc@icloud.com>
**Cc:** Chris Horner <chris@govoversight.org>, Peggy Little <peggy.little@ncla.legal>
**Subject:** Re: NCLA v. SEC

Matt,

The Commission has provided responsive materials for every administrative proceeding in which it has made a determination that one or more Adjudication memoranda were accessed by Enforcement staff. To the extent that Plaintiff also seeks "the first page of the Order Instituting Proceedings (a public document)" for additional administrative proceedings, such a request would be an improper FOIA request because it would be asking the SEC to conduct further analysis to determine whether, and in which of those administrative proceedings, Enforcement staff accessed adjudication memoranda. A request that requires the SEC to conduct research to determine whether there are responsive records is not a proper FOIA request. *Hall & Assocs. v. Env't Prot. Agency*, No. 15-cv-1055, 2018 WL 1695493, at *2 (D.D.C. Apr. 9, 2018) (FOIA does not require agencies to "undertake research, analysis, and formulation of opinions").

Additionally, with respect to our release of non-exempt responsive records and the associated *Vaughn* index for the first priority category of records, we expect to provide both those records and the *Vaughn* index next week.

Best,
Alex

**From:** The Law Office of Matthew D. Hardin, PLLC <hardinlawpllc@icloud.com>
**Sent:** Tuesday, June 13, 2023 7:00 PM
**To:** Verdi, Alexandra <VerdiA@SEC.GOV>
**Cc:** Chris Horner <chris@govoversight.org>; Peggy Little <peggy.little@ncla.legal>
**Subject:** Re: NCLA v. SEC

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good evening,

Notwithstanding that the information SEC has provided does not exactly match the request, and without waiving its rights to the information it requested, NCLA notes one additional concern: the "Statement" you refer to below appears to reflect only then-pending (now dismissed) "affected matters."

But NCLA sought information regarding all affected matters, not only matters that were pending as of the date of the request. It is conceivable or even likely that closed cases were also "affected matters," and NCLA can only agree that SEC has satisfied its request if it receives information regarding such closed/settled/otherwise disposed of matters.

Best,

Matthew D. Hardin
Hardin Law Office
DC Office: 202-802-1948
NYC Office: 212-680-4938
Cell: [illegible]
Email: HardinLawPLLC@icloud.com

Received from Verdi, Alexandra < VerdiA@SEC.GOV > on Jun 13, 2023 at 5:04 PM:

Matt, Chris,

I am writing concerning the second priority category of records that the SEC agreed to process: "the first page of the Order Instituting Proceedings (a public document) of every administrative proceeding in which the control deficiency occurred."

On June 2, 2023, the SEC released the Second Commission Statement Relating to Certain Administrative Adjudications (available at https://www.sec.gov/news/statement/second-commission-statement-relating-certain-administrative-adjudications). The Second Statement and its five exhibits provide, among other things, additional information about *Cochran*, *Jarkesy*, twenty-eight additional "Affected Matters" that are currently pending before the Commission, and sixty-one currently pending matters that are encompassed by eight "Omnibus Memoranda." Based on this information, Plaintiff can access the Orders Instituting Proceedings relating to these administrative proceedings via the SEC's website (available at https://www.sec.gov/litigation/admin.htm). Indeed, the Second Statement itself cites and contains links to the Orders Instituting Proceedings for each of the twenty-eight "Affected Matters," and Exhibit 5 contains links to the electronic dockets for the sixty-one matters it describes.

We understand that, through the second priority category of records, Plaintiff essentially seeks agency records sufficient to show every administrative proceeding in which the SEC has determined that a "control deficiency occurred." By citing and providing links to the Orders Instituting Proceedings and electronic dockets in the Second Statement and its accompanying exhibits, the Commission has already provided these materials for every administrative proceeding in which it has determined that one or more Adjudication memoranda were accessed by Enforcement staff. As such, we believe that the SEC has now provided all documents responsive to the second priority category of records.

Best,
Alex

**Alexandra Verdi** (she/her)
Office of the General Counsel
OFFICE +1 202-551-5057
MOBILE +1 202-394-6130
verdia@sec.gov
Title: SEC logo

EXHIBIT B

**Date:** Mar 23, 2023 at 12:35 PM
**From:** Verdi, Alexandra <VerdiM@SEC.GOV>
**To:** The Law Office of Matthew D. Hardin, PLLC <hardinlawpllc@icloud.com> , Chris Horner <chris@govoversight.org>
**Subject:** NCLA v. SEC

Chris, Matt,

I am writing in connection with FOIA Request No. 22-02497-FOIA at issue in *NCLA v. SEC*. As you know, on March 22, 2023, the FOIA Office sent a letter to the FOIA requester informing them that, among other things, we have identified approximately 3,700 records, consisting of approximately 51,700 pages, that may be responsive to seven sub-parts of the FOIA request (items 1, 3, 4(a) and (b), 6, 7, and 10(a)). The letter also stated that, because the records potentially responsive to these requests are voluminous, the FOIA Office will process them in the Complex Track, which could take up to thirty-six months. In the interest of processing the FOIA Request outside of the Complex track, we would like to discuss with you ways to narrow the scope of records we need to review.

Three of the items of the FOIA Request (4(a) and (b) and 10(a)) returned the vast majority of records, many of which are likely non-responsive or exempt in full (mainly under Exemption 5 and the deliberative process privilege), so we would like to focus initially on those. The searches for all records relating to those subparts returned approximately 2,700 records (approximately 44,400 pages). I welcome suggestions of how to focus these three subparts, and we can share our search methodology if that would help to determine how we can refine and narrow the searches.

Item 7 also returned over 4,000 pages because we interpreted it to include all emails from BRG employees. Based on an initial, high-level review, we believe most of the emails are ministerial and non-substantive. Limiting the request to emails from BRG reflecting BRG's substantive analysis or conclusions relating to their review would make review of these documents much more reasonable.

Items 1, 3, and 6 returned more manageable amounts of documents, but the volume of the responses would put the amount close to what we would normally process outside the Complex track. While we believe it makes sense to initially focus on the other items, some narrowing of these items is necessary to bring all the remaining items in the FOIA request within the number of pages we would review outside of the Complex track.

Please let me know if it would be helpful to set up a call to discuss.

Best,
Alex

**Alexandra Verdi** *(she/her)*
Office of the General Counsel

**OFFICE** +1 202 551 5057
**MOBILE** +1 202 368 3136
verdim@sec.gov

U.S. Securities and Exchange Commission

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Defendant. | No. 22-cv-03567-CJN |

**REPLY MEMORANDUM IN SUPPORT OF SEC'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. The SEC properly withheld information under FOIA Exemptions 5 and 6 in responding to Plaintiff's First Category .......... 1

1. Communications between SEC staff and BRG and General Dynamics contractors are intra-agency communications under Exemption 5 .......... 1

2. The SEC appropriately withheld information under the attorney work-product doctrine. .......... 4

3. The SEC appropriately withheld information under the deliberative process privilege. .......... 7

4. The SEC has not waived protection of the withheld records. .......... 10

5. The SEC properly withheld information under Exemption 6. .......... 11

6. The SEC's *Vaughn* Index sufficiently describes the information withheld under the deliberative process privilege. .......... 14

7. The SEC sufficiently demonstrated the foreseeable harm that would occur should the withheld records be released. .......... 17

B. The SEC appropriately responded to Plaintiff's Second Category .......... 21

C. No material facts are in dispute. .......... 24

III. CONCLUSION .......... 25

## TABLE OF AUTHORITIES

**CASES**

*Amiri v. NSF*, No. 1:20-cv-02006 (TNM), 2021 WL 4438910 (D.D.C. Sept. 28, 2021) ...... 17, 22

*Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*,
370 F. Supp. 3d 116 (D.D.C. 2019) .......... 6

*Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55 (D.C. Cir. 2003) .......... 10

*Brown v. FBI*, 873 F. Supp. 2d 388 (D.D.C. 2012) .......... 13

*Burke v. Inter-Con Sec. Sys., Inc.,* 926 F. Supp. 2d 352 (D.D.C. 2013) .......... 21

*Carr v. C.R. Bard, Inc.*, 297 F.R.D. 328 (N.D. Ohio 2014) .......... 11

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 45 F.4th 963 (D.C. Cir. 2022) ...... 9

*Clemente v. FBI*, No. 1:20-cv-1527 (TNM),
2022 WL 17092585 (D.D.C. Nov. 21, 2022) .......... 17, 20

*Coastal Corp. v. Dep't of Energy*, 496 F. Supp. 57 (D. Del. 1980) .......... 14

*Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 161 F. Supp. 3d 120 (D.D.C.) .......... 11

*Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83 (D.D.C. 2009) .......... 23

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) .......... 2, 11

*EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959 (D.C. Cir. 1999) .......... 5, 6

*Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157 (D.D.C. 2011) .......... 9

*Elec. Privacy Info. Ctr. v. DHS*, 892 F. Supp. 2d 28 (D.D.C. 2012) .......... 4

*Elec. Privacy Info. Ctr. v. FBI*, No. 1:17-cv-00121 (TNM),
2018 WL 2324084 (D.D.C. May 22, 2018) .......... 22

*Elkem Metals Co. v. United States*, 24 C.I.T. 1395, 126 F. Supp. 2d 567 (2000) .......... 16

*Energy Pol. Advocates v. U.S. Dep't of State*, No. 1:19-CV-03307 (TNM),
2023 WL 4198200 (D.D.C. June 27, 2023) ........ 17, 19

*Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241 (4th Cir. 1994) ........ 9

*FPL Group, Inc. v. IRS*, 698 F. Supp. 2d 66 (D.D.C. 2010) ........ 10

*Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010) ........ 9

*Georgia v. U.S. Dep't of Justice*, No. 1:21-cv-03138 (TNM),
2023 WL 2116375 (D.D.C. Feb. 20, 2023) ........ 2, 3

*Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97 (D.D.C. 2010) ........ 2

*Hall & Assocs. v. U.S. EPA*, 633 F. Supp. 3d 55 (D.D.C. 2022) ........ 16

*Hall & Assocs. v. U.S. EPA*, No. 19-1095 (RC), 2020 WL 4673411 (D.D.C. Aug. 12, 2020) .... 12

*Hennessey v. U.S. Agency for Int'l Dev.*, No. 97-1133, 1997 WL 537998 (4th Cir. 1997) ........ 9

*ICM Registry, LLC v. U.S. Dep't of Commerce*, No. 06-0949 (JR),
2007 WL 1020748 (D.D.C. March 29, 2007) ........ 9

*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 391 F. Supp. 3d 43 (D.D.C. 2019) ........ 6

*Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252 (D.D.C. 2004) ........ 9

*Keeping Gov't Beholden, Inc. v. U.S. Dep't of Justice*, No. CV 17-1569,
2021 WL 5918627 (D.D.C. Dec. 13, 2021) ........ 20

*Kleinert v. BLM*, 132 F. Supp. 3d 79 (D.D.C. 2015) ........ 13

*Lawyers' Comm. for C.R. v. OMB*, No. 18-645 (EGS),
2023 WL 3433978 (D.D.C. May 12, 2023) ........ 16, 18, 19

*Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005) ........ 13

*Leopold v. U.S. Dep't of Justice*, 487 F. Supp. 3d 1 (D.D.C. 2020) ........ 11

*Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020) ........ 8, 18

*Machado Amadis v. U.S. Dep't of Justice*, 388 F. Supp. 3d 1 (D.D.C. 2019).............................. 22

*McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331 (D.C. Cir. 2011)............... 2

*Mogenhan v. DHS*, No. 06-2045 (EGS), 2007 WL 2007502 (D.D.C. July 10, 2007) ................. 21

*Murray v. Fed. Bureau of Prisons*, 741 F. Supp. 2d 156 (D.D.C. 2010)...................................... 23

*Nat'l Inst. of Military Justice v. U.S. DOD*, 404 F. Supp. 2d 325 (D.D.C. 2005) .......................... 2

*Nat'l Student Legal Def. Network v. U.S. Dep't of Educ.*, No. 21-1923 (BAH),
2023 WL 4450579 (D.D.C. July 11, 2023).................................................................. 10

*People for the Am. Way Found. v. U.S. Dep't of Educ.*,
516 F. Supp. 2d 28 (D.D.C. 2007) ..................................................................... 11, 14

*Prechtel v. FCC*, 330 F. Supp. 3d 320 (D.D.C. 2018) ................................................................ 12

*Project on Gov't Oversight, Inc. v. DHS*, No. l:18- CV-2051-RCL,
2023 WL 2139380 (D.D.C. Feb. 21, 2023) ................................................................. 20

*Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194 (D.D.C. 2007) ........ 13, 19

*Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021)....................... 20

*Santos v. DEA*, 357 F. Supp. 2d 33 (D.D.C. 2004)........................................................................ 22

*Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548 (D.C. Cir. 1994)................................................ 23

*United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010) ...................................................... 6

*Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975) .......................................................................... 9

*Waterman v. IRS*, 288 F. Supp. 3d 206 (D.D.C. 2018).............................................................. 12

*Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365 (D.C. Cir. 1980) ............................................. 22

*Wilderness Soc. v. Dep't of Interior*, 344 F. Supp. 2d 1 (D.D.C. 2004) ........................................ 9

**OTHER AUTHORITIES**

*Second Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (June 2, 2023), https://www.sec.gov/news/statement/second-commission-statement-relating-certainadministrative-adjudications ........................ 6, 8

## I. INTRODUCTION

Defendant U.S. Securities and Exchange Commission ("SEC") submits this reply in further support of its motion for summary judgment. In its Opposition, Plaintiff attempts to paint the SEC as "stonewall[ing]" Plaintiff's FOIA request. *See* Opposition, ECF 17 ("Opp."), at 4. The record, however, shows that the SEC worked with Plaintiff to address and respond fully to Plaintiff's FOIA request, and Plaintiff's arguments are belied by the facts and the law.

Because the SEC has responded appropriately to Plaintiff's narrowed FOIA request and appropriately withheld records under FOIA Exemptions 5 and 6, the Court should grant the SEC's motion for summary judgment.

## II. ARGUMENT

### A. The SEC properly withheld information under FOIA Exemptions 5 and 6 in responding to Plaintiff's First Category.

The SEC properly withheld attorney work product, information reflecting predecisional deliberations, and information in which individuals have a privacy interest under FOIA Exemptions 5 and 6 from emails with government contractors. *See* Memorandum, ECF 16-5 ("Memo"), at 8-22.

#### 1. Communications between SEC staff and BRG and General Dynamics contractors are intra-agency communications under Exemption 5.

Plaintiff claims the SEC's communications with its contractors are not intra-agency communications but provides no support for that claim. *See* Opp. at 19-22.

Plaintiff incorrectly argues that Supreme Court and D.C. Circuit precedent applying the consultant corollary to government contractors is not well-established law. *See* Opp. at 19-20. In *Klamath*, the Supreme Court recognized that certain Courts of Appeals had adopted a consultant corollary to Exemption 5 and found that communications between agencies and outside consultants hired by agencies were intra-agency communications as long as the

consultant did not "represent an interest of its own, or the interest of any other client, when it advise[d] the agency that hire[d] it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9-11 (2001); *see also Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 104 (D.D.C. 2010) (citing *Klamath* and noting that "the Supreme Court has implicitly recognized a consultant corollary that extends Exemption 5 to cover records submitted by outside consultants to government agencies when those consultants played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done") (internal quotations omitted). The D.C. Circuit and Courts within this Circuit have approved the use of the consultant corollary. *See, e.g.*, *McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011) ("intra-agency" includes "agency records containing comments solicited from nongovernmental parties"); *Nat'l Inst. of Military Justice v. U.S. DOD*, 404 F. Supp. 2d 325, 343 (D.D.C. 2005) (citing *Klamath* and D.C. Circuit cases and noting that "[t]he Supreme Court has made clear that Exemption 5 protects not only inter-agency and intra-agency communications among employees, but also communications from outside consultants or other individuals hired or solicited by an agency for their views"), *aff'd*, 512 F.3d 677 (D.C. Cir. 2008).

Plaintiff points to one opinion in this district in support of its request that the Court "decline to recognize this purported 'corollary' to Exemption 5." Opp. at 19, 20-21. In that case, however, the Court did not reject the consultant corollary but rather applied "three [guiding] principles" to determine whether private parties and their lawyers were "consultants" under the consultant corollary. *Georgia v. U.S. Dep't of Justice*, No. 1:21-cv-03138 (TNM), 2023 WL 2116375, at *5 (D.D.C. Feb. 20, 2023). Specifically, the Court noted that, "following *Klamath*," to determine "whether a purported consultant [is] enough like the agency's own

personnel to justify calling their communications intra-agency," courts should consider "whether the agency presented evidence that the private parties are sufficiently disinterested to be analogous to government consultants," whether "the agency solicited the communications" from the private party, and whether "the agency seeks [the private party's] expertise." *Id.* (internal quotations omitted). The Court concluded that the agency failed to show that the external parties "acted as disinterested parties in their communications with it." *Id.* at *5-6. The Court explained that "nothing in the record suggests that [the agency] solicited the private entities for assistance in litigating its case against Georgia" and that the agency did not show that it received advice from experts. *Id.* at *8.

*Georgia* is factually inapposite to this case, and application of the principles used in *Georgia* shows that communications between the SEC and its contractors are intra-agency. First, the SEC retained BRG and General Dynamics "to support its internal review relating to the control deficiency" and "to support the SEC's Office of Information Technology ('OIT')." SMF ¶¶19, 20. Neither contractor has any "interest related to the SEC's control deficiency other than" providing assistance pursuant to contracts with the SEC. *Id.* Unlike the "consultants" in *Georgia*, BRG and General Dynamics "are not self-interested" and "have [no] skin in the game" in connection with their work for the SEC. *Georgia*, 2023 WL 2116375, at *5, 6. Second, the SEC solicited and retained BRG and General Dynamics to support the SEC's work. SMF ¶¶19, 20. Third, the SEC sought the expertise of BRG and General Dynamics, specifically BRG's ability to conduct forensic analysis and General Dynamics' ability to support OIT staff. *See id.*

Plaintiff argues that even if the consultant corollary is based on law, it does not apply here because BRG and General Dynamics consultants were somehow "not proper" consultants (apparently because the SEC compensated BRG for its work) and the SEC's Office of Inspector

General should have conducted an investigation. *See* Opp. at 5, 14, 15, 20, 21-22; ECF 17-1 at ¶30. Plaintiff points to nothing that suggests that consultants cannot be deemed disinterested if they have an interest in entering into additional contracts with an agency. The relevant consideration is whether a consultant has an interest in the underlying issue, and Plaintiff points to no evidence that BRG or General Dynamics has any interest in the control deficiency issue. *Elec. Privacy Info. Ctr. v. DHS*, 892 F. Supp. 2d 28, 44-46 (D.D.C. 2012) (consultant corollary applied where agency's consultants were "bound in contract to provide information and analysis"). Similarly, Plaintiff's argument regarding the Inspector General is an effort to insert an irrelevant issue into this FOIA case as the relevant fact is that communications with government contractors are at issue, not whether the SEC's Office of the General Counsel or Office of Inspector General should have conducted the internal review. While the issue of who should conduct internal reviews is irrelevant, it bears noting that Plaintiff does not identify any provision of the Inspector General Act, 5 U.S.C. § 401 *et seq*., or any other law that would preclude the SEC's Office of the General Counsel from conducting the internal review here in anticipation of litigation. *See* Opp. at 5, 22, 24; ECF 17-1 at ¶19.

Because BRG and General Dynamics served as disinterested experts that provided assistance at the SEC's request, communications between SEC staff and BRG and General Dynamics staff are intra-agency. *See* Memo at 10-11.

**2. The SEC appropriately withheld information under the attorney work-product doctrine.**

Contrary to Plaintiff's incorrect statement that the SEC cites the attorney work-product doctrine in the *Vaughn* Index only "occasionally" (Opp. at 14-15), the SEC asserts that the attorney work-product doctrine protects all withheld material from the First Category (*see* ECF 16-4 (citing attorney work-product doctrine for each withheld record)).

Plaintiff argues that the SEC has failed to establish that the attorney work-product doctrine applies to the withheld information because it was not "prepared or obtained because of the prospect of litigation." Opp. at 18-19 (internal quotations omitted). Without any evidence, Plaintiff claims that the SEC would have conducted a review of the control deficiency even if it did not fear being sued. *Id*. at 19.

As a threshold matter, Plaintiff confesses that Michelle Cochran, for whom Plaintiff "had served as counsel," *had planned to "file a complaint in district court"* before the SEC dismissed her administrative case in June 2023. Opp. at 4, 6 (emphasis added); ECF 17-1 at ¶21 (admitting "SEC anticipated facing legal consequences"). Thus, Plaintiff's own briefing shows the SEC had good reason to address the control deficiency issues in "anticipation of litigation involving Enforcement cases tied to the control deficiency." SMF ¶18. Plaintiff's only argument is that the SEC would have taken the same steps it took in reviewing the control deficiency if it had not anticipated litigating issues related to the control deficiency. *See* Opp. at 18-19. Plaintiff points to no facts to support that position. *See id.* Plaintiff provides no explanation of why a detailed analysis of the control deficiency in specific cases would have been necessary if the SEC did not anticipate needing to address litigation relating to those issues. *See id.*

Plaintiff's own cited cases undermine its assumption that reviews that relate to both operations issues and litigation are not work product. Indeed, the cited cases demonstrate that the attorney work-product doctrine applies here even where the withheld records were generated both because of the prospect of litigation and to address matters arising in the ordinary course of business. *See EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 968-69 (D.C. Cir. 1999) (report prepared by counsel who conducted investigation covered by attorney work-product doctrine "because [respondent] feared litigation" and court noted that "even if [respondent undertook its

investigation in ordinary course of business], [petitioner's] recharacterization of [respondent's] motivation does nothing to undermine [respondent's] contention that it genuinely feared litigation") (Opp. at 18); *United States v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010) ("document produced during an audit" could "contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation") (Opp. at 18, 19). Additionally, the courts in three of Plaintiff's cited cases found the records at issue were covered by the attorney work-product doctrine. *See EEOC*, 186 F.3d at 960 ("entire [record at issue was] fully protected by the work product privilege") (Opp. at 18); *Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*, 370 F. Supp. 3d 116, 138 (D.D.C. 2019) ("draft memorandum was produced in anticipation of litigation and is privileged under the work-product doctrine") (Opp. at 18-19); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 391 F. Supp. 3d 43, 53 (D.D.C. 2019) ("records exempt from FOIA release as attorney work product under Exemption 5") (Opp. at 18).

The SEC retained BRG to support its internal review relating to the control deficiency because "the SEC recognized that parties in affected administrative proceedings might raise claims in the administrative proceedings, in appeals from those proceedings, or in independent cases in federal courts related to the control deficiency." SMF ¶¶19, 21. Indeed, the SEC relied on BRG contractors to compile forensic data and perform analyses of databases and access logs. SMF ¶19; *Second Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (June 2, 2023), https://www.sec.gov/news/statement/second-commission-statement-relating-certainadministrative-adjudications ("Second Statement"). Plaintiff's revelation that it contemplated litigation further underscores the SEC's anticipation that suits would be filed due to the control deficiency.

Because the First Category records were generated during the SEC's internal review undertaken in the context of foreseeable litigation, the attorney-work product doctrine applies to those records. *See* Memo at 11-14.

**3. The SEC appropriately withheld information under the deliberative process privilege.**

Plaintiff focuses its objection to the SEC's withholdings under the deliberative process privilege on the email correspondence between SEC staff and BRG contractors concerning their work on the internal review of the control deficiency. *See* Opp. at 15-18. Plaintiff does not address the applicability of the deliberative process privilege to the discussions about and draft of a Commission statement relating to the control deficiency. *See* Memo at 16-17.[1]

Plaintiff insists incorrectly that the SEC did not identify "the 'recommenders' . . . inside or outside the agency [and] what the relevant final agency decision was." Opp. at 16, 17; *see also* Opp. at 17 (arguing that SEC did not "tie the withheld records to a decision-making process"). The SEC, however, identified the deliberating individuals as "SEC staff," "BRG contracting staff," and the SEC's OGC staff. ECF 16-4. As discussed *infra* at II.A.6, the SEC properly identified the deliberating individuals and decisionmaking process.

Plaintiff suggests that issues relating to the control deficiency are not policy issues protected by the deliberative process privilege. *See, e.g.*, Opp. at 16 ("[m]ere reporting of forensic irregularities," "mere topic such as a 'control deficiency,'" SEC decisions about control deficiency "too trivial"). The information withheld from the First Category, however, is related to significant policy issues about continuing to litigate any administrative proceedings affected by the control deficiency, and the withheld information is pre-decisional and deliberative

[1] Though Plaintiff briefly argues that the SEC "inherently has hidden factual and nondeliberative material from view" (Opp. at 14), Plaintiff provides no support for that position (*see* Memo at 15-16 (factual material "inextricably intertwined" in deliberations)).

because requests from SEC staff for various categories of data and discussions of the SEC's requests reflects deliberations of SEC staff about what to focus on and how to conduct the internal review. As detailed in the *Vaughn* Index, during the SEC's internal review of the control deficiency, SEC staff and contractors discussed what forensic data could and should be compiled to assess the scope and potential impact of the SEC's control deficiency. *See* ECF 16-4; Memo at 15. This deliberation took place prior to the SEC's final decisions and findings concerning the internal review. *Id.* The *Vaughn* Index shows that SEC staff and contractors discussed issues related to data. *See, e.g.*, ECF 16-4 at 1 ("information about a review of certain databases" withheld), 2 ("discussions concerning staff's internal review" and "forensic data generated by BRG staff" withheld), 13 ("discussions concerning a draft of a Commission statement" and "draft" itself withheld). The internal review did not involve simply gathering readily available facts. Rather, "to assess the scope and potential impact of the control deficiency," the SEC instituted a "comprehensive," time intensive review conducted by "experienced investigative staff from the Division of Examinations under the supervision of the Commission's General Counsel" as well as "experienced investigators and forensic analysts" at BRG. *See* Second Statement, *supra*. The consultative discussions and analysis during that review led to the SEC's final findings as reflected in the Second Statement. *See* ECF 16-4; SMF ¶¶19, 22. Those final findings in turn resulted in the SEC's policy decisions about whether to continue to litigate administrative proceedings affected by the control deficiency. *See* Second Statement, *supra*; *see also* Opp. at 6 (SEC dismissed certain administrative proceedings). Courts have approved agencies' withholding of this type of information. *See* Memo at 15-16.

Plaintiff relies on cases that are inapposite, out of circuit, and/or support the granting of summary judgment to the agency. *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370

(D.C. Cir. 2020) (granting summary judgment to agency and finding Exemption 5 applied to "'evaluations, recommendations, discussions, and analysis which are prepared for senior-level review and decisionmaking'") (Opp. at 15); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 483-84 (2010) (addressing presidential "ability to remove a principal officer," not any issues under FOIA) (Opp. at 16); *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 45 F.4th 963, 977, 979 (D.C. Cir. 2022) (emphasizing "unique circumstances of" case in which agency "[sought] to rely on a new legal theory justifying [Exemption 5] withholding" that it "never presented to the district court") (Opp. at 16, 17); *Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241, 1244, 1250 (4th Cir. 1994) (agency withheld all contested records in full and, despite court order, did not identify authors or recipients of records and did not identify their "relationships to the decisionmaking process") (Opp. at 16); *Vaughn v. Rosen*, 523 F.2d 1136, 1145 (D.C. Cir. 1975) (reports at issue were "'final objective analyses of agency performance under existing policy'") (Opp. at 16); *Hennessey v. U.S. Agency for Int'l Dev.*, No. 97-1133, 1997 WL 537998, at *5 (4th Cir. 1997) (report at issue was "final," "seemingly entirely factual in character," and "prepared with the expectation that it would be shared with the very party from whom the government now attempts to withhold the document") (Opp. at 16); *ICM Registry, LLC v. U.S. Dep't of Commerce*, No. 06-0949 (JR), 2007 WL 1020748, at *6 (D.D.C. March 29, 2007) (deliberative process privilege did not apply where "government's submissions fail to specify the deliberative process reflected in these documents") (Opp. at 17); *Wilderness Soc. v. Dep't of Interior*, 344 F. Supp. 2d 1, 12-13 (D.D.C. 2004) (agency did not identify specific "wilderness issues") (Opp. at 17); *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 264 (D.D.C. 2004) (agency did "not identify specific final decisions or decisionmaking processes to which the documents contributed") (Opp. at 17); *Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157,

168-69 (D.D.C. 2011) (descriptions "fail[ed] to identify a specific deliberative process to which the withheld email messages contributed" and role messages played) (Opp. at 17); *FPL Group, Inc. v. IRS*, 698 F. Supp. 2d 66, 90 (D.D.C. 2010) (agency "too vaguely described" certain records) (Opp. at 18).

**4. The SEC has not waived protection of the withheld records.**

Plaintiff argues that the SEC "voluntarily waived the protection of Exemption 5 by sharing the underlying documents with its favored vendors and issuing press releases linking to selected records." Opp. at 22-24. "The D.C. Circuit has made clear that disclosure to a third party does not waive [work product protection] unless such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary, and waiver would occur . . . only if the disclosure substantially increases the possibility of an opposing party obtaining the information." *Nat'l Student Legal Def. Network v. U.S. Dep't of Educ.*, No. 21-1923 (BAH), 2023 WL 4450579, at *7 (D.D.C. July 11, 2023) (internal quotations omitted). There is no evidence that the SEC shared the withheld records with anyone other than SEC staff and government contractors. As discussed above, the withheld records consist of emails and records generated during the SEC's internal review, and, under the consultant corollary, those communications are intra-agency. *See supra* at II.A.1.

Further, though Plaintiff asserts that the SEC released the withheld records "to the public by way of a press release" (Opp. at 23), Plaintiff has not fulfilled its burden to establish waiver by showing evidence that information from the withheld forensic analysis and related discussion from the internal review is in the public domain. *See Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 60-61 (D.C. Cir. 2003) (no waiver where plaintiff "made no *specific* showing that any of the . . . disclosures revealed information that is 'as specific as' and 'matches' that

included in the [withheld material]") (emphasis in original); *Leopold v. U.S. Dep't of Justice*, 487 F. Supp. 3d 1, 13 (D.D.C. 2020) (rejecting argument that agency waived work product privilege "with respect to much of [its] redactions because [agency] officially acknowledged [the redacted information] in [public] Report" and noting that "the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption") (internal quotations omitted).

Only one of Plaintiff's cited cases addresses waiver, and all of Plaintiff's cases are distinguishable from the present circumstances. Indeed, Plaintiff essentially repackages its baseless argument that correspondence between SEC staff and its contractors is not privileged. *See Klamath*, 532 U.S. at 4 (waiver not at issue but rather whether records were exempt from disclosure) (Opp. at 22); *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 516 F. Supp. 2d 28, 41-42 (D.D.C. 2007) (declining to address Plaintiff's waiver arguments and noting that agency admitted to not disclosing all parties to withheld communications) (Opp. at 22-23); *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 161 F. Supp. 3d 120, 134 (D.D.C.) (waiver not at issue and determining that records between agency and professor whose opinion agency sought were not intra-agency because professor "had a professional and reputational stake in [agency's] decision"), *modified*, 185 F. Supp. 3d 26 (D.D.C. 2016) (Opp. at 23); *Carr v. C.R. Bard, Inc.*, 297 F.R.D. 328, 336 (N.D. Ohio 2014) (in non-FOIA case, court concluded that record at issue was work product, there was no waiver of that protection, and plaintiff failed to make showing necessary to overcome work-product protection) (Opp. at 23).

**5. The SEC properly withheld information under Exemption 6.**

Plaintiff also objects to the SEC's Exemption 6 withholdings of SEC staff and contractor contact information and certain SEC staff names. Opp. at 24-27.

First, Plaintiff misrepresents which staff names the SEC withheld. *See* Opp. at 25-26. The SEC withheld only "the names of SEC staff who were involved in the internal review, either as individuals who had access to the databases at issue in the control deficiency or as individuals being interviewed by the internal review team." SMF ¶24. The SEC did not withhold the names of the SEC staff and contractors who conducted the internal review. *Cf. id*. Individuals potentially involved in the control deficiency may be harassed, so they have a privacy interest in not having their names publicly released. *See* Memo at 19. As discussed further below, Plaintiff has not identified a public interest in knowing the names that would overcome that privacy interest.

Plaintiff also objects to the SEC's withholding of SEC staff and contractors' email addresses and phone numbers. Opp. at 26-27. Plaintiff ignores that courts often protect employee contact information under Exemption 6 because individuals have a privacy interest in information that could lead them to being harassed if released. *See* Memo at 18-19; *see also Hall & Assocs. v. U.S. EPA*, No. 19-1095 (RC), 2020 WL 4673411, at *5 (D.D.C. Aug. 12, 2020) ("Courts have also upheld the withholding of email addresses used for work purposes where they are not publicly available."); *Waterman v. IRS*, 288 F. Supp. 3d 206, 211-12 (D.D.C. 2018) ("contact information for individual [agency] employees sheds little light on an agency's performance of its statutory duties, yet exposes individual employees to threatening or harassing contacts from the public") (internal citation and quotation omitted), *vacated on other grounds*, 755 F. App'x 26 (D.C. Cir. 2019), *remanded*, 2021 WL 4262722 (D.D.C. Sept. 20, 2021).

Plaintiff cites cases that are factually distinguishable from the present circumstances. *See Prechtel v. FCC*, 330 F. Supp. 3d 320, 329 (D.D.C. 2018) (ordering release of email addresses of individuals who "had ample indication that their email addresses could be made public,

mitigating any expectation of privacy" and were specifically warned that their names and addresses would be publicly available online and released) (Opp. at 26-27); *Kleinert v. BLM*, 132 F. Supp. 3d 79, 95-97 (D.D.C. 2015) (focusing on withholding of agency staff names because plaintiff "expressly disavowed" seeking email addresses and agency "wholly failed to explain why disclosure of the redacted information would subject the relevant individuals to . . . harms") (Opp. at 27); *Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) (agency had withheld both names and contact information, which were "already publicly available from the Office of Personnel Management") (Opp. at 27); *Brown v. FBI*, 873 F. Supp. 2d 388, 402-04 (D.D.C. 2012) (concluding that employee names and phone numbers were appropriately withheld under FOIA Exemption 7(C), not Exemption 6, because "*[a]ny* amount of privacy expectation outweighs the virtually nonexistent public interest") (Opp. at 27).

The SEC withheld the contact information of SEC staff and contractors as well as the names of SEC staff who had access to the databases at issue in the control deficiency or who were interviewed during the review because there is a potential for harassment from individuals who may want to question or attack individuals they think may have acted improperly in connection with handling or accessing confidential information. *See* Memo at 18-20.

Plaintiff has failed to meet its burden to overcome the privacy interests in the names and contact information the SEC withheld. To overcome a privacy interest, it is the requester's obligation to articulate a sufficient public interest. *See Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 207 (D.D.C. 2007) ("If the requesting party cannot demonstrate a public interest in disclosure then the court will not order disclosure, because, as this Circuit has noted, 'something, even a modest privacy interest, outweighs nothing every time.'"). The only "public interest" that Plaintiff identifies in the withheld information is the identification of "who

is influencing agency policy" (Opp. at 25, 26),[2] but the SEC released the names of staff at both the SEC and BRG who conducted the internal review. Rather than identifying a significant public interest in the information actually withheld, Plaintiff claims with no explanation or analysis that disclosure would be "mundane and unlikely to cause harm." Opp. at 26.[3]

Because SEC staff and contractors have a privacy interest in the withheld information, and Plaintiff did not articulate a sufficient and significant public interest to countervail that privacy interest, the SEC properly withheld certain names and contact information under Exemption 6.

**6. The SEC's *Vaughn* Index sufficiently describes the information withheld under the deliberative process privilege.**

Plaintiff complains that the SEC's *Vaughn* Index and declarations are insufficiently detailed (Opp. at 27-30) but ignores the descriptive information provided for the SEC's withholdings, specifically under the deliberative process privilege. Notably, Plaintiff does not object to the descriptions in the *Vaughn* Index concerning the withholdings under the attorney work-product doctrine, which, as discussed *supra*, applies to all withheld documents.

---

[2] In its "Response to Defendant's Statement of Undisputed Facts," Plaintiff briefly claims, without legal authority, "there is a heightened public interest in ascertaining how SEC behaved and how it investigated its own behavior." ECF 17-1 at ¶30. Even if Plaintiff had support for this statement, Plaintiff does not explain why knowing the names of people potentially involved in the control deficiency would provide relevant information.

[3] Plaintiff's cited cases (Opp. at 26) do not support Plaintiff's proposition "that disclosing the 'names' of the parties to a communication (including all staffers) is required for a Vaughn Index" and for establishing privilege claims. *See Coastal Corp. v. Dep't of Energy*, 496 F. Supp. 57, 58-64 (D. Del. 1980) (addressing disputes concerning aspects of proposed order about elements to include in *Vaughn* index, which did not include discussion of whether specific staff names had to be included); *People for the Am. Way Found.*, 516 F. Supp. 2d at 41-42 (requiring agency to re-submit *Vaughn* index with names and affiliations of senders and recipients for purposes of segregability analysis because "*Vaughn* index did not include all parties to each communication").

The SEC withheld certain information from 55 pages of parent emails as well as the attachments to those emails. *See* SMF ¶9; Tallarico Decl., ECF 16-3, at ¶8.[4] Those records consist of communications between SEC staff and SEC contractors about the SEC's internal review related to the control deficiency issue. ECF 16-3 at ¶7. Indeed, the *Vaughn* Index identifies the parties to the communications as "SEC staff," "BRG contracting staff," and SEC's OGC staff. ECF 16-4. The *Vaughn* Index reflects that those parent emails contain "information about" and "discussions concerning review of certain databases to assess the scope and potential impact of the SEC's control deficiency" as well as "forensic data" produced as part of that review. ECF 16-4 at 1-8, 12, 14-19. The Index details records that "address the review of the handling and processing" of the *Cochran* and *Jarkesy* proceedings. *Id.* at 1, 9. The Index also describes withheld attachments that contain "forensic data generated by BRG staff" as part of their review. *Id.* at 2, 4-6, 8-12, 14, 16-17. The Index further describes withheld "discussions concerning a draft of a Commission statement relating to the control deficiency" as well as the withheld draft. *Id.* at 13.

The SEC's briefing also stated that the final agency decisions were the "agency's final findings about the control deficiency" (Memo at 15) and "final Commission statement that was published on June 2, 2023" (ECF 16-4 at 13). The Tallarico Declaration makes clear that the deliberative decision-making process consists of the discussion and analysis during the internal review of the control deficiency that led to the SEC's final decision, namely final findings about that control deficiency. *See* ECF 16-3 at ¶¶8-9, 15 ("confidential discussions and the data

---

[4] Though the original page count of those withheld attachments was 1,835 pages, that number does not include the pages in one attachment, an Excel spreadsheet that consists of 587 pages when converted to PDF. Suppl. Decl. at ¶9. The SEC withheld in full 2,422 pages. *Id.*

generated from the discussions . . . formed the basis for advice conveyed to SEC officials who needed to decide what actions to take in light of the internal review").

Providing any additional detail about the records would expose SEC staff's work product and deliberations during the internal review. *See* ECF 16-3 at ¶¶14-16. Plaintiff argues that "neither declaration establishes the withheld content is deliberative" and that the *Vaughn* entries reflect "generalities" (Opp. at 28-29), but the *Vaughn* Index explains that the records reflect the agency's work product as well as its consultative analysis and discussions on various aspects of the internal review, including the generation of forensic data, review of databases, and discussions concerning a draft Commission statement (*see* ECF 16-4). Plaintiff also objects that the SEC's explanations are "repetitive" (Opp. at 28), but the withheld records all pertain to the same subject matter, namely records concerning the SEC's internal review, so similar explanations are expected. *See Hall & Assocs. v. U.S. EPA*, 633 F. Supp. 3d 55, 73 (D.D.C. 2022) (approving *Vaughn* index where "many [] entries contain the same language . . . because many of the withheld documents are similar"); *Lawyers' Comm. for C.R. v. OMB*, No. 18-645 (EGS), 2023 WL 3433978, at *5 (D.D.C. May 12, 2023) ("a *Vaughn* index is not inadequate simply because an agency grouped similar documents into a single category and provided the same reason for withholding information across that category").

Plaintiff repeats its earlier argument that the withheld records are not "covered by the deliberative process privilege." Opp. at 29. As previously explained (*see supra* at II.A.3), the SEC has appropriately withheld these records under Exemption 5. Further, the cases Plaintiff cited are inapposite, distinguishable, and/or out of circuit. *See Elkem Metals Co. v. United States*, 24 C.I.T. 1395, 126 F. Supp. 2d 567, 576-77 (2000) (ordering release of schedules because dates "were incorporated into the final published schedule[s]" and "disclosure would not

reveal [agency] deliberations") (Opp. at 29); *see supra* at 9-10 (discussing Plaintiff's cited cases at Opp. 29-30).

Because the SEC's *Vaughn* Index "contain[s] an adequate description of the records and a plain statement of the exemptions relied upon," the SEC has satisfied its obligations under the FOIA. *Amiri v. NSF*, No. 1:20-cv-02006 (TNM), 2021 WL 4438910, at *5 (D.D.C. Sept. 28, 2021) (internal quotations omitted), *aff'd*, 2022 WL 1279740 (D.C. Cir. Apr. 28, 2022).

**7. The SEC sufficiently demonstrated the foreseeable harm that would occur should the withheld records be released.**

Plaintiff argues that the SEC has offered only "general statements" about how the release of the withheld records would harm the SEC. *See* Opp. at 30-34. But the Tallarico Declaration provides information about the harm that would arise if the SEC released the records.

An agency should "provide a 'focused and concrete demonstration of why disclosure of the particular type of material' will cause foreseeable harm 'in the specific context of the agency action at issue.'" *Energy Pol. Advocates v. U.S. Dep't of State*, No. 1:19-CV-03307 (TNM), 2023 WL 4198200, at *3 (D.D.C. June 27, 2023). "But even without enough explanation from the agency, the 'context and purpose' of withheld information can support a finding of foreseeable harm." *Id*.

The Tallarico Declaration is sufficient to establish foreseeable harm, as it states that disclosure of the information withheld under the attorney work-product doctrine "would deprive the SEC of its ability to withhold any information in future litigation, and consequently would deprive SEC attorneys of a zone of privacy within which to weigh facts and evidence and evaluate how to handle future litigation." ECF 16-3 at ¶14. Courts find foreseeable harm in these circumstances. *See, e.g.*, *Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585, at *6 (D.D.C. Nov. 21, 2022) (court found "reasonably foreseeable harm" in releasing

memoranda created in anticipation of litigation because it "would impede prosecutors' ability to properly prepare legal theories and would hinder their ability to effectively represent the United States in any [related] future litigation"). Plaintiff does not contest this harm in its Opposition.

Additionally, the SEC's declaration is sufficient to establish foreseeable harm, as it explains the chilling effect of disclosing deliberations in the specific context at issue here. *See* ECF 16-3 at ¶15 (disclosure "*would* chill ongoing discussions about addressing the control deficiency the SEC identified as well as discussions about addressing future issues the SEC may face" and "staff across the SEC would likely limit their discussions and inhibit their candor in discussing issues relating to the control deficiency and other issues that may arise in the future," which "*would* make it more difficult for SEC leadership to obtain the advice necessary to efficiently and effectively address complex issues about its operations and would hamper comprehensive reviews designed to address and improve those issues") (emphasis added). The Tallarico Declaration further explains that "[p]ublic release of these discussions would also likely deter SEC staff's future willingness to share ideas, recommendations, and preliminary thoughts on issues and matters before them." *See id.* Courts have found that similar declaration language adequately explained foreseeable harm. *See, e.g., Machado Amadis*, 971 F.3d at 371 (agency "affidavit adequately explained that full disclosure of [records] would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and recommendations,' thus impairing 'the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals'"); *Lawyers' Comm.*, 2023 WL 3433978, at *9-11 (finding declaration sufficient that stated, among other things, "disclosure 'would prompt [office] staff to be less candid' or perhaps not meaningfully participate in the deliberative process, which in turn would 'seriously harm [office's] ability to function'" and also "would inhibit [office's] ability to have

frank and open discussions on policy matters with other parts of the Executive Branch"); *Reliant*, 520 F. Supp. 2d at 204 (releasing documents related to factual investigation "would allow a reader to probe too deeply into the thought processes of the drafters and would have a chilling effect on communication between agency employees").

The SEC's declaration further notes the risk of public confusion should the withheld discussion concerning the draft Commission statement, as well as the draft itself, be released. ECF 16-3 at ¶15 (release would "cause confusion to the public because these discussions and the draft statement contain deliberations about what the final statement should be and are not reflective of the publicly released statement"). Indeed, "the D.C. Circuit has 'long recognized that the risk of public confusion has a special force with respect to disclosures of agency positions or reasoning concerning proposed *policies*.'" *Energy Pol. Advocates*, 2023 WL 4198200, at *4 (emphasis in original) ("All of the redacted documents discuss subordinates' thoughts and analysis on proposed policies for decision-makers to review. Releasing such inchoate material could certainly mislead and foreseeably harm the agency's processes.") (internal citation omitted); *Lawyers' Comm.*, 2023 WL 3433978, at *10-11 (concluding that agency sufficiently explained "how release of the documents [at issue] . . . would cause [public confusion]" when declarant stated, inter alia, that "release of the draft documents . . . would cause public confusion because those documents contain arguments for and against certain text as well as changes, comments, and edits").

Finally, the Tallarico Declaration recognizes the potential harm in releasing the names of certain SEC staff involved in the internal review and the emails and phone numbers of SEC staff and contractors. *See* ECF 16-3 at ¶18 (disclosure would "unnecessarily expos[e] personal

information to the public"); *see also* Suppl. Decl.[5] at ¶8 ("SEC staff have considered the public's interest in disclosure against the privacy interests at stake" and "disclosed all portions of documents that it reasonably foresees could be disclosed without causing harm to the SEC's interests at stake").

Plaintiff asserts again that the information in these records is already public knowledge (Opp. at 31-32), but such a claim ignores the vital difference between records about the privileged details of an internal review and the publicly announced results of that review. Plaintiff also complains that the SEC does not address foreseeable harm in the *Vaughn* Index or the Katilius Declaration (Opp. at 31) but fails to show that the SEC is required to do so in any source in addition to the Tallarico Declaration. *See Clemente*, 2022 WL 17092585, at *2 (agency may rely on *Vaughn* index, declarations, or both in support of summary judgment); *Keeping Gov't Beholden, Inc. v. U.S. Dep't of Justice*, No. CV 17-1569, 2021 WL 5918627, at *11 (D.D.C. Dec. 13, 2021) ("the *Vaughn* index must be considered in conjunction with [the agency's] supplemental declaration"), *aff'd sub nom. Brody v. U.S. Dep't of Justice*, No. 22-5043, 2023 WL 1511679 (D.C. Cir. Feb. 3, 2023).

Finally, Plaintiff relies on cases that are distinguishable from the circumstances here. *See Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370-72 (D.C. Cir. 2021) (foreseeability of harm standard not met in connection with, among others, records containing "purely factual material" and where declarations did not specify harm relating to each different kind of record) (Opp. at 31-32); *Project on Gov't Oversight, Inc. v. DHS*, No. l:18- CV-2051-RCL, 2023 WL 2139380, at *9-10 (D.D.C. Feb. 21, 2023) (declarations did not specifically

[5] The Supplemental Declaration of Mark Tallarico is referred to herein as "Suppl. Decl."

articulate why disclosure of records would chill deliberations or create public confusion) (Opp. at 32-33).

**B. The SEC appropriately responded to Plaintiff's Second Category.**

Plaintiff asserts that the SEC did not conduct an adequate search for records responsive to the Second Category, specifically objecting to the SEC's supporting declarations and form of response. Opp. at 10-13. Significantly, Plaintiff does not argue that the SEC has failed to search for any documents other than documents relating to closed proceedings that were not discussed in the Second Statement.

In discussing the search, Plaintiff ignores the SEC's position that, to the extent Plaintiff seeks records relating to closed administrative proceedings affected by the control deficiency, it is improperly asking the SEC to conduct further analysis to determine whether, and in which administrative proceedings, Enforcement staff accessed adjudication memoranda. Memo at 22-24. Plaintiff does not dispute that a request that requires analysis would be improper or that its FOIA request is effectively asking what determinations have been made as a result of the SEC's internal review. Thus, Plaintiff has conceded that any search for documents about closed proceedings would only be for documents that reflect the SEC's determinations about administrative proceedings impacted by the control deficiency. *See, e.g.*, *Burke v. Inter-Con Sec. Sys., Inc.,* 926 F. Supp. 2d 352, 356 (D.D.C. 2013) (plaintiff conceded arguments raised in defendant's motion for summary judgment by failing to oppose those arguments in plaintiff's opposition and sur-reply); *Mogenhan v. DHS*, No. 06-2045 (EGS), 2007 WL 2007502, at *5 (D.D.C. July 10, 2007) (by not responding to defendant's arguments that "its search for responsive documents was reasonable and that its application of exemptions to the documents was appropriate," but "instead reiterat[ing] in her opposition that defendant was untimely in

mailing the responsive documents," plaintiff "waived any opposition to defendant's arguments about the reasonableness of its search and the application of exemptions").

While the Second Statement provides evidence that the SEC has not made any determinations about closed administrative proceedings impacted by the control deficiency, to provide additional evidence that no such documents exist, the SEC is providing a supplemental declaration. That declaration states that OGC staff consulted with the SEC staff handling the internal review of the control deficiency, and they stated that neither they nor other SEC officers or staff had determined that Adjudication memoranda were accessed by Division of Enforcement staff in administrative proceedings that were not discussed in the Second Statement, including closed administrative proceedings. Suppl. Decl. at ¶7.

The SEC's search was appropriate in these circumstances, as, under its discretion, staff sought information about potentially responsive records from those responsible for such information. *See, e.g.*, *Amiri*, 2021 WL 4438910, at *3 (agency "must show that it conducted a search reasonably calculated to uncover all relevant documents" in surrounding circumstances); *Machado Amadis v. U.S. Dep't of Justice*, 388 F. Supp. 3d 1, 14 (D.D.C. 2019) (SEC "has discretion to craft its search to meet [the] standard"), *aff'd*, 971 F.3d 364 (D.C. Cir. 2020); *Elec. Privacy Info. Ctr. v. FBI*, No. 1:17-cv-00121 (TNM), 2018 WL 2324084, at *2 (D.D.C. May 22, 2018) ("Searching for records requires 'both systemic and case-specific exercises of discretion and administrative judgment and expertise,' and is 'hardly an area in which the courts should attempt to micro-manage the executive branch.'"). Plaintiff's cases do not suggest any further search was necessary. *See Santos v. DEA*, 357 F. Supp. 2d 33, 35, 37 (D.D.C. 2004) (agency withheld all responsive records and included in affidavit "only a conclusory statement regarding the [agency's] search for responsive documents") (Opp. at 12); *Weisberg v. U.S. Dep't of Justice*,

627 F.2d 365, 370 (D.C. Cir. 1980) (agency "affidavit state[d] only that: I have conducted a review of FBI files which would contain information that [plaintiff] has requested. . . . The FBI files to the best of my knowledge do not include any information requested by [plaintiff] other than the information made available to him") (Opp. at 12); *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551-52 (D.C. Cir. 1994) (agency declaration "fail[ed] to describe *in any detail* what records were searched, by whom, and through what process") (emphasis added) (Opp. at 12); *Murray v. Fed. Bureau of Prisons*, 741 F. Supp. 2d 156, 163-64 (D.D.C. 2010) (agency's declaration did "not establish that the systems of records actually searched were those most likely to contain records responsive to the plaintiff's FOIA request") (Opp. at 12-13); *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 86 (D.D.C. 2009) (FOIA request involved "six categories of records" on various subjects submitted to and consulted on by various agencies and their offices, which initially did not respond to request and "submitted numerous [defective] declarations") (Opp. at 13).

With respect to the administrative proceedings addressed in the Second Statement, Plaintiff's only objection is to the format of the SEC's response. Opp. at 12 ("SEC has . . . failed to explain as a general matter how providing a press release can ever satisfy a FOIA request"), 13 (SEC "hasn't bothered to back up the remarkable and unprecedented suggestion that it can respond to a FOIA request by way of a self-serving press release"). The SEC provided Plaintiff with a link to the Second Statement to access responsive documents because the SEC believed that response to be the most straightforward and efficient way of providing the first pages of the Orders Instituting Proceedings. Should Plaintiff request that the SEC provide those records in a different format, the SEC will do so.

Because the SEC properly searched for the documents Plaintiff requested and found that none existed, and because the SEC will provide the documents linked in the Second Statement in a different format upon request, the SEC has responded to the Second Category.

**C. No material facts are in dispute.**

Plaintiff's "Response to Defendant's Statement of Undisputed Facts" (ECF 17-1 at 1-18) ("Response") does not raise any genuine dispute of material fact sufficient to defeat summary judgment. Rather, Plaintiff purports to object to several SEC statements on various bases, all of which fail. In general, Plaintiff does not point to any legal authority for its positions beyond bald citations to the Federal Rules of Civil Procedure and Evidence, except for one case (Response ¶22), which supports the SEC's arguments (*see supra* at 8, 18).

Plaintiff also suggests that the SEC has incorrectly quoted correspondence but fails to show any such evidence. Response ¶¶5, 7, 12, 14; *see also* Opp. at 11. For example, at Response ¶14, Plaintiff objected to and denied that "Plaintiff informed the SEC that its position is that it can only agree that the SEC has satisfied the Second Category request if it receives information regarding closed, settled, or otherwise disposed of administrative proceedings affected by the control deficiency" (SMF ¶14), but Plaintiff's Exhibit A states "NCLA can only agree that SEC has satisfied its request if it receives information regarding such closed/settled/otherwise-disposed-of matters" (ECF 17-3). Indeed, Plaintiff reads certain language into that correspondence that is not there. *Compare* Response ¶7 ("Plaintiff reluctantly agreed" to narrowing the remaining subparts of its FOIA request) *with* Plaintiff's Exhibits A and B, ECF 17-3 and 17-4 (no mention of Plaintiff's purported reluctance).

Plaintiff argues that declarants' statements are "based on hearsay not within a hearsay exemption and outside the scope of this Court's precedents permitting hearsay when such

hearsay is based on the declarant's supervision of a search." Response ¶9; *see also* Response ¶12. The Supplemental Declaration makes clear, however, that the declarant is familiar both with the records released to Plaintiff in connection with its FOIA request and with SEC staff's communications with Plaintiff about its FOIA request. Suppl. Decl. at ¶4.

To the extent Plaintiff also uses its Response to reiterate arguments in its briefing, the SEC has already addressed those arguments. *See supra* at II.B (addressing Response ¶¶13, 15 concerning the SEC's response to the Second Category), II.A (addressing ¶¶5, 16, 18, 21-30 concerning FOIA Exemptions withholdings), II.A.1 (addressing ¶¶17, 18, 19, 20 concerning consultant corollary).

## III. CONCLUSION

For the foregoing reasons, and the reasons described in its opening papers, the SEC respectfully requests that the Court grant the SEC's motion for summary judgment.

Dated: August 23, 2023

Respectfully submitted,

/s/ *Alexandra Verdi*
Alexandra Verdi (NY Reg. No. 5480934)
Office of the General Counsel
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, D.C. 20549
Telephone: (202) 551-5057
Fax: (202) 772-9263
verdim@sec.gov

*Counsel for Defendant*
*U.S. Securities and Exchange Commission*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>Defendant. | No. 22-cv-03567-CJN |

**SUPPLEMENTAL DECLARATION OF MARK TALLARICO**

I, Mark Tallarico, declare as follows:

1. I am an attorney in the Office of the General Counsel ("OGC") of the U.S. Securities and Exchange Commission ("SEC"). I have served in this capacity since November 2014. My duties include reviewing administrative appeals of decisions issued by the SEC's Office of FOIA Services ("FOIA Office") regarding Freedom of Information Act ("FOIA") requests and handling FOIA litigation against the SEC. I also serve as the FOIA Liaison for OGC and coordinate OGC's search for documents that may be responsive to a FOIA request. I am familiar with the SEC's procedures for responding to and searching for documents responsive to FOIA requests.

2. I submit this declaration to further explain the SEC's processing of the FOIA request at issue in the above-captioned action.

3. I make this declaration in my official capacity. The statements I make in this declaration are based on my review of the official files and records of the SEC maintained routinely in the ordinary course of business, my own personal knowledge, or information I acquired through the performance of my official duties or from other SEC staff.

4. I am familiar both with the records released to Plaintiff in connection with its FOIA request and with SEC staff's communications with Plaintiff concerning its FOIA request.

5. As previously described, in its Second Category, Plaintiff seeks "the first page of the Order Instituting Proceedings (a public document) of every administrative proceeding in which the 'control deficiency' occurred." *See* ECF 15.

6. By emails dated June 13 and 16, 2023, OGC notified Plaintiff through counsel that by providing the SEC's "Second Commission Statement Relating to Certain Administrative Adjudications" ("Second Statement") (available at https://www.sec.gov/news/statement/second-commission-statement-relating-certainadministrative-adjudications), the SEC had provided responsive materials for every administrative proceeding in which it had made a determination that one or more Adjudication memoranda were accessed by Enforcement staff. *See also* Pl.'s Exhibit A, ECF 17-3.

7. Before preparing that response to Plaintiff, OGC staff consulted with the SEC staff handling the internal review of the control deficiency, and they stated that neither they nor other SEC officers or staff had determined that Adjudication memoranda were accessed by Division of Enforcement staff in administrative proceedings that were not discussed in the Second Statement, including closed administrative proceedings.

8. As previously described, SEC staff have reviewed the records responsive to the First Category to determine if it is reasonably foreseeable that disclosure would harm an interest protected by one of the FOIA's statutory exemptions or the disclosure is prohibited by law. SEC staff have considered the public's interest in disclosure against the privacy interests at stake. The SEC has disclosed all portions of documents that it reasonably foresees could be disclosed without causing harm to the SEC's interests at stake.

9. As previously described, the SEC withheld certain information from 55 pages of records and withheld in full the attachments to those records under the attorney work-product doctrine and deliberative process privilege embedded in FOIA Exemption 5. ECF 16-1 at ¶9. Though the original page count of those withheld attachments was 1,835 pages, that number does not include the pages to one attachment, an Excel spreadsheet that consists of 587 pages when converted to PDF. The SEC withheld in full 2,422 pages.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my information and belief.

Executed on the 23rd day of August, 2023 in Ashburn, Virginia.

Mark Tallarico

MARK TALLARICO
Attorney, Office of the General Counsel
U.S. Securities and Exchange Commission

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br>*Plaintiff*<br>v.<br>SECURITIES EXCHANGE COMMISSION,<br>*Defendant*. | Civil Action No. 1: 22-cv-03567 (CJN) |

**ORDER**

For the reasons stated in the Court's Memorandum Opinion, ECF 28, it is ORDERED that Defendant's Motion for Summary Judgment, ECF 16, is GRANTED.

This is a final and appealable order.

The Clerk of Court is directed to terminate this case.

DATE: August 29, 2025

CARL J. NICHOLS
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br>*Plaintiff*<br>v.<br>SECURITIES EXCHANGE COMMISSION,<br>*Defendant.* | Civil Action No. 1: 22-cv-03567 (CJN) |

**MEMORANDUM OPINION**

The New Civil Liberties Alliance submitted a FOIA request to the Securities and Exchange Commission regarding a "control deficiency" that allowed enforcement personnel to access adjudicative materials. Following various procedural steps, the following issues remain unresolved: whether the Commission properly withheld certain materials as covered by the attorney work-product doctrine or as unduly invading employees' privacy interests; and whether the Commission conducted an adequate search for certain records. For the reasons that follow, the Court agrees with the Commission that its withholdings were proper and that its search was adequate, and therefore grants the Commission's Motion for Summary Judgment, ECF 16.

## I. Background

On April 5, 2022, the Securities and Exchange Commission publicly disclosed a "control deficiency related to the separation of its enforcement and adjudicatory functions within its system for administrative adjudications." ECF 17 at 3. Specifically, "certain [SEC] databases… were not configured to restrict access by enforcement personnel to memoranda drafted by adjudication staff." *Id.* That meant that, for a period of time, some SEC lawyers were able to access the files of the very

administrative judges in front of whom they had pending matters. The April 5 statement listed two widely-known adjudications—*SEC v. Cochran* and *Jarkesy v. SEC*, both of which reached the Supreme Court—that may have been impacted by the control deficiency. ECF 7 at 3. And it emphasized that the Commission had tasked outside investigators at the Berkeley Research Group—as well as an internal "review team"—with reviewing the Commission's handling of those two cases.[1] *Id.* at 3–4. Notably, the statement indicated that the control deficiency may have impacted other cases in addition to *Cochran* and *Jarkesy*—and mentioned that "we anticipate publishing additional findings in the near future." *Id.*

The New Civil Liberties Alliance (NCLA)—counsel for plaintiff in the *Cochran* matter—didn't wait for those additional findings, instead submitting a FOIA request to the Commission in June 2022 for various categories of records relevant to the control deficiency. ECF 16-2 at 2–3. By November 2022, the Commission had still not responded to the FOIA request, prompting the NCLA to file this suit. ECF 1. Two months later, following the NCLA's filing of an amended complaint, the Commission issued an interim partial response, consisting of 33 partially redacted pages. ECF 16-2 at 3. The Commission stated that this initial production was responsive to certain categories of NCLA's FOIA request and that future productions would address other categories.

In March 2023, the Commission informed the NCLA that it had identified approximately 7,300 records—comprising about 51,700 pages—that were potentially relevant to other categories of the request. *Id.* In light of that volume, the parties struck a compromise: the Commission would process two general categories of records: (1) the reports prepared by the Berkeley Research Group and (2) the first page of something called an "Order Instituting Proceedings" for each proceeding in which the

[1] The Commission later retained General Dynamics to assist Berkeley. The NCLA's amended complaint does not mention General Dynamics; insofar as it is relevant, all statements regarding Berkeley in this opinion apply equally to General Dynamics. ECF 16-1 at 7.

control deficiency occurred. ECF 16-3 at 2.

In June 2023, the Commission produced 55 pages of records representing emails between Commission staff and the Berkeley Research Group regarding the control deficiency review. ECF 16-1 at 4. But the Commission withheld 1,855 documents under FOIA exemption (b)(5) on the ground that they are covered by the attorney work-product doctrine. *Id.* at 3. And, applying exemption (b)(6), the Commission redacted from those 55 pages "certain names, email addresses, and telephone numbers of SEC staff and SEC contractors," as well as "the names of SEC staff who were involved with the internal review." *Id.* at 8.

As for the Orders Instituting Proceedings, on June 2, 2023, the Commission issued a public press release that cited and provided links to all cases it deemed to have been affected by the control deficiency.[2] The Commission notified the NCLA that, with this press release, it had satisfied its obligations with respect to the second agreed-upon category of records. The NCLA disagreed. It therefore sought from the Comission information regarding whether any closed, settled, or otherwise disposed-of matters were affected by the control deficiency. *Id.* The Commission responded that its public list had identified and contained materials regarding every administrative proceeding in which it had determined that one or more adjudication memoranda were accessed by enforcement staff—and that having to provide materials for any other proceeding would be improper under FOIA by requiring the Commission to conduct further analysis. *Id.*

Considering its work to be done, the Commission has moved for summary judgment. ECF 16. The NCLA opposes that motion in all respects. ECF 17.

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as

[2] https://www.sec.gov/newsroom/speeches-statements/second-commission-statement-relating-certain-administrative-adjudications.

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In the FOIA context, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (internal alteration and quotation marks omitted). The agency bears the burden of justifying the withholding of information under an exemption. *100Reporters v. United States Dep't of State*, 602 F. Supp. 3d 41, 54 (D.D.C. 2022) ("When an agency withholds records based on a FOIA exemption, it bears the burden of justifying its withholding."); *see also Fed. Open Mkt. Comm. of the Fed. Rsrv. Sys. v. Merrill,* 443 U.S. 340, 352, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979); *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008).

## III. Analysis

### A. Berkeley Research Group Documents

The Commission withheld information relating to the work of Berkeley Research Group under FOIA Exemptions 5 and Exemption 6; the Court takes each exemption in turn.

#### 1. § 552(b)(5) Withholdings

As noted above, the Commission withheld certain information relating to the work of Berkeley Research Group under FOIA Exemption (b)(5) on the ground that that information is covered by the attorney work-product doctrine. *See supra* at 2. It is well established that Exemption (b)(5) can apply to attorney work product. *Jud. Watch, Inc. v. Dep't of Just.*, 432 F.3d 366, 369 (D.C. Cir. 2005) ("FOIA Exemption 5 incorporates the [attorney] work-product doctrine" enshrined in the rules of evidence and civil procedure.). But, NCLA argues, that exemption is inapplicable here for two reasons.

NCLA first argues that because Berkeley Research Group is not a government entity, communications with it cannot qualify as "inter-agency or intra-agency memorandums or letters." 5 U.S.C. § 552(b)(5). Whatever the textual force of this argument, it runs straight into the so-called consultant corollary. In particular, the Court of Appeals has repeatedly noted that communications with non-agency parties can still qualify under Exemption (b)(5) so long as certain conditions are met. *See, e.g., Soucie v. David,* 448 F.2d 1067 (D.C. Cir. 1971); *Ryan v. Dep't of Just.*, 617 F.2d 781, 789–91 (D.C. Cir. 1980); *Jud. Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 130–31 (D.C. Cir. 2005); *Nat'l Inst. of Mil. Just.* (*NIMJ*) *v. U.S. Dep't of Def.*, 512 F.3d 677, 685 (D.C. Cir. 2008); *Georgia v. United States Dep't of Just.*, No. 23-5083, 2025 WL 2314892, at *7 (D.C. Cir. Aug. 12, 2025). Where, as here, the government contends that the non-agency party is acting as a "consultant"—and thus that the "consultant corollary applies—the government must establish that the third party is "disinterested" such that it "comes to the table with no obligation or stake in the outcome of an agency's process other than a duty to provide good advice to the agency, just as the agency's own personnel is expected to." *Am. Oversight v. United States Dep't of Health & Hum. Servs.*, 101 F.4th 909, 922 (D.C. Cir. 2024); *see also Wheatland v. United States Dep't of Health & Hum. Servs*., 2025 WL 1761697, at *3 (D.D.C. Apr. 24, 2025) (even if "the agency and non-agency share a common goal or interest at some level of generality," the consultant corollary applies only if "the outsider is disinterested"—that is, only if the outsider "comes to the table with no obligation or stake in the outcome of an agency's process other than a duty to provide good advice to the agency, just as the agency's own personnel is expected to.").

The record demonstrates that Berkeley Research Group meets this test. It had "no interest related to the SEC's control deficiency other than providing assistance pursuant to its contract with the SEC"; the Commission solicited and retained Berkeley to support its work; and the Commission sought Berkeley's specific expertise as to conducting forensic analyses. ECF 16-1 at 7. The NCLA argues that Berkeley was not a "proper" substitute for a wholly internal review such that the consultant

corollary "cannot credibly be argued to apply." ECF 17 at 22. But the corollary would be unnecessary and redundant if it only applied to internal reviews, and the NCLA cites no case suggesting consultants cannot be deemed disinterested if they receive compensation for their work or have a generalized interest in receiving more contracts from the employing agency.

That doesn't end the matter, for the materials must still qualify under the attorney work-product doctrine. That doctrine isn't limited to work product created by attorneys; rather, it applies to materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). The NCLA argues that Berkeley didn't do its work "in anticipation of litigation," contending that the Commission would have conducted a review of the control deficiency even if it did not fear being sued. ECF 17 at 19. But the Commission's unrebutted declarations state expressly that a concern about future litigation motivated Berkeley's work, which seems quite reasonable for various reasons, including the fact that the NCLA's own client, Michelle Cochran was planning to "file a complaint in district court" as of June 2023. ECF 17 at 6. And even if the Commission had *other* reasons for the work done by Berkeley, the Court of Appeals has never held that a document is covered by the work-product doctrine only if it was prepared solely in anticipation of litigation. *See EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 968-69 (D.C. Cir. 1999) ("[E]ven if [respondent undertook its investigation in the ordinary course of business], [petitioner's] recharacterization of [respondent's] motivation does nothing to undermine [respondent's] contention that it genuinely feared litigation"); *see also In re Kellogg Brown & Root, Inc.,* 756 F.3d 754, 759–60 (D.C. Cir. 2014) (Kavanaugh, Circuit Judge) ("It is thus not correct for a court to presume that a communication can have only one primary purpose. It is likewise not correct for a court to try to find the one primary purpose in cases where a given communication plainly has multiple purposes. Rather, it is clearer, more precise, and more predictable to articulate the test as follows: Was obtaining or

providing legal advice a primary purpose of the communication, meaning one of the significant purposes of the communication?”).

The NCLA offers up one more argument here: that the Commission “voluntarily waived the protection of Exemption 5 by sharing the underlying documents with its favored vendors and issuing press releases linking to selected records.” ECF 17 at 22. But “disclosure to a third party does not waive the privilege unless such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party’s adversary,” and “waiver would occur . . . only if the disclosure substantially increases the possibility of an opposing party obtaining the information.” *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980). The NCLA has provided no evidence to suggest that the Commission shared the withheld records with anyone other than its own staff and contractors acting on its behalf, like Berkeley. And the NCLA hasn’t demonstrated that withheld information has made its way into the public domain. *See Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 60-61 (D.C. Cir. 2003) (no waiver where plaintiff “made no specific showing that any of the . . . disclosures revealed information that is ‘as specific as’ and ‘matches’ that included in the [withheld material]”).[3]

**2. § 552(b)(6) Withholdings**

Turning to the Commission’s redaction of certain information under Exemption 6, that exemption applies to “personnel files and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.” 5 U.S.C. § 552(b)(5). In the NCLA’s view, the Commission has misapplied Exemption 6 by “improperly [withholding] the names of government employees and ‘consultants’ or ‘contractors’ who helped the government evade

[3] The Commission also argues that these materials are covered by the deliberative process privilege. Because the Court has already decided that the attorney work-product doctrine applies, it will not address this question.

transparency and the requirements of the Inspector General Act." ECF 17 at 24. But that's not really correct; the Commission redacted only the names of "individuals who had access to the databases at issue in the control deficiency or as individuals being interviewed by the internal review team." ECF 16-1 at 8. The names of individuals with no direct relation to the control deficiency—like some Commission employees and Berkeley consultants—were not withheld. ECF 18 at 12. That makes sense: the Commission redacted the names of "[i]ndividuals potentially involved in the control deficiency" because they "may be harassed," giving them "a privacy interest in not having their names publicly released." *Id.*

Against this legitimate concern, the NCLA has not identified a public interest in knowing the redacted names. To overcome those persons' privacy interests, the NCLA must establish a public interest in that information. *See Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 207 (D.D.C. 2007) ("If the requesting party cannot demonstrate a public interest in disclosure then the court will not order disclosure, because, as this Circuit has noted, 'something, even a modest privacy interest, outweighs nothing every time.'"). But the only "public interest" that the NCLA identifies in the withheld information is the identification of "who is influencing agency policy"—which is a mismatch with the information, since the policy at issue is the forward-looking response to the control deficiency, not the deficiency itself. ECF 17 at 25, 26. And again, the Commission released the names of staff at both the SEC and Berkeley who were involved in the internal review; those are the forward-looking names that relate to the claimed public interest in knowing who is involved in influencing future policy.

The NCLA finally argues that "government employees' email addresses usually can't be withheld, because they have no privacy interest in concealing their taxpayer-provided email address." ECF 17 at 27. But where, as here, about the reasonably foreseeable harm is harassment, courts in this District have appropriately withheld such redactions. *See Waterman v. IRS*, 288 F. Supp. 3d 206, 211-

12 (D.D.C. 2018) ("contact information for individual [agency] employees sheds little light on an agency's performance of its statutory duties, yet exposes individual employees to threatening or harassing contacts from the public"); *see also Hall & Assocs. v. U.S. EPA*, 2020 WL 4673411, at *5 (D.D.C. Aug. 12, 2020).

**B. Orders Instituting Proceedings**

That leaves the Commission's approach to the Orders Instituting Proceedings. The NCLA attacks the Commission's decision "to simply refer to a press release rather than respond to the [NCLA's] FOIA" request, ECF 17 at 10; a response, in the NCLA's estimation, would provide a more detailed account of how the various documents were found. But the Commission has since provided two declarations that explain the process the Commission undertook to identify proceedings in which it learned of control deficiencies. ECF 16-2, 16-3. The NCLA has not identified any serious concern with those declarations, and the Court therefore takes them at their word—that is, that the Commission has disclosed all of the proceedings it has currently identified as having had a control deficiency. FOIA does not require agencies to conduct new research, and generate *new* findings, or create new records. *See Hall & Assocs. v. U.S. EPA*, 2018 WL 1896493, at *2 (D.C. Cir. Apr. 9, 2018) (FOIA does not require agencies to "undertake research, analysis, and formulation of opinions."); *Jarvis v. Comm'r, Soc. Sec. Admin.*, 2018 WL 6722401, at *1 (D.C. Cir. Dec. 18, 2018) ("[N]o duty to create statistical records in response to appellant's FOIA request."); *Skinner v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2013 WL 3367431, at *1 (D.C. Cir. May 31, 2013).

## IV. Conclusion

For the reasons stated above, the Commission's Motion for Summary Judgment, ECF 16, is GRANTED. A separate Order will accompany this opinion.

DATE: August 29, 2025

CARL J. NICHOLS
United States District Judge